## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WILLIAM R. LINS<br>c/o Emily Malarkey, Esq.<br>Bekman, Marder & Adkins<br>300 West Pratt Street, Suite 450<br>Baltimore, Maryland 21201 | *<br><br>*<br><br>* |
| Plaintiff | * |
| v. | * |
| UNITED STATES OF AMERICA | *   Case No.: _____ |
| Serve On:<br>Stephen M. Schenning<br>Acting U.S. Attorney for the<br>District of Maryland<br>36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 | *<br><br>*<br><br>*<br><br>* |
| And | * |
| Attorney General of the U.S.<br>Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, D.C. 20530 | *<br><br>*<br><br>* |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

### (*Federal Tort Claims Act; Medical Malpractice*)

Plaintiff, William R. Lins, by and through his attorneys, Emily C. Malarkey and Bekman, Marder & Adkins L.L.C, sues the Defendant, the United States of America claiming damages arising from injuries he sustained while a patient of the U.S. Department of Veterans Affairs, and states as follows:

1

## Parties, Jurisdiction and Venue

1.     The Plaintiff is William R. Lins, a resident of the State of Maryland, a citizen of the United States of America, and a veteran of the United States Marine Corps.

2.     The Defendant is the United States of America, a sovereign nation that has consented to be sued for negligent acts and omissions made by its employees, agents, and servants within the course and scope of their employment with the Defendant pursuant to the Federal Tort Claims Act (FTCA).

3.     This cause of action arises under the Federal Tort Claims Act, 28 U.S. Code § 2671 *et seq.,* inasmuch as the claims arise out of the conduct of the employees and agents, actual and/or apparent, of the U.S. Department of Veterans Affairs and the Baltimore VA Medical Center located at 10 North Green Street, Baltimore, Maryland, which is and was a government and military health care facility for veterans of the U.S. Armed Services.

4.     This claim was previously filed in the Health Claims Alternative Dispute Resolution Office as required by Maryland law, and arbitration of the claim was waived by the Plaintiff pursuant to §3-2A-06B(b) of the Courts and Judicial Proceedings Article.  The Statement of Claim, Plaintiff's Certificate of Qualified Expert and Report, and Order of Transfer are attached as Exhibits 1 to 3 hereto.

5.     Venue and jurisdiction for this claim are proper in the U.S. District Court for the District of Maryland pursuant to 28 U.S. Code § 1391, 28 U.S. Code § 1346(b), and 12 U.S.C. 1402(b), respectively.

2

6.     The amount of this claim exceeds the $75,000.00 jurisdictional limit of the United States District Court for the District of Maryland.

7.     Pursuant to the 28 U.S.C. § 2401(b), Plaintiff submitted a timely claim to the appropriate Federal agency, the U.S. Department of Veterans Affairs, in the amount of $2,000,000 on October 17, 2016, which was within two years after Plaintiff's claim accrued.  Plaintiff's claim was denied by letter dated February 6, 2017.

8.     Having exhausted his administrative remedy, Plaintiff's claim is timely and properly filed.

### Factual Background

9.     William Lins enlisted in the U.S. Marine Corps Reserves in 2004 and served on active duty during periods spanning from 2004 through 2010.  He continued to serve in the U.S. Marine Corp Reserves from 2010 through 2016, and was honorably discharged in March of 2016 at the rank of Sergeant.

10.     During his service in the Marine Corps Reserves, Mr. Lins was deployed to Iraq from 2006 through 2007.  He was injured in the course of duty. During his second deployment, to Afghanistan from 2010 to 2011, his squad was attacked by a suicide bomber, and several of his fellow soldiers died.  Mr. Lins suffered permanent damage to his hearing, and is suspected to have suffered a traumatic brain injury.

11.     As a result of Mr. Lins' service in the Marine Corps and the physical, emotional and psychological trauma he suffered while serving combat deployments,

3

Mr. Lins developed post-traumatic stress disorder (PTSD), major depressive disorder, and alcohol addiction.

12.     To assist with recovering from his PTSD, depression, and addiction, Mr. Lins was admitted to the Baltimore VA Medical Center Psychosocial Residential Rehabilitation Treatment Program (PRRTP) on September 23, 2014. For the next five months, he received inpatient treatment five days a week at the Baltimore VA Medical Center ("the Baltimore VA").

