# HEALTH CARE ALTERNATIVE DISPUTE RESOLUTION OFFICE
6 St. Paul Street, Suite 1501
Baltimore, Maryland 21202-1608
(410) 767-8200

## CLAIM FORM        HCA NO.: _____

**CLAIMANT(S)**

Name  WILLIAM R. LINS c/o Emily C. Malarkey, Esq.
BEKMAN, MARDER & ADKINS, L.L.C.

Street Address  300 West Pratt Street, SUite 450

City, State, Zip Code  Baltimore, Maryland  21201

Name _____

Street Address _____

City, State, Zip Code _____

Name _____

Street Address _____

City, State, Zip Code _____

**HEALTH CARE PROVIDER(S)**

Name  THE U.S. DEPARTMENT OF VETERANS AFFAIRS

Street Address  810 Vermont Avenue NW

City, State, Zip Code  Washington, DC  20420

Name _____

Street Address _____

City, State, Zip Code _____

RECEIVED
JUL 10 2017
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

Name _____

Street Address _____

City, State, Zip Code _____

(1) This claim is filed pursuant to Title 3, Subtitle 2A of the Courts Article.  The damages claimed are in excess of $30,000.00, and the appropriate venue is:  United States District Court of Maryland

(2) The basis of the claim is described on the page(s) attached hereto.

(3) The resolution of the claim will involve particular expertise in this area of specialty  (169) Psychologist
(PLEASE SEE REVERSE SIDE FOR AREAS OF CONCENTRATION)

**WARNING:** Each Claimant has been advised that he/she may be held civilly liable for part or all the Costs resulting from the filing of this claim, whether it is won or lost; this would be an individual and personal responsibility.

**ATTORNEY FOR CLAIMANT(S)**

Signature  EMILY C. MALARKEY, ESQ.

Street Address  300 West Pratt Street, Suite 450

City, State, Zip Code  Baltimore, Maryland  21201

Telephone Number  410-539-6633

**CLAIMANT(S)**

Signature for each Claimant  WILLIAM LINS

_____

_____

_____

**EXHIBIT**

1

WILLIAM R. LINS            *
c/o Emily Malarkey, Esq.
Bekman, Marder & Adkins      *      IN THE HEALTH CARE
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201       *      ALTERNATIVE DISPUTE

      Claimant              *      RESOLUTION OFFICE

v.                           *      OF MARYLAND

THE U.S. DEPARTMENT       *
OF VETERANS AFFAIRS
810 Vermont Avenue NW      *      Claim No. _____
Washington DC 20420
                              *

      Serve On:
      General Counsel (021B)       *
      810 Vermont Avenue NW
      Washington DC 20420        *

      Health Care Provider        *

*     *     *     *     *     *     *     *     *     *     *

RECEIVED
JUL 10 2017
HEALTH CARE
ALTERNATIVE DISPUTE
RESOLUTION OFFICE

## STATEMENT OF CLAIM

Claimant, William R. Lins, by and through his attorneys, Emily C. Malarkey

and Bekman, Marder & Adkins L.L.C, sues the Health Care Provider, the U.S.

Department of Veterans Affairs, and states as follows:

### Parties, Jurisdiction and Venue

1.      The Claimant is William R. Lins, a resident of the State of Maryland,

and a veteran of the United States Marine Corps.

2.      The Health Care Provider is the U.S. Department of Veterans Affairs,

located in Washington D.C.

3.     This cause of action arises under the Federal Tort Claims Act, 28 U.S. Code § 2671 *et seq.,* inasmuch as the claims arise out of the conduct of the employees and agents, actual and/or apparent, of the U.S. Department of Veterans Affairs and the Baltimore VA Medical Center located at 10 North Green Street, Baltimore Maryland, which is and was a government and military health care facility for veterans of the U.S. Armed Services.

4.     Venue and jurisdiction for this claim are proper in the U.S. District Court for the District of Maryland pursuant to 28 U.S. Code § 1391 and 28 U.S. Code § 1346(b), respectively.

5.     The amount of this claim exceeds the $30,000 jurisdictional limit of the Health Care Alternative Dispute Resolution Office of Maryland.

6.     Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* Claimant submitted a timely claim in the amount of $2,000,000 on October 17, 2016.  That claim was denied by letter dated February 6, 2017.

### Factual Background

7.     William Lins enlisted in the U.S. Marine Corps Reserves in 2004 and served on active duty during periods spanning from 2004 through 2010.  He continued to serve in the Marine Corp Reserves from 2010 through 2016, and was honorably discharged in March of 2016 at the rank of Sergeant.

8.     During his service in the Marine Corps Reserves, Mr. Lins was deployed to Iraq from 2006 through 2007.  He was injured in the course of duty. During his second deployment, to Afghanistan from 2010 to 2011, his squad was

attacked by a suicide bomber, and several of his friends and comrades died.  Mr. Lins suffered permanent damage to his hearing, and is suspected to have suffered a traumatic brain injury.

