UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WILLIAM R. LINS | * |
| | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *   Case No. ELH-17-2163 |
| | * |
| UNITED STATES OF AMERICA | * |
| | * |
| Defendant. | * |
| | * |

* * * * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS</u>**

Defendant United States of America, by undersigned counsel, respectfully submits this memorandum of law in support of the motion to dismiss all claims alleged in Plaintiff's Complaint. ECF 1.

**I. <u>INTRODUCTION</u>**

Plaintiff seeks to hold the United States liable under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-80 ("FTCA"), alleging that the federal government is liable under Count I for negligent hiring, supervision, and/or retention of his therapist, and under Count II, is vicariously liable for her conduct. He claims $2 million in damages for mental, psychological, emotional, and economic harm.

Even assuming Plaintiff's allegations as true, all claims fail as a matter of law for lack of subject matter jurisdiction. As for vicarious liability under Count II, under Maryland law, the federal employee's conduct does not fall within the scope of her employment with the United

1

States Department of Veterans Affairs ("VA"). Under the FTCA, the United States is only vicariously liable for tortious acts of a federal employee acting within the scope of employment. Thus, the federal government's limited waiver of sovereign immunity under the FTCA does not apply to this count. 28 U.S.C. §§ 1346(b)(1), 2674.

As for Count I, Plaintiff failed to exhaust administrative remedies because the only tort claim presented administratively refers to the federal employee's "inappropriate doctor-patient sexual relationship while employed with the Baltimore Veterans Administration Medical Center ("BVAMC")." The administrative claim includes no reference to the government's alleged "negligent hiring, supervision, and/or retention" of the employee. Exhibit 1. Thus, Plaintiff's administrative claim cannot fairly be read to have put the United States on notice to investigate claims of negligent hiring, supervision, and/or retention, which deprives the Court of jurisdiction over Count I for Plaintiff's failure to exhaust administrative remedies. 28 U.S.C. § 2675. Moreover, the discretionary function exception precludes Plaintiff's claims under Count I. *Id.* at § 2680(a).

## II. FACTUAL BACKGROUND

According to the Complaint, Plaintiff, William R. Lins, enlisted in the U.S. Marine Corps Reserves in 2004 and in March 2016 was honorably discharged at the rank of Sergeant. ECF 1 ¶ 9. Plaintiff claims to have developed post-traumatic stress disorder ("PTSD"), major depressive disorder, and alcohol addiction for which he sought treatment at BVAMC. *Id.* at ¶¶ 11-12. In August 2014, Plaintiff began treatment at BVAMC as an outpatient primarily for alcohol abuse. After being diagnosed with PTSD, he was offered inpatient admission to BVAMC Residential

2

Trauma Program where he received individual and group counseling for substance abuse and trauma. *Id.* at ¶ 12.  In September 2014, Plaintiff's treatment included individual and group sessions with Erin Burns, PhD, who specialized in trauma.  After that first inpatient discharge, Burns and other therapists continued to provide group and individual therapy to Plaintiff on an outpatient basis.  As alleged in the Complaint, when his sobriety relapsed, Plaintiff was readmitted as an inpatient, then discharged to outpatient treatment, a treatment pattern that continued through 2015. *Id.* at ¶ 16. During inpatient admissions, Burns was Plaintiff's primary therapist.

Plaintiff alleges that Burns coerced him into having sexual intercourse, beginning in November 2015, and that contact continued regularly thereafter. *Id.* at ¶¶ 17-18. He alleges that even after his inpatient discharges, he continued to see Burns for outpatient therapy, but the purpose for those sessions was sexual intercourse. *Id.* at ¶ 22.

As alleged in the Complaint, in early 2016, Burns was assigned to an open cubicle in the administrative area after another male patient complained about her inappropriate conduct.[1] *Id.* at ¶ 23. Plaintiff alleges that he and Burns continued sexual relations even after she stopped participating in his treatment, and that Burns threatened if Plaintiff disclosed their relationship, "that he would lose his VA benefits, that she would not support his application for disability benefits, and that he would lose custody of his children." *Id.* at ¶¶ 24-25. After she stopped working at BVAMC, Burns manipulated Plaintiff to continue to see her, telling him "that her dog had died, that she had been diagnosed with cancer, that she had been raped, and that she had a

---

[1] On March 2, 2016, the VAMC suspended Burns' clinical privileges.  Exhibit 2. Burns resigned from the BVAMC on April 4, 2016. Exhibit 3.

