IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM R. LINS,

    *Plaintiffs*,

    v.

UNITED STATES OF AMERICA,

    *Defendant*.

Civil Action No. ELH-17-2163

**MEMORANDUM OPINION**

Plaintiff William R. Lins, a retired Sergeant in the U.S. Marine Corps Reserves, filed a medical malpractice and negligence suit against the United States of America (the "Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* ECF 1 (Complaint). Lins alleges that while he was a patient at the Veterans Affairs ("VA") Medical Center in Baltimore, Maryland, a VA psychologist initiated and maintained an inappropriate sexual relationship with him over the course of several months. *Id.* In particular, plaintiff brings claims against the Government for Negligent Hiring, Supervision and/or Retention (Count I) and Vicarious Liability (Count II), alleging that he has suffered economic, emotional, and psychological harm as a result of the conduct of the psychologist. *Id.*[1]

Defendant has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, asserting sovereign immunity. ECF 9. The motion is supported by a memorandum of law (ECF 9-1) (collectively, "Motion"), and several exhibits. Plaintiff opposes the Motion. ECF 15 ("Opposition"). Defendant replied. ECF 18 ("Reply").

---

[1] Plaintiff has also filed suit against the psychologist. That case is pending in the Circuit Court for Baltimore City. *See* ECF 18-1 (State court complaint).

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual and Procedural Background[2]

Plaintiff is a Marine Corps veteran who, as a result of events that occurred during his deployment in Iraq and Afghanistan, now suffers from post-traumatic stress disorder ("PTSD"), major depressive disorder, and alcohol addiction. ECF 1, ¶¶ 10-11. He was admitted to the Baltimore VA Medical Center for residential treatment beginning in September 2014 and continuing through April 2015. *Id.* ¶ 12; ECF 9-2 at 4 (Form 95 Supplemental Attachment). There, he was treated by Erin Elizabeth Burns, Ph.D., a psychologist. ECF 1, ¶ 13; ECF 9-2 at 4. Plaintiff alleges that he relapsed and was readmitted in August 2015, where he was again treated by Dr. Burns. ECF 9-2 at 4; ECF 1, ¶ 16.

Plaintiff and Dr. Burns developed a close relationship, which became sexual in November 2015. ECF 1, ¶ 17. According to plaintiff, his first sexual encounter with Dr. Burns occurred on Veterans' Day in 2015, when Dr. Burns accompanied plaintiff to Arlington National Cemetery and then to a hotel in Washington, D.C., where she suggested that "he needed to get his mind off of the significance of the day." *Id.* Lins alleges that Dr. Burns subsequently "developed an inappropriate relationship" with him, and "regularly made sexual advances towards him under the guise of providing therapy." *Id.* ¶ 18. At times, Dr. Burns allegedly used the childhood abuse that plaintiff experienced "as a means of coercing him into having sexual intercourse," suggesting "sexual relations with her was a way to cure his problems." *Id.* ¶ 19.

---

[2] In view of the procedural posture of the case, I must accept as true the facts alleged in the Complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

These interactions allegedly occurred "on an almost daily basis," and Dr. Burns would take plaintiff out of group therapy to her office for "'private counseling.'" *Id.* ¶ 20.

According to plaintiff, Dr. Burns' supervisors were aware of an inappropriate relationship between Dr. Burns and plaintiff, and the supervisors discovered Dr. Burns' plans to attend a wedding with plaintiff. *Id.* ¶ 21. Lins asserts that Dr. Burns' supervisors met with her "to inform her that her conduct was not appropriate," but "the VA allowed Dr. Burns to continue to treat Mr. Lins as a patient." *Id.*[3] Dr. Burns allegedly continued her sexual relationship with plaintiff after she lost her private office, which was taken from her following complaints from another male patient. *Id.* ¶¶ 23-24. Thereafter, Dr. Burns "would arrange to meet [plaintiff] at her house, at his house, or at a hotel" for sex. *Id.* ¶ 24.

Plaintiff claims that as the relationship continued, Dr. Burns became "increasingly forceful," even after she resigned from the Baltimore VA in April 2016. *Id.* ¶¶ 26-27; *see* ECF 9-4. He claims that she "would make up emergencies and crises to convince him to see her" instead of allowing him to spend time with his children. ECF 1, ¶ 27.

Eventually, on an unidentified date, plaintiff informed a social worker of the relationship, and the social worker allegedly told plaintiff about complaints lodged against Dr. Burns by other male patients. *Id.* ¶ 28. Plaintiff avers that he terminated his relationship with Dr. Burns in June 2016. ECF 9-2 at 4: *see also* ECF 1, ¶ 29.

On October 17, 2016, plaintiff filed an administrative claim with the Department of Veterans Affairs, as required by the FTCA, seeking $2,000,000. *See* ECF 1, ¶ 7; ECF 9-2 (Administrative Claim); *see also* 28 U.S.C. § 2675(a) (requiring presentment of claim to the

---

[3] Plaintiff does not specify when Dr. Burns' supervisors became aware of her conduct or when they met with Dr. Burns. But, effective March 2, 2016, the VA prohibited Dr. Burns from engaging in "direct patient care." ECF 9-3.

appropriate agency before instituting a civil action).[4]  In his administrative claim, plaintiff briefly recounted the history of his relationship with Dr. Burns.  ECF 9-2 at 4.  According to plaintiff, the claim was denied by letter dated February 6, 2017.  ECF 1, ¶ 7.  This suit followed.