13.     During his treatment in the PRRTP, Mr. Lins was treated by Erin Elizabeth Burns, Ph.D., a psychologist who became licensed by the State of Maryland in 2013. At all relevant times, Dr. Burns was acting as an agent of the United States Government and the Department of Veterans Affairs, and was acting in the scope of her employment.

14.     Dr. Burns became Mr. Lins' primary therapist, and they developed a close professional relationship. Mr. Lins confided in Dr. Burns that he had a history of childhood emotional abuse.

15.     Mr. Lins was discharged from the PRRTP program on February 20, 2015, although he continued outpatient therapy through the Baltimore VA.

16.     In the summer of 2015, Mr. Lins suffered a relapse of his alcoholism. He voluntarily readmitted himself to the Baltimore VA Hospital, and from there was readmitted to the PRRTP day program on August 11, 2015. Once again, he resided at the Baltimore VA five days a week, and Dr. Burns was his primary psychotherapist.

4

17.    On Veterans' Day in 2015, Dr. Burns offered to accompany Mr. Lins to Arlington National Cemetery, which was one of the final goals of his treatment plan. When they arrived in Washington D.C., Dr. Burns took Mr. Lins to a hotel, suggesting that he needed to get his mind off of the significance of the day. There, they had their first sexual encounter.

18.    Over the course of the ensuing weeks, Dr. Burns developed an inappropriate relationship with Mr. Lins, and regularly made sexual advances towards him under the guise of providing therapy.

19.    Dr. Burns used Mr. Lins history of childhood abuse as a means of coercing him into having sexual intercourse. She told him that because he had an aversion to intimacy as a result of his childhood trauma, having sexual relations with her was a way to cure his problems. Dr. Burns told Mr. Lins that he needed to practice making eye contact during sex as a way to cure his aversion to intimacy, and that if he did not, the childhood perpetrator "would win." She told him that he needed to have more sex in order to stop "feeling gay" about what happened to him as a child.

20.    Dr. Burns insisted that Mr. Lins engage in sexual intercourse with her in her office at the Baltimore VA in the middle of the day on an almost daily basis. At times when Mr. Lins was participating in group therapy, Dr. Burns would call him out of his group therapy session to come to her office for "private counseling," which consisted of intimate sexual contact. Dr. Burns dishonestly told Mr. Lins' other counselors that he was approved to take a leave of absence from the PRRTP to

5

see his children, when in fact, she would take him to her office for sex. When Mr. Lins would go home for the weekend, Dr. Burns continued to communicate with him by phone and text message.

21.    Upon information and belief, individuals at the Baltimore VA were aware that Dr. Burns was involved in an inappropriate relationship with Mr. Lins during this time frame. Dr. Burns' supervisors discovered that she planned to attend a wedding with Mr. Lins. Upon information and belief, the supervisors had a meeting with Dr. Burns to inform her that her conduct was not appropriate. Nevertheless, the supervisor and the VA allowed Dr. Burns to continue to treat Mr. Lins as a patient.

22.    In December of 2015, Mr. Lins was discharged from the rehabilitation day program, but continued to see Dr. Burns on an outpatient basis for therapy. The "therapy" sessions were for the purpose of having sex.

23.    At some time in late 2015 or early 2016, the Baltimore VA took away Dr. Burns' private office and assigned her to an open cubicle in an administrative area. Dr. Burns told Mr. Lins that her office had been taken away because another male patient had made a false complaint to the VA regarding Dr. Burns' treatment of him, reporting "boundary issues" and inappropriate touching. She told Mr. Lins that her clinical privileges had been revoked while the VA investigated his complaint. She denied the other patient's allegations to Mr. Lins.

24.    Dr. Burns continued her inappropriate sexual relationship with Mr. Lins even after she was unable to have sex with him in her private office. She

6

would arrange to meet him at her house, at his house, or at a hotel for the purpose of having sexual relations.

25.    Dr. Burns prevented Mr. Lins from telling anyone about their relationship, threatening that he would lose his VA benefits, that she would not support his application for disability benefits, and that he would lose custody of his children, if he told anyone.

26.    In early 2016, Dr. Burns stopped working at the Baltimore VA.  She told Mr. Lins that she had resigned as a result of the other patient's false complaints (which she continued to deny) and the Baltimore VA's investigation of her.

27.    Even after she stopped working at the Baltimore VA, Dr. Burns continued her sexual relationship with Mr. Lins, becoming increasingly forceful in her interactions with him.  She became extremely jealous of his relationship with his children.  Whenever he would spend time with his children, she would make up emergencies and crises to convince him to see her instead.  She told him that her dog had died, that she had been diagnosed with cancer, that she had been raped, and that she had a miscarriage in order to persuade him to see her.