9.     As a result of Mr. Lins' service in the Marine Corps and the physical, emotional and psychological trauma he suffered while serving combat deployments, Mr. Lins developed post-traumatic stress disorder (PTSD), major depressive disorder, and alcohol addiction.

10.    To assist with recovering from his PTSD, depression, and addiction, Mr. Lins was admitted to the Baltimore VA Medical Center Psychosocial Residential Rehabilitation Treatment Program (PRRTP) on September 23, 2014. For the next five months, he received inpatient treatment five days a week at the Baltimore VA Medical Center ("the Baltimore VA").

11.    During his treatment in the PRRTP, Mr. Lins met Erin Elizabeth Burns, Ph.D., a psychologist who became licensed by the State of Maryland in 2013. At all relevant times, Dr. Burns was acting as an agent of the United States Government and the Department of Veterans Affairs, and was acting in the scope of her employment.

12.    Dr. Burns became Mr. Lins' primary counselor, and they developed a close professional relationship.  Mr. Lins confided in Dr. Burns that he had a history of childhood emotional abuse.

13.    Mr. Lins was discharged from the PRRTP program on February 20, 2015, although he continued outpatient therapy through the VA.

14.     In the summer of 2015, however, Mr. Lins suffered a relapse and began drinking again. He voluntarily re-admitted himself to the Baltimore VA Hospital, and from there was readmitted to the PRRTP day program on August 11, 2015. Once again, he resided at the Baltimore VA five days a week, and Dr. Burns was his primary psychotherapist.

15.     On Veterans' Day in 2015, Dr. Burns offered to accompany Mr. Lins to Arlington National Cemetery, which was one of the final goals of his treatment plan. When they arrived in Washington D.C., Dr. Burns took Mr. Lins to a hotel, suggesting that he needed to get his mind off of the significance of the day. There, they had their first sexual encounter.

16.     Over the course of the ensuing weeks, Dr. Burns developed her inappropriate relationship with Mr. Lins, and regularly made sexual advances towards under the guise of providing therapy.

17.     Dr. Burns used Mr. Lins history of childhood abuse as a means of coercing him into having sexual intercourse. She told him that he had an aversion to intimacy because of his history, suggesting that sex with her was a way to cure that problem. She told him that he needed to practice making eye contact during sex as a way to cure his aversion to intimacy, and that if he did not, the childhood perpetrator would "win." She told him that he needed to have more sex in order to stop feeling "gay" about what happened to him as a child.

18.     Dr. Burns would have sexual intercourse with Mr. Lins in her office at the Baltimore VA in the middle of the day on an almost daily basis. At times, when

Mr. Lins was participating in group therapy, Dr. Burns would come to his therapy session and call him out of therapy to come to her office for "private counseling," *i.e.,* sex. She lied and told his other counselors that he was approved to take a leave of absence from the PRRTP to see his children, when in fact, she would take him to her office for sex. When Mr. Lins would go home for the weekend, Dr. Burns continued to communicate with him by phone and text message.

19.     Upon information and belief, individuals at the Baltimore VA were aware that Dr. Burns was involved in an inappropriate relationship with Mr. Lins during this time frame. Dr. Burns' supervisors discovered that she planned to attend a wedding with Mr. Lins. Upon information and belief, the supervisors had a meeting with Dr. Burns to inform her that her conduct was not appropriate. Nevertheless, the supervisor and the VA allowed Dr. Burns to continue to treat Mr. Lins as a patient.

20.     In December of 2015, Mr. Lins was discharged from the rehabilitation day program, but continued to see Dr. Burns on an outpatient basis for therapy. The "therapy" sessions were for the purpose of having sex.

21.     At some time in late 2015 or early 2016, the Baltimore VA took away Dr. Burns' private office and assigned her to an open cubicle in an administrative area. Dr. Burns told Mr. Lins that her office had been taken away because another male patient had made a false complaint to the VA regarding Dr. Burns' treatment of him, reporting "boundary issues" and inappropriate touching. She told Mr. Lins

that her clinical privileges had been revoked while the VA investigated his complaint. She denied the other patient's allegations to Mr. Lins.

22.   Dr. Burns continued her inappropriate sexual relationship with Mr. Lins even after she was unable to have sex with him in her private office. She would meet him in her house, at his house, or at a hotel for the purpose of having sexual relations.

23.   Dr. Burns prevented Mr. Lins from telling anyone about their relationship, stating that he would lose his VA benefits, that she would not support his application for disability benefits, and that he would lose custody of his children, if he told anyone.

24.   Some time in early 2016, Dr. Burns stopped working at the VA. She told Mr. Lins that she had resigned as a result of the other patient's false complaints (which she continued to deny) and the VA's investigation of her.