3

miscarriage . . ." *Id.* at ¶ 27. Even after Plaintiff ended the relationship, Burns continued to contact him by phone and text. *Id.* at ¶ 30. Plaintiff alleges that Burns' inappropriate conduct extended to other male patients in addition to him. *Id.* at ¶ 31.

### III. STANDARD OF REVIEW

A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93 (1998)). The requirement that the plaintiff establish subject-matter jurisdiction "as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co.*, 523 U.S. at 94 (internal quotations omitted). For that reason, "[t]he objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Rule 12(h)(3)).

A defendant may challenge subject-matter jurisdiction under Rule 12(b)(1) by contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Once a defendant makes this facial challenge to subject-matter jurisdiction, "the burden of proving subject matter jurisdiction is on the plaintiff." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *accord Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999) (and cases there cited) ("It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction

does, in fact, exist."); *Adams,* 697 F.2d at 1219 ("The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction."). A plaintiff receives the same procedural protection as would be afforded under Rule 12(b)(6): "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009).

Alternatively, a defendant may challenge subject-matter jurisdiction by claiming that the jurisdictional allegations of the complaint are not true. *Adams*, 697 F.2d at 1219. Under this scenario, the plaintiff "is afforded less procedural protection" because the trial court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits, depositions, or live testimony, without converting the motion to a summary judgment proceeding. *Kerns*, 585 F.3d at 192 (quoting *Adams*, 697 F.2d at 1219); *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009). The plaintiff bears the burden of proving the jurisdictional facts by a preponderance of the evidence, *Vuyyuru*, 555 F.3d at 347-48 (citing *Adams*, 697 F.2d at 1219), "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns,* 585 F.3d at 192.

## IV. ARGUMENT

### A. PLAINTIFF'S FTCA CLAIMS ARE JURISDICTIONALLY BARRED

It is axiomatic that, absent a specific waiver, sovereign immunity protects the federal government and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 476 (1994). The terms and

5

conditions of the government's consent to be sued in any court define the jurisdiction of that court to entertain the suit. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *Gould v. U.S. Dep't of Health and Human Servs.*, 905 F.2d 738, 741 (4th Cir. 1990) (en banc). Moreover, the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman*, 453 U.S. at 161 (quoting *Soriano v. United States*, 352 U.S. 270, 276 (1957)).

> Specific to interpreting the FTCA, the Fourth Circuit has observed:
>
> It is well established that the United States may not be sued without its consent and that its consent must be unequivocally manifested in the text of a statute. *Lane v. Pena*, 518 U.S. 187, 192 (1996). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of scope, in favor of the sovereign." *Id.* These principles govern our approach in construing the FTCA.

*Williams v. United States*, 242 F.3d 169, 172 (4th Cir. 2001); *accord Radin v. United States*, 699 F.2d 681, 684-85 (4th Cir. 1983) (citing *United States v. Testan*, 424 U.S. 392, 399 (1976)).

Congress enacted the FTCA as a limited waiver of sovereign immunity for claims against the United States for money damages "arising out of torts committed by federal employees." *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). Subject to certain conditions, "[t]he Act gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment.'" *Millbrook v. United States*, 133 S. Ct. 1441, 1442 (2013) (quoting 28 U.S.C. § 1346(b)(1)); *see United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). Although the United States has waived its sovereign immunity through the FTCA, it only may be sued in accordance with the terms of that waiver.

*United States v. Orleans*, 425 U.S. 807, 814 (1976); *United States v. Varig Airlines*, 467 U.S. 797, 808 (1984).