After the Motion was fully briefed, plaintiff moved to file a surreply.  ECF 19 ("Motion for Surreply").  The Motion for Surreply stated that, simultaneously with the filing of this suit, plaintiff had filed a lawsuit against Dr. Burns in the Circuit Court for Baltimore City, Maryland.  *Id.* ¶ 2.  Dr. Burns had been recently deposed in the State-court case, and plaintiff requested leave to file a surreply, "limited to addressing the recent testimony of Dr. Burns as it relates to the issues raised by Defendant's Motion."  ECF 19, ¶ 6.  Plaintiff offered "a brief preview" of the testimony, asserting that Dr. Burns "testified to a number of facts that support Plaintiff's argument that her conduct was perpetrated in the scope of her employment, and that the VA knew or should have known about her inappropriate relationship with the Plaintiff."  *Id.* ¶ 3.

The United States opposed the Motion for Surreply.  ECF 20.  By Order of March 29, 2018, I denied the Motion for Surreply.  ECF 21.  However, I expressly allowed plaintiff to amend his Complaint by April 20, 2018, if he wished "to plead new facts supportive of his claim. . . ."  *Id.* at 2.  Notably, plaintiff did not amend his Complaint.

## II.    Legal Standard

As noted, the United States has moved to dismiss under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, asserting plaintiff's claims are barred by sovereign immunity.  ECF 9.  The Fourth Circuit recently affirmed that the defense of sovereign immunity is a jurisdictional bar, stating that "'sovereign immunity deprives federal courts of jurisdiction to

---

[4] Plaintiff also asserts that, as required by Maryland law, he filed the claim with the Health Claims Alternative Dispute Resolution Office.  ECF 1, ¶ 4; *see* Md. Code (2013 Repl. Vol., 2017 Supp.), § 3-2A-01 *et seq.* of the Courts & Judicial Proceedings Article.

hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, __ F.3d __, No. 17-1592, 2018 WL 1915162, at *6 (4th Cir. Apr. 24, 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). "When a defendant makes a facial challenge to subject matter jurisdiction, 'the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.'" *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)).

A factual challenge, on the other hand, can also assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Durden*, 736 F.3d at 301. In considering a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) ("Unless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute,' the district court may . . . resolve the jurisdictional facts in dispute by considering evidence . . . such as affidavits.") (Citation omitted).

The Government appears to bring both a facial and a factual challenge to plaintiff's allegations of subject matter jurisdiction. As to Count I, defendant asserts that plaintiff has failed adequately to present his administrative tort claim to the VA, which defendant attached to its Motion. ECF 9-1 at 7-9; *see* ECF 9-2 (Administrative Claim). And, defendant also asserts that the claim fails as a matter of law. *See* ECF 9-1 at 9-13. As to Count II, defendant argues that plaintiff's claim is barred based on the four corners of the Complaint. But, the Government also attached an exhibit, which it maintains supports its conclusion. *Id.* at 13-17; *see* ECF 9-5 (VA Policy Memorandum).

The Government's challenge to Count I is in part a factual challenge to subject matter jurisdiction, and therefore I shall consider the Administrative Claim as evidence. ECF 9-2; *see Velasco*, 370 F.3d at 398. However, I shall construe defendant's challenge to Count II as a facial challenge, rather than a factual one, because for the purposes of the Motion it does not contest the allegations of the Complaint. Accordingly, I shall not address the other exhibits submitted by the Government with respect to Count II. *See Kerns*, 585 F.3d at 192-93.

### III.    Discussion

### A.  The FTCA

"Absent a statutory waiver, sovereign immunity shields the United States from a civil tort suit." *Kerns*, 585 F.3d at 193-94 (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). A plaintiff may recover against the United States only to the extent that the United States has expressly waived sovereign immunity. *See, e.g.*, *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005) (citation omitted); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990) (holding that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed") (citation and internal quotation marks omitted).

Under the Federal Tort Claims Act, Congress has waived the sovereign immunity of the United States, exposing it to tort liability for claims "for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," so long as certain conditions are satisfied. 28 U.S.C. § 1346(b)(1); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). But, the United States may be liable under the FTCA only to the extent that a "private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), and only "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. Thus, "the substantive law of each state establishes the cause of action." *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2012).

However, the United States is not liable for *all* torts committed by federal employees. Section 1346(b) of Title 28 "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity." *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994). For a claim to fall within that "certain category," it must be, *id.* (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original):

> [1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Because these elements are prerequisites for consideration under the FTCA, each one of them must be considered jurisdictional. *See Kerns*, 585 F.3d at 194 (stating that "if [the federal employee] was acting outside the scope of her employment with the Government, the district

court lacks jurisdiction").  Similarly, the exceptions to the Government's waiver of sovereign immunity, enumerated in 28 U.S.C. § 2680, are also jurisdictional.  *Welch*, 409 F.3d at 651.