28.    Eventually, Mr. Lins, who was continuing outpatient therapy at the VA, told his social worker that he was involved with Dr. Burns.  The social worker told Mr. Lins that other male patients had made complaints about Dr. Burns' inappropriate conduct towards them, and warned him to stay away from her.

29.     Upon learning this information, Mr. Lins ended his relationship with Dr. Burns and reported it to the VA and the Maryland Department of Health and Mental Hygiene.  He was asked by the VA and DHMH to give a sworn statement about his relationship with Dr. Burns, which he did.

30.     Even after attempting to end his relationship with Dr. Burns, she continued to contact him via phone and text message in an effort to convince him to continue the relationship.  She left him messages urging him to contact her so that she could "clear the air."  She asked him to speak to her father.

31.     Upon information and belief, at the time this lawsuit was filed, the Baltimore VA and the Maryland Department of Health and Mental Hygiene are continuing their investigation of Dr. Burns' inappropriate conduct towards Mr. Lins and other male patients of the Baltimore VA.

32.     Ms. Burns' license to practice psychology with the State of Maryland expired on March 31, 2017.  She has not renewed it.

<u>Count I</u>
<u>Negligent Hiring, Supervision and/or Retention</u>

33.     Plaintiff adopts and incorporates Paragraphs 1 through 32 as if fully set forth herein.

34.     The Defendant, United States of America, through the U.S. Department of Veterans Affairs, was negligent and careless in the following manners:

a. By hiring Erin Burns, Ph.D., when it knew or should have known that she had acted inappropriately towards male patients, including but not limited to, having sexual relationships with patients;

b. By retaining Erin Burns, Ph.D., when it knew or should have known that she had acted inappropriately towards male patients, including but not limited to, having sexual relationships with patients;

c. By failing to properly supervise Dr. Burns in her interactions with male patients;

d. By failing to terminate Dr. Burns or remove her from patient care when it knew, or reasonably should have known, that she was using her position of power to take sexual advantage of her patients;

e. By failing to promptly and properly investigate Dr. Burns' conduct when it first learned of inappropriate conduct involving her patients;

f. By failing to provide Dr. Burns with appropriate training, oversight, support and counseling that would have prevented her from having inappropriate relationships with her patients;

g. And in other ways.

35.   As a result of the negligence of the Defendant, Mr. Lins suffered, and will continue to suffer, severe economic, emotional, and psychological harm.  He has been caused to suffer relapses of his depression and addiction, has been caused turmoil in his interpersonal relationships, suffered the isolation of his friends and

family, and will continue to require additional therapy and counseling to deal with
the effects of the harms he has suffered.

WHEREFORE, Plaintiff, William R. Lins, claims damages against the
Defendant in the amount of $2,000,000, with all costs to be paid by the Defendant.

### Count II
### Vicarious Liability

36.   Plaintiff adopts and incorporates Paragraphs 1 through 35 as if fully
set forth herein.

37.   The Defendant, by and through its agent, Erin Burns, Ph.D., was
negligent and careless in the following manners:

  a.  By abusing her position as mental health care provider for personal
      gain, including for sexual exploitation of William R. Lins;

  b.  By failing to provide adequate and competent counseling services to
      William R. Lins;

  c.  By engaging in an inappropriate sexual relationship with William R.
      Lins under the auspices of providing therapy;

  d.  By acting in a manner to suggest that sexual relations were part of the
      therapeutic process;

  e.  By committing an unwanted touching on Mr. Lins that amounted to a
      civil battery;

  f.  And in other ways.

38.   As a result of the negligence of the Defendant, through its agent, Erin
Burns, Ph.D., Mr. Lins suffered, and will continue to suffer, severe economic,

emotional, and psychological harm. He has been caused to suffer relapses of his depression and addiction, has been caused turmoil in his interpersonal relationships, suffered the isolation of his friends and family, and will continue to require additional therapy and counseling to deal with the effects of the relationship.

WHEREFORE, Plaintiff, William R. Lins, claims damages against the Defendant in the amount of $2,000,000, with all costs to be paid by the Defendant.

EMILY C. MALARKEY (Bar #28197)
BEKMAN, MARDER & ADKINS LLC
malarkey@bmalawfirm.com
300 West Pratt Street, Suite 450
Baltimore, MD 21201
410-539-6633
*Attorneys for Plaintiff*

11