25.   Even after she stopped working at the VA, Dr. Burns continued her sexual relationship with Mr. Lins, becoming increasingly forceful in her interactions with him. She became extremely jealous of his relationship with his children. Whenever he would spend time with his children, she would make up emergencies and crises to convince him to see her instead. She told him that her dog had died, that she had been diagnosed with cancer, that she had been raped, and that she had a miscarriage in order to persuade him to see her.

26.   Eventually, Mr. Lins, who was continuing outpatient therapy at the VA, began telling his social worker that he was involved with a woman. He made

up a fictitious name so that the social worker did not know that the woman in fact was Dr. Burns.

27.   In the summer of 2016, the social worker asked Mr. Lins if the woman he had been talking about during their therapy sessions was in fact Dr. Burns.  He admitted that it was.  The social worker told Mr. Lins that other male patients had made complaints about Dr. Burns' inappropriate conduct towards them, and warned him to stay away from her.

28.   Upon learning this information, Mr. Lins ended his relationship with Dr. Burns and reported it to the VA and the Maryland Department of Health and Mental Hygiene.  He was asked by the VA and DHMH to give a sworn statement about his relationship with Dr. Burns, which he did.

29.   Even after attempting to end his relationship with Dr. Burns, she continued to contact him via phone and text message in an effort to convince him to continue the relationship.  She left him messages urging him to contact her so that she could "clear the air."  She asked him to speak to her father.

30.   Upon information and belief, at the time this lawsuit was filed, the Baltimore VA and the Maryland Department of Health and Mental Hygiene are continuing their investigation of Dr. Burns' inappropriate conduct towards Mr. Lins and other male patients of the Baltimore VA.

31.   Ms. Burns' license with the State of Maryland expired on March 31, 2017.  She has not renewed it.

## Count I
## Negligent Hiring, Supervision and/or Retention

32.   Claimant adopts and incorporates Paragraphs 1 through 30 as if fully set forth herein.

33.   The Health Care Provider U.S. Department of Veterans Affairs was negligent and careless in the following manners:

a.  By hiring Erin Burns, Ph.D., when it knew or should have known that she had acted inappropriately towards male patients, including but not limited to, having sexual relationships with patients;

b.  By retaining Erin Burns, Ph.D., when it knew or should have known that she had acted inappropriately towards male patients, including but not limited to, having sexual relationships with patients;

c.  By failing to properly supervise Dr. Burns in her interactions with male patients;

d.  By failing to terminate Dr. Burns or remove her from patient care when it knew, or reasonably should have known, that she was using her position of power to take sexual advantage of her patients;

e.  By failing to promptly and properly investigate Dr. Burns' conduct when it first learned of inappropriate conduct involving her patients;

f.  By failing to provide Dr. Burns with appropriate training, oversight, support and counseling that would have prevented her from having inappropriate relationships with her patients;

g.  And in other ways.

34.    As a result of the negligence of the Health Care Provider, Mr. Lins suffered, and will continue to suffer, severe economic, emotional, and psychological harm. He has been caused to suffer relapses of his depression and addiction, has been caused turmoil in his interpersonal relationships, suffered the isolation of his friends and family, and will continue to require additional therapy and counseling to deal with the effects of the harms he has suffered.

WHEREFORE, Claimant, William R. Lins, claims damages against the Health Care Provider in the amount of $2,000,000, with all costs to be paid by the Health Care Provider.

### Count II
### Vicarious Liability

35.    Claimant adopts and incorporates Paragraphs 1 through 33 as if fully set forth herein.

36.    The Health Care Provider, by and through its agent, Erin E. Burns, Ph.D., was negligent and careless in the following manners:

   a.  By abusing her position as mental health care provider for personal gain, including for sexual exploitation of William R. Lins;

   b.  By failing to provide adequate and competent counseling services to William R. Lins;

   c.  By engaging in an inappropriate sexual relationship with William R. Lins under the auspices of providing therapy;

   d.  By acting in a manner to suggest that sexual relations were part of the therapeutic process;

e. By committing an unwanted touching on Mr. Lins that amounted to a

civil battery;

f. And in other ways.

37. As a result of the negligence of the Health Care Provider, through its

agent, Erin E. Burns, Ph.D., Mr. Lins suffered, and will continue to suffer, severe

economic, emotional, and psychological harm. He has been caused to suffer relapses

of his depression and addiction, has been caused turmoil in his interpersonal

relationships, suffered the isolation of his friends and family, and will continue to

require additional therapy and counseling to deal with the effects of the

relationship.

WHEREFORE, Claimant, William R. Lins, claims damages against the

Health Care Provider in the amount of $2,000,000, with all costs to be paid by the

Health Care Provider.

_____
EMILY C. MALARKEY
BEKMAN, MARDER & ADKINS LLC
300 West Pratt Street, Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Claimant*