B.  **COUNT I FOR NEGLIGENT HIRING, SUPERVISON, AND/OR RETENTION SHOULD BE DISMISSED AS A MATTER OF LAW**

   1.  **PLAINTIFF FAILED TO PRESENT AN ADMINISTRATIVE TORT CLAIM AS TO NEGLIGENT HIRING, SUPERVISION, AND/OR RETENTION, WARRANTING DISMISSAL**

The Supreme Court has recognized the "well-settled rule that Congress can impose conditions upon a waiver of the Government's immunity from suit." *United States v. John Hancock,* 364 U.S. 301, 306 (1960). Before a plaintiff may bring FTCA claims against the United States, he must demonstrate that there is a waiver of sovereign immunity, and that the conditions of the waiver have been satisfied. One of the significant conditions Congress placed on the FTCA's waiver of sovereign immunity is the prompt presentation of tort claims against the government. The Act provides that a tort action against the United States "shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). If Plaintiff fails to file an administrative claim within two years of accrual, the court lacks subject matter jurisdiction under the FTCA. See 28 U.S.C. §§ 2401(b), 2675. Plaintiff's complaint alleges that his first sexual encounter with Burns was Veteran's Day [November 11], 2015, ECF 1 at ¶ 17, and continued regularly into 2016.

A claim is considered presented "when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death." 28

7

C.F.R. § 14.2(a). This provision has been interpreted by this Court to mean that the claimant meets his burden if his claim provides the Government with adequate notice to conduct a proper investigation into the underlying incident and places a "sum certain" on the claim's value. *See Mack v. United States*, JFM-00-2296, 2001 WL 179888, at *4 (D. Md. 2001) (citing *Ahmed v. United States*, 30 F.3d 514, 516-17 (4th Cir. 1994)).

Here, Plaintiff alleges that he "submitted a timely claim to the . . . [VA] on October 17, 2016." ECF 1 at ¶ 7. The administrative claim only alleged "Burns' inappropriate doctor-patient sexual relationship while employed with [BVAMC]." Exhibit 1. There is no mention of negligent hiring, supervision, and/or retention.

There was, accordingly, nothing in the administrative claim that would cause the VA to investigate its personnel practices, some of which must have occurred years before the onset of the sexual relationship in November 2015. Moreover, there is no record that Plaintiff ever amended his administrative claim to include such allegations at any time before the administrative claim was denied. The negligent hiring, supervision, and/or retention claim was never presented to or considered by the United States administratively.

Claim presentment is jurisdictional and cannot be waived. Plaintiff's failure to raise negligent hiring, supervision, and/or retention at the administrative level divests the Court of subject-matter jurisdiction as to Count I. *Ahmed*, 30 F.3d at 516 (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)) ("We have observed that 'the requirement of filing an administrative claim is jurisdictional and may not be waived.'"); *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir. 1975); *Keene v. United States*, 700 F.2d 836, 841-42 (2d Cir. 1983); *Adams*

*v. HUD*, 807 F.2d 318, 319-21 (2d Cir. 1986); *see also McNeil v. United States*, 508 U.S. 106, 112-13 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies. Because petitioner failed to heed that clear statutory command, the District Court properly dismissed his suit."); *Chin v. Wilhelm*, 291 F. Supp. 2d 400, 404 (D. Md. 2003) ("Failure to file an administrative claim divests the court of subject matter jurisdiction."); *Bethel v. U.S., ex rel. Veterans Admin. Medical Center of Denver, Colorado*, 495 F. Supp. 2d 1121 (D. Colo. 2007)(failure to include allegation of negligent credentialing in administrative claim failed to provide government with sufficient notice to satisfy FTCA jurisdictional notice requirements).

Consequently, Plaintiff has not demonstrated compliance with the jurisdictional prerequisite to assert a claim under the FTCA, and Count I should be dismissed.

### 2. PLAINTIFF'S CLAIMS FOR NEGLIGENT HIRING, SUPERVISION, AND/OR RETENTION ARE BARRED AS A MATTER OF LAW BY DISCRETIONARY FUNCTION EXCEPTION

The potential liability of the United States under the FTCA is limited "by a number of exceptions." *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012). "The most important of [the] exceptions to the [FTCA's] waiver of sovereign immunity is the discretionary function exception." *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004) (en banc). It provides that the United States may not be sued for any claim based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This year, the Fourth Circuit emphasized that "the discretionary function exception is driven by separation of powers concerns, shielding decisions of a government entity made within

the scope of any regulatory policy expressed in statute, regulation, or policy guidance, even when made negligently." *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017). The plaintiff bears the burden of showing that the discretionary function exception does not apply. *Indem. Ins. Co. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009); *Welch v. United States,* 409 F.3d 646, 651 (4th Cir. 2005).