In accordance with the sixth element of an FTCA claim, state law, not federal law, serves as the source of substantive liability.  *See United States v. St. Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003) (citation omitted).  Notably, "[t]he Supreme Court has concluded that the 'law of the place' refers to the 'whole law,' including choice-of-law principles of the state where the negligent act or omission occurred."  *Id.* (citing *Richards v. United States*, 369 U.S. 1, 11 (1962)).

The parties assume, without discussing, that Maryland law applies.  Maryland follows the rule of *lex loci delicti* for tort actions, which means that the court applies the substantive law of the state where the wrong occurred.  *Proctor v. Washington Metropolitan Area Transit Authority*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648-49 (2007).  Because the conduct of Dr. Burns and her supervisors took place largely in Maryland, I shall apply Maryland law.

### B.  Count I

Defendant offers three arguments to support dismissal of plaintiff's first claim, for negligent hiring, supervision, and/or retention: (1) plaintiff failed adequately to present the claim; (2) the discretionary function exception bars claims for negligent hiring and supervision; and (3) the tortious activity was outside Dr. Burns' scope of employment.  ECF 9-1 at 7-13.

### 1.  Claim Presentment

One of the conditions of the FTCA's waiver of sovereign immunity is a requirement of notice to the federal agency that employed the alleged tortfeasor.  The notice requirement is

established by 28 U.S.C. § 2675(a), which provides, with exceptions not relevant here, as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

A notice of claim must include a demand for a sum certain in damages, and a subsequent tort action may "not be instituted for any sum in excess of the amount the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). The federal agency cannot hold the claimant in limbo, perpetually awaiting a decision on the claim before suit can be filed, because of the so-called "deemer" clause of § 2675(a): "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

The Fourth Circuit has consistently stated that "the requirement of filing an administrative claim is jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *accord Drew v. United States*, 217 F.3d 193, 196 (4th Cir.) ("Where . . . a claim is not first presented to the appropriate agency, the district court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject matter jurisdiction."), *aff'd en banc by equally divided court*, 231 F.3d 927 (4th Cir. 2000), *cert. denied*, 532 U.S. 1037

(2001); *Kokotis v. United States Postal Serv.*, 223 F.3d 275, 278 (4th Cir. 2000); *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994).[5]

Defendant asserts that plaintiff did not raise the issue of negligent hiring, supervision, or retention in his administrative claim. Therefore, the government maintains that plaintiff has failed to satisfy the jurisdictional requirement of claim presentment with respect to this count. *Id.* at 7-9; *see Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994) (observing that the requirement of filing an administrative claim is jurisdictional). In support of this assertion, defendant has attached plaintiff's administrative claim to the Motion. ECF 9-2. And, indeed, plaintiff did not expressly discuss his legal theory of defendant's negligent hiring, supervision, and/or retention in his administrative claim. *See id.*

However, plaintiff's failure to do so does not render his claim deficient. The regulation concerning the presentment issue states, 28 C.F.R. § 14.2(a): "[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . [a] written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident . . . ."

_____

[5] The Supreme Court has "endeavored . . . to 'bring some discipline' to the use of the term 'jurisdictional,'" and has "pressed a stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority,' and nonjurisdictional 'claim-processing rules,' which do not." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011), and *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004)); *see also Dolan v. United States*, 560 U.S. 605, 610 (2010); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-62 (2009); *Union Pac. R.R. Co. v. Brotherhood of Locomotive Eng'rs & Trainmen Gen'l Cmte. of Adjustment*, 558 U.S. 67, 81-82 (2009); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008); *Bowles v. Russell*, 551 U.S. 205, 209-13 (2007); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510-13 (2006); *Eberhart v. United States*, 546 U.S. 12, 15-20 (2005) (per curiam); *Scarborough v. Principi*, 541 U.S. 401, 413-14 (2004). However, to my knowledge, the Supreme Court has not addressed the character of the FTCA's notice requirement, nor has the Fourth Circuit altered its prior conclusions in light of the Supreme Court's recent cases concerning the concept of jurisdiction. Therefore, the circuit precedent holding that the notice requirement is jurisdictional remains controlling.

"This provision has been interpreted by the courts to indicate that the claimant meets his burden if the notice (1) is sufficient to enable the agency to investigate and (2) places a 'sum certain' value on her claim." *Ahmed*, 30 F.3d at 516-17 (citation and internal quotation marks omitted). Neither the regulation nor the statute requires the claimant to enumerate any specific causes of action, and I shall not impute such a requirement here. In my view, plaintiff's administrative claim gave the government adequate notice of the incidents giving rise to this suit.

## 2. Discretionary Function Exception

As noted, the FTCA's waiver of sovereign immunity is subject to a number of exceptions. *See* 28 U.S.C. § 2680. "The most important of these exceptions to the waiver of sovereign immunity is the discretionary function exception." *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004). Section 2680(a) of Title 28 provides that the United States shall not be liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

"Congress enacted this exception 'to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . [and] to protect the Government from liability that would seriously handicap efficient government operations.'" *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)) (alterations in *Suter*).