In *United States v. Gaubert*, 499 U.S. 315 (1991), the Supreme Court described a two-tier analysis to identify protected discretionary functions. The court first must analyze whether the governmental act or omission complained of "involves an element of judgment or choice." *Id.* at 322. "The inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993).

The second tier of the analysis is whether the choice or judgment is "based on considerations of public policy." *Gaubert*, 499 U.S. at 323. This step is designed "to prevent judicial 'secondguessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* (quotation omitted). Likewise, "when established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324. The issue at the second stage is merely whether the nature of the challenged conduct is susceptible to policy analysis – not the subjective intent of the actor exercising discretion. *Id.* at 325. This is not a fact-based inquiry; rather, courts should "look to the nature of the challenged decision in an objective, or general

sense, and ask whether that decision is one which [it] would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

In this case, the allegedly tortious conduct – negligently hiring, supervising and/or retaining a VA therapist – objectively satisfies both tiers of the *Gaubert* test.

First, plaintiff alleges in the broadest terms that the United States "was negligent and careless" in its hiring, supervision, and retention of Burns. ECF 1 at ¶ 34. Plaintiff has not identified any federal rule or statute mandating specific conduct by the VA relating to its hiring, supervision, or retention of employees. Absent a statute, regulation, or directive mandating a specific, non-discretionary course of conduct for how agency officials should hire, supervise, or retain VA employees, he cannot overcome the first prong of the *Gaubert* analysis.

The question asked in the second tier analysis – whether the challenged conduct is "susceptible to policy analysis" – should be answered affirmatively in this case. All of the challenged discretionary decisions relating to hiring, supervising, and retaining VA medical providers are susceptible to policy analysis, weighing and balancing social and economic considerations, such as: budgetary concerns, patient treatment, feasibility, efficiency, and prioritization of finite resources.

Underscoring the point, courts in the Fourth Circuit have long held that decisions regarding supervision and training of employees fall squarely within the discretionary function exception. *LeRose v. United States*, 285 F. App'x 93, 97 (4th Cir. 2008) (affirming dismissal under the discretionary function exception of plaintiffs' negligent hiring, supervision and retention claims); *Suter v. United States*, 441 F.3d 306, 313 & n.6 (4th Cir. 2006) ("Courts have repeatedly held that

11

government employers' hiring and supervisory decisions are discretionary functions."); *Cash v. United States*, WDQ-12-0563, 2012 WL 6201123 at *10 (D. Md. Dec. 11, 2012) ("employment decisions are policy choices within the discretionary function exception"). [2]

Because Plaintiff's claims of negligent hiring, supervision, and/or retention fall within the discretionary function exception, this Court lacks jurisdiction to hear them.

### 3. EVEN IF VIEWED AS A SEPARATE CAUSE OF ACTION, PLAINTIFF'S CLAIMS FOR NEGLIGENT HIRING, SUPERVISION, AND RETENTION MUST FAIL.

To the extent that Count I seeks to impose liability for the VA's negligent hiring, supervision, or retention of Burns, it is barred because Burns was not acting in the scope of employment. "An allegation of 'negligent supervision' will not render an otherwise unactionable claim actionable so long as the negligent supervision claim depends on activity of the supervised agent which is itself immune." *Nelson v. United States*, WDQ-13-1817, 2014 WL 988860 at *4 (D.Md. March 12, 2014), citing *Perkins v. United States*, 55 F.3d 910, 916-17 (4th Cir. 1995). In other words, if conduct outside the scope of employment defeats subject matter jurisdiction, negligent supervision or retention for that same conduct cannot confer jurisdiction. See *Perkins v. United States*, 55 F.3d 910, 916-17 (4th Cir. 1995) ("[I]f the United States is immune from suit for Agent Smyth's activities, it is also immune from suit for his negligent supervision because, without

---

[2] Other circuits have held that "'[d]ecisions regarding employment and termination are precisely the types of administrative action the discretionary function exception seeks to shield.'" *Sydnes v. United States*, 523 F.3d 1179, 1185-86 (10th Cir. 2008)(quoting *Richman v. Straley*, 48 F.3d 1139, 1146-47 (10th Cir. 1995); *Red Elk v. United States*, 62 F.3d 1102, 1107 (8th Cir. 1995) (§ 2680(a) bars claims for alleged negligent hiring, training, or supervision of law enforcement officers); *Bolduc v. United States,* 402 F.3d 50, 62 (1st Cir. 2005) (FBI's supervisory decisions were a matter of agency discretion and excepted under § 2680(a)).