"To determine whether conduct qualifies for the discretionary function exception, courts apply a two-pronged test. First, a court considers whether the challenged governmental conduct involves an element of judgment or choice." *Rich v. United States*, 811 F.3d 140, 144 (4th Cir.

2015) (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). Governmental conduct does *not* involve judgment or choice when "a statute, regulation, or policy prescribes a specific course of action." *Rich*, 811 F.3d at 144 (citation omitted); *see Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

"Second, if the challenged conduct does involve an element of judgment, the court must then determine whether the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy." *Rich*, 811 F.3d at 144 (citing *Gaubert*, 499 U.S. at 322-23). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

The Government contends that decisions related to hiring, supervision, and retention satisfy both prongs. ECF 9-1 at 11-12. It points out that plaintiff "has not identified any federal rule or statute mandating specific conduct by the VA relating to its hiring, supervision, or retention of employees." *Id.* at 11. As a result, defendant maintains that these activities are a matter of discretion. *Id.* According to defendant, hiring, supervision, and retention are also "susceptible to policy analysis," as they require "weighing and balancing social and economic considerations." *Id.* The Government cites two Fourth Circuit cases that appear to support its conclusion.

In *Suter*, 441 F.3d at 309, the plaintiffs sued the United States after they were defrauded by a scheme in which an undercover FBI agent had participated. The Fourth Circuit found that the FBI's approval of the agent's activities fell within the discretionary function exception. *Id.* at 312. In a footnote, the *Suter* Court added, *id.* at 312 n.6 (citations omitted): "We also conclude

that Appellants' claim that the FBI negligently hired and supervised [the agent] is barred by the discretionary function exception. Courts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions."

Thereafter, in its unpublished decision in *LeRose v. United States*, 285 F. App'x 93 (4th Cir. 2008), the Fourth Circuit credited its prior decision in *Suter* and said, *id.* at 97: "We previously decided that government employers' hiring and supervisory decisions are discretionary functions." And, in *Cash v. United States*, WDQ-12-0563, 2012 WL 6201123 (D. Md. Dec. 11, 2012), a judge of this Court followed this line of cases, concluding that "employment decisions are policy choices within the discretionary function exception." *Id.* at 10 (citing *LeRose*, 285 F. App'x at 97; *Suter*, 441 F.3d at 312 n.6).

Plaintiff protests that other courts of appeals have allowed for the possibility of a negligent hiring claim that survives the discretionary function defense. ECF 15 at 13-14. However, he concedes that "the Fourth Circuit does appear to make sweeping, blanket statements suggesting that all negligent hiring/retention/supervision claims are barred by the discretionary function exception." *Id.* at 15 n.5. Nonetheless, plaintiff submits "that that was not the intent of the Fourth Circuit when it made those statements." *Id.* In particular, plaintiff contends that the *Suter* Court held that "negligent hiring and supervision claims are barred <u>if</u> they meet the requirements of the discretionary function exception," and that neither *Suter* nor *LeRose* operate as a *per se* bar against negligent hiring claims. *Id.* Plaintiff goes on to argue that in this particular instance, the discretionary function exception should not apply because defendant was on notice that Dr. Burns' relationship with plaintiff was inappropriate. *Id.* at 16-18.

I disagree with plaintiff's reading of *Suter* and *LeRose*. In *Suter*, the Fourth Circuit dismissed the plaintiffs' negligent hiring and supervision claims out of hand, even though the

United States had allegedly allowed its employee to commit criminal acts against the plaintiffs. 441 F.3d at 309, 312 n.6. Moreover, both of the cases cited by the *Suter* Court in support of its conclusion appear to preclude entirely FTCA actions for negligent hiring. *See Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("[D]efendants' allegedly negligent and reckless employment, supervision and training . . . . fall squarely within the discretionary function exception."); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[W]e hold that decisions concerning the hiring, training, and supervising of . . . employees are discretionary in nature, and thus immune from judicial review."). *LeRose* is similarly unequivocal. There, the Court said, 285 F. App'x at 97: "The [agency's] decisions regarding the hiring, supervision and retention of [an employee] are precisely the type of decisions that are protected under the discretionary function exception."

To be sure, in *Andrews v. United States*, 732 F.2d 366, 370 (4th Cir. 1984), the Fourth Circuit upheld a finding of liability against the Government in a negligent supervision case that concerned a sexual relationship between a medical provider and a patient. In *Andrews*, a Physician's Assistant ("P.A.") at a naval base engaged the plaintiff, a patient, in sexual activity. *Id.* at 367-68. The P.A. was supervised by the medical officer in charge of the clinic and two other doctors. *Id.* at 367. Another patient made a complaint about the P.A.'s behavior to the medical officer, who was also a health care provider. *Id.* at 368. But, after the P.A. denied the allegations, the medical officer did not pursue the matter. *Id.* The patient sued the Government for medical malpractice and negligent supervision, based on the conduct of the P.A. and the P.A.'s supervisors. *Id.* at 367, 371. On appeal from an award of damages against the United