12

his underlying activities and violations, there would be no cause of action for negligent supervision at all."); see also *Hodge v. United States*, 443 F. Supp. 2d 795, 798 (E.D. Va. 2006) (negligent supervision claim "depends on" the actions of an independent contractor; thus the United States is similarly immune for the negligent supervision of the independent contractor). The Fourth Circuit in *Perkins* also applied this rule to claims for negligent retention. 55 F.3d at 917 (applying the same rule to a negligent retention claim because the proximate cause of the injury was the violation by the individual within an FTCA exception, not his retention by the employer).

Plaintiff's claims for purported negligent hiring, supervision and retention claims, even if viewed as a separate cause of action, still must fail for lack of subject matter jurisdiction.

**B. COUNT II FOR VICARIOUS LIABILITY SHOULD BE DISMISSED AS A MATTER OF LAW BECAUSE ERIN BURNS WAS NOT ACTING WITHIN THE SCOPE OF EMPLOYMENT AT THE TIME OF THE ALLEGED TORTS**

Under the FTCA, United States shall be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances, . . . ." 28 U.S.C. § 2674. "An essential prerequisite to an action under the FTCA (and a condition of the government's limited waiver of sovereign immunity) is that the federal employee must have been "acting within the scope of his office or employment" at the time of the alleged negligence. Title 28, United States Code § 1346(b) provides:

> [T]he District Courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of <u>any employee of the Government while acting within the scope of his office or employment</u>, under circumstances where the United States, <u>if a private person</u>, would be held liable to the claimant in accordance with <u>the law of place where the act or omission occurred</u>.

13

*Id.* (emphasis supplied). See also 28 U.S.C. § 2679(b)(1).

Under the FTCA, whether a federal employee was acting within the scope of employment is determined by the respondeat superior law of the place where the act or omission occurred, here the State of Maryland. 28 U.S.C. § 1346(b)(1). Under Maryland law, the general test for scope of employment turns on whether the employee's actions "were in furtherance of the employer's business and were 'authorized' by the employer." *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991) (citations omitted); *see also Lee v. Pfeifer*, 916 F. Supp. 501, 508 (D. Md. 1996) (the essential issue is whether the employee's conduct occurred for personal reasons or for the purpose of furthering the employer's business); *Ennis v. Crenca*, 587 A.2d 485, 490 (Md. 1991) (stating that an employee's conduct is normally outside the scope of employment when the "employee's actions are personal, or where the employee is acting to further his own interests"); *Rusnack v. Giant Food, Inc.*, 337 A.2d 445, 453–54 (Md. App. 1975) ("Concisely stated the test is whether the servant was advancing his master's interests in doing what he did at the time he did it.").

Burns' actions were not merely unauthorized by the VA, but were directly contrary to the Maryland VA's policies against patient abuse.

> It is the policy of the VAMHCS to have 'zero' tolerance for abuse of any Veteran or beneficiary. . . . VAMHCS employees are required to adhere to the "Standards of Ethical Conduct," VA Regulation, 38 C.F.R. 0735.11(b); 5 CER. 2635 501 et seq. . ."

VA Maryland Health Care System (VAMHCS) Policy Memorandum 512-00/PS-009 May 2015 at 2.[3] Exhibit 4.

---

[3] Policy Memorandum 512-00/PS-009 was effective in December 2011 in essentially the same form.

14

> Patient abuse is defined as any mistreatment or coercion of a patient or beneficiary during a hospital admission or during the delivery of outpatient treatment. It includes but is not limited to acts of physical, psychological, verbal, sexual, emotional or financial nature by any employee. (e.g., physical striking of a patient; threatening or intimidating behavior; crossing professional boundaries (Attachment A); insulting remarks toward or about a Veteran; abandonment; neglect; or stealing from, or taking financial or personal advantage of a Veteran.)"

*Id*. at 3.