States, the Fourth Circuit determined that the medical officer had breached the standard of care in failing to supervise the P.A. properly.  *Andrews*, 732 F.3d at 370.[6]

Although the P.A. in *Andrews* was not acting in the scope of his employment, the Court concluded that supervising physicians failed to exercise due care in regard to their own duty to provide "adequate medical care" to the plaintiff.  *Id.*  The successful claim in *Andrews*, based on South Carolina tort law, appears to have been predicated on an amalgamation of negligent supervision and the independent medical malpractice of the supervisor.  *See id.* at 371 ("We conclude that [the P.A.'s] actions amounted to medical malpractice, not assault and battery, and, therefore, § 2680(h) does not bar the Andrews from recovering damages under the Federal Tort Claims Act for the negligent supervision provided by [the medical officer].").  However, *Andrews* preceded *Suter* and *LeRose* by about two decades.  Moreover, there is no indication as to whether the Government raised the discretionary function exception as a defense in that case.

Plaintiff cites a number of recent district court cases from outside the Fourth Circuit, in which courts have allowed negligent supervision claims to proceed, despite the Government's assertion of the discretionary function exception.  *See, e.g.*, *Brignac v. United States*, 239 F. Supp. 3d 1367, 1381 (N.D. Ga. 2017); *Riascos-Hurtado v. United States*, No. 09 CV 0003 RJD VMS, 2015 WL 3603965, at *6-7 (E.D.N.Y. June 5, 2015); *Brons v. United States*, No. 1:14-CV-00864, 2015 WL 630433, at *4 (N.D. Ga. Feb. 12, 2015).  The common element in these cases is that they rely on *Tonelli v. United States*, 60 F.3d 492 (8th Cir. 1995).

In *Tonelli*, the Eighth Circuit considered a suit against the United States Postal Service, in which the plaintiffs alleged that various postal employees were illegally tampering with their

---

[6] Of relevance here, the Fourth Circuit also determined that the P.A. was not acting within the scope of his employment under South Carolina law when he seduced his patient. *Andrews*, 732 F.2d at 370.

mail.  *Id.* at 494.  The plaintiffs reported the tampering to the local Postmaster, who allegedly

failed to stop the unlawful actions after having notice of them.  *Id.* at 495.  The plaintiffs sued,

*inter alia*, for negligent supervision and retention.   *Id.* at 495-96.   Notwithstanding the

Government's assertion of the discretionary function exception, the Eighth Circuit concluded, *id.*

at 496: "Failure to act after notice of illegal action does not represent a choice based on plausible

policy considerations."  Therefore, the discretionary function exception did not apply.  *Id.*

Although *Tonelli* was decided more than ten years before *Suter* and *LeRose*, the Fourth

Circuit cases are not so factually similar to *Tonelli* that I am compelled to preclude the possibility

of a successful negligent supervision and retention claim, were that claim to allege that the

Government had notice of an illegal act by Dr. Burns and failed to respond.[7]  As currently

pleaded, however, plaintiff has not alleged such a circumstance.  Rather, plaintiff has merely

asserted that "Dr. Burns' supervisors discovered that she planned to attend a wedding with Mr.

Lins."  ECF 1, ¶ 21.  This allegation does not suggest defendant's knowledge of any illegal

activity.

Fourth Circuit precedent indicates that the FTCA's discretionary function exception bars

plaintiff's claims for negligent hiring, retention, and supervision, as alleged in his Complaint.

Accordingly, I must dismiss Count I for lack of subject matter jurisdiction.[8]  But, if plaintiff can

present factual support for the Government's knowledge of illegal conduct by Dr. Burns,

plaintiff may amend his Complaint, due by June 1, 2018.

---

[7] *Suter* concerned illegal acts by an employee of the United States of which the Government had notice, but the goals and circumstances of those acts were clearly grounded in considerations of policy.  *Suter*, 441 F.3d 306 at 311-12.

[8] As a result, I need not address the Government's third argument as to this Count, concerning the scope of employment.  That issue is considered in the discussion of Count II.

Further, unlike in *Andrews*, plaintiff has not asserted a direct negligence claim against a supervisor of Dr. Burns. However, if plaintiff can state a claim for recovery based on the medical malpractice of one of Dr. Burns' colleagues or supervisors, plaintiff may likewise amend his Complaint on this basis by June 1, 2018.

## C. Count II

The United States has moved to dismiss plaintiff's second claim, for vicarious liability, on the ground that Dr. Burns was acting outside the scope of her employment when the torts were allegedly committed. ECF 9-1 at 13-17. As noted, for a claim to fall within the "certain category of claims for which the United States has waived its sovereign immunity," *Meyer*, 510 U.S. at 477, one prerequisite is that the federal employee tortfeasor must be "acting within the scope of his office or employment" in committing the tort. 28 U.S.C. § 1346(b)(1).