It is inconceivable that Burns' sexual relationship with Plaintiff was anything but personal, to further her own interests, or that her sexual relationship with a patient could possibly advance the VA's interests in providing therapeutic services to a veteran with mental health and substance abuse issues.

In *Samuels v. Two Farms, Inc*., 2012 WL 261196 at *9 (D.Md. 2012), an employee sued for sexual harassment and intentional torts stemming from her supervisor's sexual harassment. Judge Chasanow granted summary judgment in the employer's favor as to the tort claims because the supervisor was not acting within the scope of his employment, *citing Sawyer v. Humphries*, 322 Md. at 255-57. The Court also relied on *Tall ex rel. Tall v. Board of School Commissioners of Baltimore County*, 120 Md.App. 236, 254, 706 A.2d 659 (1998), finding that a written policy prohibited corporal punishment and that permissible interactions between teacher and handicapped student did not constitute implied authority to beat the mentally disabled child. 2012 WL 261196 at *9. Judge Chasanow also surveyed similar sexual harassment cases from this District concluding that an employer was not vicariously liable for an employee's acts outside the scope of employment. *Id*. at *10, *citing Davidson–Nadwodny v. Wal–Mart Assocs., Inc.,* No. CCB–07–2595, 2010 WL 1328572, at *9 (D.Md. Mar.26, 2010); *Perry v. FTData, Inc.*, 198 F.Supp.2d 699,

15

708-09, (D.Md.2002); *Thomas v. Bet Sound–Stage Rest./BrettCo, Inc.*, 61 F.Supp.2d 448, 454–55 (D.Md.1999).

Cases from other jurisdictions support the conclusion that Burns was acting outside the scope of employment by engaging in sexual relations with a patient. In *Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006), the Fifth Circuit held that a VA physician's inappropriate and unnecessary examination of plaintiff's genitalia was outside the scope of his employment because the physician's personal desire motivated the assaults. *See id.* at 486-87. The Court noted that "an employer will not be held liable as a matter of law merely because the employment situation provided the opportunity for the servant's wrongful acts or the means to carry them out." *Id.* (internal quotations omitted); *see also Barsamian v. City of Kingsberg*, 597 F. Supp.2d 1054, 1068 (E.D. Cal. Jan. 28, 2009) ("That the employment brought the tortfeasor and victim together in time and place is not enough."); *Smith v. United States Department of Veteran's Affairs*, 2009 U.S. Dist. LEXIS 11438, *8-13 (S.D. Miss. Feb. 13, 2009) (collecting cases); *Perry v. City of Fresno*, 215 Cal. App. 4th 94, 102 (Cal. Ct. App. 2013), as modified on denial of reh'g (April 26, 2013) ("The mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of that employee's duties does not render the employer vicariously liable.").

Plaintiff's own allegations defeat the claim that Burns' actions were somehow "authorized," meaning "incident to the performance of the duties entrusted to the employee by the employer." *Sawyer*, 587 A.2d at 470. The facts, as alleged, demonstrate a clear-cut departure from government business in favor of Burns' personal interests. Burns "regularly made sexual advances towards him under the guise of providing therapy," ECF 1 at ¶ 18; "coerc[ed] him into having

sexual intercourse," *Id*. at ¶ 19; "insisted that Mr. Lins engage in sexual intercourse with her in her office at the Baltimore VA in the middle of the day on an almost daily basis," *Id.* at ¶ 20; and lied to other counselors that Plaintiff was approved to take a leave of absence from the program "to see his children, when in fact, she would take him to her office for sex." *Id.* at ¶ 20. For vicarious liability to attach to the VA for Burns' conduct, "Plaintiff must demonstrate that those tortious actions occurred, at least in part, to further Defendant's business purposes. Nowhere does Plaintiff make such an allegation." *Samuels*, 2012 WL 261196 at *10. Like the policies in *Tall* and *Samuels,* the VA's written policy prohibiting sexual acts between staff and patients strongly supports the conclusion that the Plaintiff's experiences from Burns' conduct did not further any of VA's business purposes.

## V. **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court GRANT the Motion to Dismiss.

                Respectfully submitted,

                Stephen M. Schenning
                Acting United States Attorney

By:    / s / _____
      Roann Nichols
      Assistant United States Attorney
      36 South Charles Street 4th Floor
      Baltimore, MD 21201
      (410) 209-4827