## 1.

The issue of whether Dr. Burns was acting within the scope of her employment in initiating and maintaining a sexual relationship with plaintiff is determined by reference to Maryland law. *See id.* In Maryland, "[l]itigants may invoke the doctrine of respondeat superior as a means of holding an employer, corporate or otherwise, vicariously liable for the tortious conduct of an employee, where it has been shown that the employee was acting within the scope of the employment relationship at that time." *S. Mgmt. Corp. v. Taha*, 378 Md. 461, 480-81, 836 A.2d 627, 638 (2003).

Under the doctrine of respondeat superior, "'an employer is ordinarily responsible for the tortious conduct of his employee committed while the servant was acting within the scope of the employment relationship.'" *Barclay v. Briscoe*, 427 Md. 270, 282, 47 A.3d 560, 567 (2012) (quoting *Embrey v. Holly*, 293 Md. 128, 134, 442 A.2d 966, 969 (1982)). The doctrine embodies

the principle that, "[b]ecause 'the master holds out his servant as competent and fit to be trusted, . . . he in effect warrants his servant's fidelity and good conduct in all matters within the scope of his employment.'" *Oaks v. Connors*, 339 Md. 24, 30, 660 A.2d 423, 426 (1995) (quoting *Globe Indem. Co. v. Victill Corp.*, 208 Md. 573, 580, 119 A.2d 423, 427 (1956)).

"Ordinarily, the issue of whether a particular act is within the scope of employment is properly decided by a jury . . . ." *Barclay*, 427 Md. at 283, 47 A.3d at 568. It is only where there is "'no conflict in the evidence relating to the question and but one inference can be drawn therefrom'" that the issue becomes a "'question . . . of law for the court.'" *Id.* (citation omitted). Moreover, "there are few, if any, absolutes" in assessing whether an employee's act is within the scope of employment. *Sawyer v. Humphries*, 322 Md. 247, 255, 587 A.2d 467, 471 (1991).

The general rule is that, "[f]or an employee's tortious acts to be considered within the scope of employment, the acts must have been in furtherance of the employer's business and authorized by the employer." *Taha*, 378 Md. at 481, 836 A.2d at 638. However, this general benchmark is not susceptible of mechanical application. "By 'authorized' [it] is not meant authority expressly conferred [by the employer], but whether the act was such as was incident to the performance of the duties entrusted to the employee by the employer, *even* [*if*] *in opposition to his express and positive orders*." *Sawyer*, 322 Md. at 255, 587 A.2d at 470 (emphasis added) (citations and some internal quotation marks omitted). "Accordingly, 'an act may be within the scope of employment, even though forbidden or done in a forbidden manner, or consciously criminal or tortious . . . .'" *Tall v. Bd. of Sch. Comm'rs of Baltimore City*, 120 Md. App. 236, 252, 706 A.2d 659, 667 (1998) (quoting *Great Atl. & Pac. Tea Co. v. Noppenberger*, 171 Md. 378, 391, 189 A. 434 (1937)).

"Another factor is whether the 'employee's conduct was 'expectable' or 'foreseeable'.'" *Sage Title Grp., LLC v. Roman*, 455 Md. 188, 213, 166 A.3d 1026, 1040 (2017) (quoting *Sawyer*, 322 Md. at 256, 587 A.2d at 470), *reconsideration denied* (Sept. 21, 2017). In *Sage Title*, the Maryland Court of Appeals found sufficient evidence for a trier of fact to conclude that an employee's illegal acts were committed within the scope of his employment. *Id.* at 213-15, 166 A.3d at 1040-41. The court based its conclusion on three findings: (1) the employee was authorized to perform activities very similar to the tortious ones in question (*id.* at 213-14, 166 A.3d at 1040-41); (2) there was "no question that [the employee] was acting 'in furtherance of the employer's business and authorized by the employer'" (*id.* at 214, 166 A.3d at 1041); and (3) the tortious acts were foreseeable to his employer because the employer had knowledge that the employee had previously violated a related company policy. *Id.* at 214-15, 166 A.3d at 1041.[9]

Nevertheless, "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests," the actions will ordinarily be considered outside the scope of employment, even if they occur "during normal duty hours and at an authorized locality." *Sawyer*, 322 Md. at 256-57, 587 A.2d at 471. And, "'[w]here the conduct of the servant is unprovoked, highly unusual, and quite outrageous,' courts tend to hold 'that this in itself is sufficient to indicate that the motive was a purely personal one' and the conduct outside the scope of employment." *Id.* at 257, 587 A.2d at 471 (quoting *Prosser and Keeton on the Law of Torts* § 70, at 506 (5th ed.1984)).

**2.**

---

[9] Although foreseeability is "an important factor," *Sawyer*, 322 Md. at 256, 587 A.2d at 471, I am unaware of any Maryland case in which an employer has been held vicariously liable based solely on the foreseeability of the employee's conduct.

According to the Government, "[i]t is inconceivable that Burns' sexual relationship with Plaintiff was anything but personal, to further her own interests, or that her sexual relationship with a patient could possibly advance the VA's interests in providing therapeutic services to a veteran with mental health and substance abuse issues." ECF 9-1 at 15. Defendant cites cases from this Court and other courts to show that sexual harassment is generally outside the scope of employment. *See, e.g.*, *Samuels v. Two Farms, Inc.*, DKC-10-2480, 2012 WL 261196, at *9-10 (D. Md. Jan. 27, 2012). Therefore, defendant asserts, the vicarious liability claim must be dismissed for lack of subject matter jurisdiction. ECF 9-1 at 16-17.

Plaintiff's response takes a procedural rather than a substantive approach. He cites *Kerns*, 585 F.3d at 196, in which the Fourth Circuit stated: "Because the scope-of-employment issue is determinative of both jurisdiction and the underlying merits of an FTCA claim, dismissal under Rule 12(b)(1) is inappropriate unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." The Court explained that, because the plaintiff in *Kerns* faced "an indirect attack on the merits [] by way of a Rule 12(b)(1) motion," the complaint "deserve[d] greater procedural protection than that afforded by a typical Rule 12(b)(1) motion." *Id.* at 195. Therefore, the Fourth Circuit instructed, *id.*: "A district court should assume jurisdiction and assess the merits of the claim when the relevant facts—for jurisdictional and merits purposes—are inextricably intertwined." Plaintiff asserts that *Kerns* governs this case, and "precludes the Court from granting the Government's Rule 12(b)(1) motion on the grounds that Dr. Burns was acting outside the scope of her employment." ECF 15 at 20.

Plaintiff's argument is compelling and, curiously, the United States fails to address it in its Reply. *See* ECF 18. However, the Fourth Circuit's holding in *Kerns* does not sustain plaintiff's claim.

In *Kerns*, the plaintiff sued the United States under the FTCA, alleging that a government employee, acting within the scope of her employment, had negligently caused a car crash that killed the plaintiff's husband. 585 F.3d at 189. The United States filed a motion to dismiss under Rule 12(b)(1), and attached exhibits that sought to demonstrate that the employee "was not acting within the scope of her employment with the Government at the time of the accident," but rather had rented a car to visit personal friends. *Id.* at 190. However, there was some dispute as to whether the employee's rental car might have been related to government business. *Id.* at 191. The district court granted the motion to dismiss under Rule 12(b)(1), concluding that "under Maryland law, [the employee] was not acting within the scope of her employment with the Government at the time of the tragic accident." *Id.* at 191. The district court based this conclusion on exhibits and affidavits attached to the motion to dismiss. *Id.* at 191-92.

On appeal, the plaintiff contended that "the key jurisdictional issue—whether [the employee] was acting within the scope of her employment with the Government—is also an issue central to the merits of [the plaintiff's] FTCA claim." *Id.* at 192. Accordingly, the Fourth Circuit took a two-step approach in resolving whether the district court had properly granted the motion to dismiss. First, the court "ascertain[ed] the proper legal framework for resolving a Rule 12(b)(1) motion to dismiss, when the jurisdictional facts are inextricably intertwined with those central to the merits." *Id.* at 192. Second, the court considered whether, "in the context of this FTCA claim, the scope-of-employment issue is an essential aspect of both the jurisdictional question and the merits, rendering dismissal under Rule 12(b)(1) inappropriate." *Id.*

In the first step of its analysis, the *Kerns* Court explained that "a defendant may challenge subject matter jurisdiction in one of two ways." *Id.* (citation omitted). As addressed previously, these are a facial challenge, asserting that the allegations pleaded in the complaint are

insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Id.* (citation omitted). Notably, in *Kerns*, the United States raised a *factual* challenge to the plaintiff's complaint. *Id.* "In that situation, the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.*

"In short," the Fourth Circuit explained, *id.* at 193:

[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts.

Because the defendant raised a factual challenge to subject matter jurisdiction, the Fourth Circuit proceeded to the second step of its analysis and concluded that the jurisdictional issue in *Kerns* was intertwined with the merits of the claim. *Id.* at 196. In that circumstance, the Court concluded, "dismissal under Rule 12(b)(1) is inappropriate, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." *Id.* Rather, the plaintiff should be entitled to conduct discovery on the intertwined scope-of-employment issue. *Id.*

**3.**

Plaintiff contends that this case is like *Kerns*, and therefore discovery must be conducted on the scope-of-employment issue. ECF 15 at 20. I disagree. In my view, the Government's challenge to the Court's subject matter jurisdiction as to this claim is, at its core, facial rather than factual. *See* ECF 9-1 at 1 ("Even assuming Plaintiff's allegations as true, all claims fail as a matter of law for lack of subject matter jurisdiction."). Although defendant attached exhibits to

its Motion (*see* ECF 9-5, VA Policy Memorandum), the scope-of-employment question can be resolved based on the allegations of the Complaint alone.[10]

As defendant asserts, "Plaintiff's own allegations defeat the claim that Burns' actions were somehow 'authorized,' meaning 'incident to the performance of the duties entrusted to the employee by the employer.'" ECF 9-1 at 16 (quoting *Sawyer*, 322 Md. at 255, 587 A.2d at 470). Indeed, plaintiff alleges that Dr. Burns developed an inappropriate relationship with him not as part of her job, but rather "under the guise of providing therapy." ECF 1, ¶ 18. Further, Lins alleges that Dr. Burns "dishonestly" lied to plaintiff's other counselors in order to get him to come to her office for sex, and communicated with him by text message during non-work hours. *Id.* ¶ 20.

It is also clear from the Complaint that Dr. Burns was told by her supervisors that her conduct was not authorized. *Id.* ¶ 21. Nevertheless, she allegedly continued to meet plaintiff for sex in his home, her home, and at hotels once she could no longer do so at work. *Id.* ¶ 24. And, she allegedly "prevented Mr. Lins from telling anyone about their relationship." *Id.* ¶ 25.

Significantly, plaintiff alleges that even after Dr. Burns *was no longer employed by the VA*, she continued and even escalated her aggressive sexual behavior towards plaintiff. *Id.* ¶ 27. Obviously, actions that occurred after her employment were not within the scope of her employment.

Moreover, plaintiff offers no countervailing factual allegations that would support an inference that Dr. Burns was acting within the scope of her employment when she seduced plaintiff. *See Samuels*, 2012 WL 261196, at *10 ("In order to hold Defendant vicariously liable

---

[10] The Fourth Circuit has previously concluded that *Kerns* does not stand for the proposition advanced here by plaintiff. *See Durden*, 736 F.3d at 301, 307 (jurisdictional issue and merits issue are not intertwined when plaintiff could not render the Government liable under the asserted theories of negligence).

for [an employee's] purportedly tortious conduct, Plaintiff must demonstrate that those tortious actions occurred, at least in part, to further Defendant's business purposes. Nowhere does Plaintiff make such an allegation.").

Plaintiff asserts that "Dr. Burns used her position of power and trust to induce Mr. Lins to engage in a sexual relationship with her under the guise of providing therapy" and "used her position as his VA counselor to induce him to continue the behavior . . . ." ECF 15 at 24. And, plaintiff notes that "[m]uch of this conduct occurred in the VA Hospital, while Dr. Burns was working as an employee of the VA and treating Mr. Lins during inpatient and outpatient addiction treatment programs." *Id.* at 24-25.

Be that as it may, the question under Maryland law is whether Dr. Burns' actions "represent a departure from the purpose of furthering the employer's business." *Sawyer*, 322 Md. at 257, 587 A.2d at 471. Notably, if "an employee's actions are personal," they are outside the scope of employment even if they occur "during normal duty hours and at an authorized locality." *Id.*

Indeed, plaintiff ends his Opposition by asserting that Dr. Burns "abused her position of trust and authority and convinced Mr. Lins to engage in a personal, sexual relationship with him that not only served no therapeutic purpose, but rather, caused him additional emotional and psychological harm." ECF 15 at 25. This is precisely the issue—the relationship, and the actions taken to establish and further it, were undeniably "personal," and "served no therapeutic purpose."

Notably, in *Andrews*, 732 F.2d at 370, applying South Carolina law, the Fourth Circuit concluded that the P.A. did not act within the scope of his employment "when he manipulated the physician-patient relationship to seduce" the patient. The Court observed that "it is clear"

that the provider "was furthering his self-interest, not his employer's business, at the time he seduced his patient." *Id.* Moreover, the Court said, *id.*: "Nothing in the record suggests that [the P.A.] considered his sexual adventures to be a *bona fide* part of the therapy he was employed to provide." Plaintiff's allegations make plain that Dr. Burns knew her conduct was not a legitimate form of therapy.

Maryland law is unambiguous: Actions taken for personal reasons, and not to advance the employer's business, are outside the scope of employment. *See Taha*, 378 Md. at 481, 836 A.2d at 638 ("For an employee's tortious acts to be considered within the scope of employment, the acts must have been in furtherance of the employer's business and authorized by the employer."); *Brown v. Mayor*, 167 Md. App. 306, 323, 892 A.2d 1173, 1183 (2006) ("[A] person's acts will be deemed within the scope of employment when they are taken in furtherance of the business of the employer and are authorized by the employer"); *see also Barclay*, 427 Md. at 283, 47 A.3d at 567; *Sawyer*, 322 Md. at 257, 587 A.2d at 471.

This is not to suggest that an employer could never be held liable for the sexual torts of its employees. In most instances, an employer is not protected by sovereign immunity from negligent hiring, supervision, or retention claims. Nor can I foreclose the possibility that a plaintiff may allege facts suggesting that a sexual relationship between a medical employee and a patient, however unethical, was instituted for a therapeutic purpose and in misguided furtherance of the employer's business.

In this case, however, it is evident from the facts alleged in the Complaint that Dr. Burns was not acting in the scope of her employment when she committed the alleged torts. Therefore, this Court lacks subject matter jurisdiction over the vicarious liability claim. *See* 28 U.S.C. § 1346(b)(1).

## IV.  Conclusion

For the reasons stated above, I shall GRANT defendant's Motion.  Because this Court lacks subject matter jurisdiction, the dismissal shall be without prejudice.  *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

An Order follows, consistent with this Memorandum Opinion.


Date:  May 10, 2018                                    _____/s/_____
                                                                      Ellen Lipton Hollander
                                                                      United States District Judge