**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

**No. 19-2069**

————————————

WILLIAM R. LINS,

                    Plaintiff - Appellant,

      v.

UNITED STATES OF AMERICA,

                    Defendant - Appellee.

————————————

Appeal from the United States District Court for the District of Maryland, at Baltimore. Ellen L. Hollander, District Judge.  (1:17-cv-02163-ELH)

————————————

Argued:  October 26, 2020                  Decided:  February 17, 2021

————————————

Before AGEE, FLOYD, and THACKER, Circuit Judges.

————————————

Affirmed in part; reversed and remanded in part by unpublished per curiam opinion.  Judge Agee wrote an opinion concurring in part and dissenting in part.

————————————

**ARGUED:**  Emily Claire Malarkey, BEKMAN, MARDER & ADKINS, LLC, Baltimore, Maryland, for Appellant.   Roann Nichols, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Robert K. Hur, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After his therapist at the Baltimore Veterans Affairs Medical Center ("VA") engaged in a sexual relationship with him, William Lins ("Appellant") filed a Federal Torts Claim Act ("FTCA") action against the United States. Appellant alleged that the United States was responsible for negligently hiring, supervising, and retaining his therapist. Appellant also sought to hold the United States vicariously liable for his therapist's actions.

Appellant appeals the district court's dismissal of his claims against the United States for lack of subject matter jurisdiction. Appellant argues that the district court erred in holding that his negligent hiring, supervision, and retention claims were barred by the discretionary function exception to the FTCA. Appellant further argues that the district court erred in holding that Appellant's therapist was not acting in the scope of her employment when she engaged in a sexual relationship with him, and that, therefore, the United States could not be held vicariously liable.

We hold that the district court erred in holding that the discretionary function exception established a categorical bar to negligent hiring, supervision, and retention claims and, as a result, erred in dismissing Appellant's negligent supervision claim for lack of subject matter jurisdiction. However, we agree with the district court that Appellant's therapist was not acting within the scope of her employment. Therefore, we affirm the district court's dismissal of Appellant's vicarious liability claim.

I.

A.

Appellant served in the United States Marine Corps Reserves from 2004 until 2016. During this time, he was deployed to both Iraq and Afghanistan.  While deployed to Afghanistan, Appellant's squad was attacked by a suicide bomber, killing several of his fellow Marines and leaving Appellant with damaged hearing and a suspected traumatic brain injury.  As a result of his service and deployments, Appellant suffered post-traumatic stress disorder, major depressive disorder, and alcohol addiction.

To treat his mental illness, Appellant was admitted to the Baltimore VA Psychosocial Residential Rehabilitation Treatment Program ("PRRTP") in September 2014.  There, he began to see Dr. Erin Elizabeth Burns, Ph.D., for treatment.  Dr. Burns was an employee of the VA and Appellant's primary therapist.  During the course of his therapeutic relationship with Dr. Burns, Appellant confided in her that he had a history of childhood abuse.  Appellant was ultimately discharged from the PRRTP in February 2015 but relapsed in his alcohol addiction and was readmitted into the PRRTP in August 2015. Dr. Burns was again his primary therapist.

In November 2015, Dr. Burns accompanied Appellant to Washington, D.C. because he wanted to visit Arlington National Cemetery, one of his therapeutic goals.  Following the visit to Arlington National Cemetery, Dr. Burns took Appellant to a hotel where she suggested he needed to get his mind off of the day, and the two had their first sexual encounter.  In the following weeks, their sexual relationship continued.  Dr. Burns told Appellant that having sexual relations with her was a way to cure his aversion to intimacy

stemming from his childhood abuse. Further, she told him, "he needed to practice making eye contact during sex as a way to cure his aversion to intimacy, and that if he did not, the childhood perpetrator would 'win.'" J.A. 21.[1] Finally, Dr. Burns told him, "he needed to have more sex in order to stop feeling 'gay' about what happened to him as a child." *Id.*

During the course of their relationship, Dr. Burns would insist that Appellant have sexual intercourse with her in the middle of the day in her office at the VA nearly every day. She would remove him from his group therapy sessions to take him to her office to have sex. Dr. Burns lied to the other counselors about the true purpose of removing Appellant from his group therapy sessions. Even when Appellant would leave the VA for the weekend, Dr. Burns would continue to call and text him. During this time, Dr. Burns' supervisors became aware that she planned to attend a wedding with Appellant. As a result, Dr. Burns' supervisors met with her and told her this behavior was inappropriate. Nonetheless, Dr. Burns' supervisors allowed her to continue to treat Appellant.

In December 2015, Appellant was again discharged from the PRRTP, but he continued to see Dr. Burns for outpatient therapy. Dr. Burns used these outpatient "therapy sessions" for the purpose of having sex. In late 2015 or early 2016, Dr. Burns had her private office taken away by the VA. She told Appellant that it was because another patient made a false complaint alleging that she inappropriately touched him. Still, Dr. Burns continued her sexual relationship with Appellant, meeting him at his house, her house, or a hotel. She threatened Appellant would lose his VA benefits, lose custody of his children,

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

and that she would not support his application for disability benefits if he told anyone about their relationship.

In early 2016, Dr. Burns stopped working at the VA and told Appellant it was due to the other patient's false complaints and the VA's investigation of her. But still, Dr. Burns continued her relationship with Appellant. Ultimately, Appellant told a social worker in his outpatient therapy at the VA about his relationship with Dr. Burns. In turn, the social worker told Appellant about a number of other complaints against Dr. Burns and warned him to stay away from her. Appellant ended his relationship with Dr. Burns and reported her to the VA and the Maryland Department of Health and Mental Hygiene. In response, Dr. Burns continued to contact Appellant via phone and text message in an attempt to continue the relationship and "clear the air." J.A. 24.

B.

Appellant filed suit against the United States in the District of Maryland in August 2017. Appellant's complaint alleges the United States was negligent in hiring, supervising, and retaining Dr. Burns and is vicariously liable for Dr. Burns' negligent acts because Dr. Burns was acting within the scope of her employment in pursuing a sexual relationship with Appellant. Appellant argues that the United States waived sovereign immunity for these claims pursuant to the FTCA.

The United States moved to dismiss Appellant's complaint pursuant to Federal Rule of Civil Procedural 12(b)(1). The district court granted the United States' motion. The district court held that the discretionary function exception to the FTCA applied to Appellant's negligent hiring, supervision, and retention claims, and therefore, the district

5

court lacked jurisdiction because the United States did not waive sovereign immunity as to these claims. The district court further held that Dr. Burns was not acting in the scope of her employment in pursuing a sexual relationship with Appellant, and thus, the district court did not have jurisdiction over Appellant's vicarious liability claim.

## II.

We review a district court's dismissal of a complaint for lack of subject matter jurisdiction de novo. *See Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016).

## III.

Pursuant to the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees to the extent that a private party would be liable under state law. *See* 28 U.S.C. § 1346.[2] "Being a waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States." *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995). Further, "exceptions to immunity under the FTCA are narrow, thereby preserving congressional intention to immunize the United States from various classes of suits." *Id.*

---

[2] "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

A.

<u>Negligent Hiring, Supervision, and Retention Claims</u>

1.

Congress has not waived sovereign immunity for suit against the United States for

> [a]ny claim based upon an act or omission of an employee of
> the Government, exercising due care, in the execution of a
> statute or regulation, whether or not such statute or regulation
> be valid, or based upon the exercise or performance or the
> failure to exercise or perform a discretionary function or duty
> on the part of a federal agency or an employee of the
> Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The purpose of the discretionary function exception is to prevent

"judicial second-guessing" of administrative and legislative decisions grounded in policy.

*United States v. Gaubert*, 499 U.S. 315, 323 (1991) (internal quotation marks and citations

omitted). Therefore, "the exception 'protects only governmental actions and decisions

based on considerations of public policy.'" *Id.* (quoting *Berkovitz v. United States*, 486

U.S. 531, 537 (1988)).

In determining whether the discretionary function exception bars a claim, a court

should consider whether a "federal statute, regulation, or policy specifically prescribes a

course of action for an employee to follow." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*,

486 U.S. at 536). Thus, the first consideration in deciding whether or not the discretionary

function exception applies is to determine whether the action at issue involves an element

of choice or judgment. *See id.* If it does, the court should consider "whether that judgment

is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–

23 (quoting *Berkovitz*, 486 U.S. at 536). "This inquiry focuses 'not on the agent's

subjective intent in exercising the discretion . . . , but on the nature of the actions taken and on whether they are susceptible to policy analysis.'" *Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006) (quoting *Gaubert*, 499 U.S. at 325).

2.

a.

Here, the district court and the United States rely on *Suter v. United States* to conclude that we have held that the discretionary function exception *categorically* bars negligent hiring and supervision claims. 441 F.3d at 312 n.6. In *Suter*, this court stated in a footnote, "We also conclude that Appellants' claim that the FBI negligently hired and supervised Vega is barred by the discretionary function exception. Courts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions." *Id.* But, crucially, that language (1) did not provide any analysis of the discretionary function exception; (2) was not integral to the holding in that case; and (3) was in a footnote. *See id.* Indeed, this court's holding that the discretionary function exception applied in *Suter* was based on the fact that the exercise of discretion in the way the FBI conducted an undercover operation was grounded in public policy. *See id.* at 311–12. The denial of the appellant's negligent hiring and supervision claims in *Suter* were not a reasoned part of our holding, which is underscored by the fact that the only discussion of these claims occurred in a footnote. *See id.* at 312 n.6. Therefore, the language contained in footnote six of *Suter* is merely dicta. *See McDaniel v. Sanchez*, 452 U.S. 130, 141 (1981)

8

(concluding that a statement in a footnote was non-binding dicta where the language was not essential to the court's decision).

But the district court also concluded that both cases cited in *Suter*'s footnote six categorically barred negligent supervision and hiring claims. In *Nurse v. United States*, the Ninth Circuit held that the plaintiff's claims of negligent hiring, supervision, and training "fell squarely within the discretionary function exception," but, like the *Suter* opinion, failed to offer any further analysis. 226 F.3d 996, 1001–02 (9th Cir. 2000). In *Burkhart v. Washington Metropolitan Area Transit Authority*, the D.C. Circuit held, "[D]ecisions concerning the hiring, training, and supervising of [Washington Metropolitan Area Transit Authority ("WMATA")] employees are discretionary in nature, and thus immune from judicial review." 112 F.3d 1207, 1217 (D.C. Cir. 1997). Importantly, the D.C. Circuit also noted, "The parties have pointed to no law or policy 'specifically prescrib[ing]' guidelines for the hiring, training, or supervision of WMATA employees." *Id.* The D.C. Circuit analyzed the policies offered by the plaintiff but concluded that they did not constrain WMATA's hiring, supervision, or training decisions. *See id.*

While *Nurse* summarily dismissed such claims as barred by the discretionary function exception without an analysis, the *Burkhart* court considered whether there were applicable hiring, supervising, or training policies that mandated a course of action and concluded that there were not. Thus, we do not agree that these cases unequivocally bar negligent hiring, supervision, and retention claims. Rather, *Burkhart* supports the unremarkable proposition that where there is a policy prescribing how a government official should act in hiring, supervising, and training employees and an employer acts in

9

violation of those policies, an FTCA claim is not barred by the discretionary function

exception and is cognizable.  Thus, even *Suter* cannot be said to categorically bar negligent

hiring and supervision claims absent further analysis.

b.

The United States also argues that *LeRose v. United States* -- an unpublished Fourth

Circuit opinion -- supports the contention that negligent hiring, supervision, and retention

claims are barred by the discretionary function exception.  285 F. App'x 93, 97 (4th Cir.

2008).  However, not only is *LeRose* non-precedential, but the *LeRose* court relied only on

*Suter* in summarily dismissing the plaintiff's negligent hiring, supervision, and training

claims:

> We previously decided that government employers' hiring
> and supervisory decisions are discretionary functions. *Suter v.
> United States*, 441 F.3d 306, 312 n. 6 (4th Cir. 2006). The
> hiring of an employee involves several public policy
> considerations including the weighing of the qualifications of
> candidates, weighing of the backgrounds of applicants,
> consideration of staffing requirements, evaluation of the
> experience of candidates, and assessment of budgetary and
> economic considerations. Because this process is multi-
> faceted, it is precisely the type of decision that Congress
> intended to shield from liability through the discretionary
> function exception.

*Id.*  Notably, *LeRose* did not separately analyze the discretion or policies behind hiring,

supervising, and training employees.  *See id.*

c.

Despite concluding that *Suter* and *LeRose* established Fourth Circuit precedent

which categorically barred claims for negligent hiring, supervision, and training, the

10

district court also acknowledged Appellant's reliance on the Eighth Circuit case *Tonelli v. United States*, 60 F.3d 492 (8th Cir. 1995). Indeed, the district court acknowledged *Tonelli* as distinct from *Suter* and *LeRose*. In *Tonelli*, the Eighth Circuit concluded that it had jurisdiction over negligent supervision and retention claims at issue in that case because the Government's "[f]ailure to act after notice of illegal action [did] not represent a choice based on plausible policy considerations." 60 F.3d at 496. As a result, the district court allowed Appellant leave to amend his complaint to "present factual support for the Government's knowledge of illegal conduct by Dr. Burns[.]" J.A. 141. Nonetheless, despite being afforded this opportunity, Appellant did not amend his complaint. The district court then dismissed the case with prejudice for lack of subject matter jurisdiction.

Appellant argues that he does not need to allege illegal conduct to demonstrate that the discretionary function exception does not apply, and the district court erred in so holding. We agree with Appellant.

d.

Appellant directs us to several cases from our sister circuits that have upheld negligent hiring and supervision claims pursuant to the FTCA. *See, e.g.*, *Simmons v. United States*, 805 F.2d 1363, 1371 (9th Cir. 1986) (allowing a negligent supervision claim pursuant to the FTCA); *Ben v. United States*, 160 F. Supp. 3d 460, 473 (N.D.N.Y. 2016) (analyzing whether discretionary function exception applied to plaintiff's negligent supervision and training claims under the *Gaubert* test). We agree with our sister circuits that the discretionary function exception does not categorically bar negligent hiring,

supervision, and retention claims. Rather, such claims should be analyzed pursuant to the clear test laid out by the Supreme Court in *Gaubert*.

*Gaubert* holds that if a policy, statute, or regulation mandates a course of action, the discretionary function exception does not apply. *See* 499 U.S. at 323. Appellant contends that the discretionary function exception should not apply to his negligent supervision claim because the VA had a "zero tolerance" policy for patient abuse that required action against Dr. Burns when her supervisors learned that she was engaging in an inappropriate relationship with Appellant. J.A. 58. The policy stated, "It is the policy of the [VA] to have 'zero' tolerance for abuse of any Veteran or beneficiary." *Id.* The VA's policy against patient abuse disallowed employees from "enter[ing] into non-professional relationships . . . with Veterans." *Id.* The definition of patient abuse in the VA policy includes "acts of physical, psychological, verbal, sexual, emotional or financial nature by any employee" and "crossing professional boundaries." *Id.* The policy's definition of "crossing professional boundaries" includes a therapist engaging in a "dual relationship[]" with a patient. *Id.* at 62. A "dual relationship" occurs "when [a] provider engage[s] in more than one relationship with a client, becoming provider and friend, employer, teacher, business associate, or sex partner." *Id.* The "Action" section of the patient abuse policy, which is the portion of the policy that sets forth the action to be taken when an employee engages in an inappropriate relationship, provides:

> The supervisor will immediately consider the alleged abuser for non-punitive reassignment to administrative duties as long as there is no adverse impact on the delivery of patient care. ***At minimum, the supervisor will assign the alleged abuser to duties that do not involve the delivery of patient care to the***

> *alleged victim, and the supervisor will instruct the alleged*
> *abuser to avoid all contact with the alleged victim.*

*Id.* at 59 (emphasis supplied).

Dr. Burns violated the clear VA policy against engaging in dual relationships with patients, and her supervisors were aware of this violation but did not act according to the policy. Dr. Burns' supervisors contravened this clear policy when they discovered that Dr. Burns planned to attend a wedding with Appellant but did not "assign [Dr. Burns] to duties that [did] not involve the delivery of patient care to [Appellant or] instruct [Dr. Burns] to avoid all contact with [Appellant]." J.A. 59. While the dissent posits that Dr. Burns attending a wedding with Appellant does not create a "dual relationship" under the VA's policy, under a plain reading of the policy, we cannot agree. How could a therapist attending a wedding with her patient be anything other than a "dual relationship"? In inviting Appellant to attend a wedding with her, Dr. Burns was clearly "engag[ing] in more than one relationship" with him. Surely, counseling was not going on at the wedding and nothing in the record suggests otherwise.

Because the VA acted contrary to a mandatory policy that dictated how it should supervise its employees, its actions cannot be shielded by the discretionary function exception. *See Gaubert*, 499 U.S. at 324 ("If [an] employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy."). Consequently, we hold that Appellant's negligent supervision claim is not barred, and the district court erred in dismissing it for lack of subject matter jurisdiction.

Despite the existence of a policy prescribing specific supervisory actions, the VA does not have any policies dictating how it hires or retains employees. Indeed, Appellant conceded as much during oral argument. *See* Oral Argument at 2:55–3:40, *Lins v. United States*, No. 19-2069 (4th Cir. Oct. 26, 2020), https://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. Therefore, VA hiring and retention decisions are discretionary, and we must consider whether these are the type of decisions grounded in public policy that Congress sought to protect. In this regard, we agree with the United States that the VA's decisions to hire and retain an employee are the type of discretionary decisions that are grounded in public policy. *See Tonelli*, 60 F.3d at 496 ("The post office's choice between several potential employees involves the weighing of individual backgrounds, office diversity, experience and employer intuition. These multi-factored choices require the balancing of competing objectives, and are of the nature and quality that Congress intended to shield from tort liability." (internal quotation marks and citations omitted)); *see also O'Bryan v. Holy See*, 556 F.3d 361, 384 (6th Cir. 2009) (holding the "selection of employees, officials and officers typically falls within the scope of the FTCA's discretionary function exception"); *Crete v. City of Lowell*, 418 F.3d 54, 62 (1st Cir. 2005) (discussing state legislature's intent in allowing a city to retain discretion in hiring decisions). Thus, we conclude the district court does not possess subject matter jurisdiction over Appellant's negligent hiring and retention claims and affirm the district court's dismissal of those claims.

14

B.

Vicarious Liability Claim

1.

The United States has waived sovereign immunity pursuant to the FTCA only where an employee of the United States was acting within the scope of her employment. 28 U.S.C. § 1346(b)(1). Whether an employee was acting within the scope of her employment is determined by the law of the place where the act or omission occurred. *See id.* In this case, it is undisputed by the parties that the substantive law of Maryland applies.

In Maryland, a person acts in the scope of her employment when she acts in furtherance of the employer's business and her actions were "authorized" by the employer. *Sawyer v. Humphries*, 587 A.2d 467, 470 (1991). In *Sawyer*, the Maryland Court of Appeals held:

> The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By "authorized" is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties entrusted to him by the master, even though in opposition to his express and positive orders.

*Id.* (internal quotation marks and citation omitted).

An important factor in the scope of employment consideration is whether the employee's conduct is "expectable" or "foreseeable." *Sawyer*, 587 A.2d at 471. If an employee's actions are personal or represent a departure from the purpose of furthering the employer's business, the employee is not acting within the scope of her employment. *See*

15

*id.* Indeed, where an employee's conduct is "unprovoked, highly unusual, and quite outrageous," it counsels toward a finding that the conduct was purely personal in nature and outside the scope of employment. *Id.* (internal quotation marks omitted). This test must be applied on a case-by-case basis, and whether an employee acted within the scope of her employment is typically a question of fact for the jury. *See id.* at 470; *S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 639 (2003). However, in appropriate cases -- by stipulation or by undisputed facts in the record -- a court can determine as a matter of law whether an employee acted within the scope of her employment. *See Balt. City Police Dep't v. Esteppe*, 236 A.3d 808, 822 (2020).

2.

Appellant argues that several facts counsel toward a finding that Dr. Burns acted within the scope of her employment: Dr. Burns used her position of power and trust within the therapeutic relationship to have sexual intercourse with Appellant; Dr. Burns used her position of power to induce Appellant to continue their relationship when she told him he would lose his VA and disability benefits; and much of the conduct occurred in the VA hospital.

But Maryland law requires more than that. As noted, Maryland law requires that in order for an employee to be acting within the scope of her employment, her actions must be "authorized" by the employer. While the *Sawyer* court clarified that an employee's actions may be authorized even when in opposition to the express orders of the employer, such actions still must be "incident to the performance of the duties entrusted to [her] by the master." 322 Md. at 255 (internal quotation marks and citations omitted). That is not

16

the case here.  Even though Dr. Burns told Appellant that their sexual relationship was for the purpose of therapy, we cannot conclude that a therapist engaging in a sexual relationship with her patient is acting with the authorization of her employer.  Exploiting a therapeutic relationship in order to engage in a sexual relationship with a patient is antithetical to the VA's business of healing veterans.  *See Ethical Principles of Psychologists and Code of Conduct*, American Psychological Association, https://www.apa.org/ethics/code ("Rule 10.05 Sexual Intimacies with Current Therapy Clients/Patients: Psychologists do not engage in sexual intimacies with current therapy clients/patients").  The VA's "zero tolerance" policy confirms that the VA explicitly disavowed "dual relationships that exploit clients socially, financially, or sexually."  J.A. 62.  Dr. Burns' conduct with Appellant falls squarely in line with the type of conduct the VA and the mental health profession as a whole reject as contrary to the healing practice of counseling.

To be sure, as Appellant contends, much of Dr. Burns' conduct with Appellant occurred during business hours and in her office at the VA facility.  However, these facts alone are not enough to bring her conduct within the ambit of authorization by the VA.  Dr. Burns' sexual relationship with Appellant could not be considered within the realm of ethical therapy and is properly construed as a "personal action" on the part of Dr. Burns.  Consequently, even taking the allegations in Appellant's complaint regarding Dr. Burns' conduct and motivations as true, we hold that, as a matter of law, Dr. Burns was not acting within the scope of her employment.

IV.

For the foregoing reasons, we reverse the decision of the district court that Appellant's negligent supervision claim is barred by the discretionary function exception, but we affirm the decision of the district court dismissing Appellant's negligent hiring, retention, and vicarious liability claims.

We remand to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART;*
*REVERSED AND REMANDED IN PART*

AGEE, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's ultimate disposition of the negligent hiring and retention claims, as well as the holding on the vicarious liability claim. I write separately, however, because I disagree with its holding on the negligent supervision claim. On that point, I respectfully dissent.

## I.

William Lins alleges that his therapist at the Baltimore VA Medical Center ("VA"), Dr. Elizabeth Burns, induced him into an inappropriate sexual relationship. According to the Complaint, Dr. Burns went out of her way to keep the relationship hidden by lying to her coworkers, meeting with Lins privately, and threatening him not to tell anyone about their relationship. Lins seeks to hold the VA directly liable under the Federal Tort Claims Act ("FTCA"). The sole allegation related to the VA's knowledge of Dr. Burns' conduct is that her supervisors learned that she planned to attend a wedding with Lins and instructed her not to attend. J.A. 11 ¶ 21. Lins alleges that knowledge of this singular event required Dr. Burns' supervisors to remove him from her care under the VA's zero-tolerance policy regarding patient abuse.

Despite Fourth Circuit precedent holding to the contrary, the majority concludes that the discretionary function exception does not bar Lins' negligent supervision claim. Because this conclusion is both inconsistent with this Court's precedent and misapplies the Supreme Court's discretionary function exception test, I respectfully dissent.

II.

Lins is a Marine Corps veteran who, during his active duty, was deployed to Iraq and Afghanistan.[1] As a result of events that occurred during his deployment, Lins suffers from post-traumatic stress disorder, major depressive disorder, and alcohol addiction. To treat these illnesses, he was admitted to the VA's in-patient Psychosocial Residential Rehabilitation Treatment Program ("PRRTP") in September 2014. Dr. Burns was Lins' primary therapist. During therapy, Lins disclosed to Dr. Burns that he had a history of childhood abuse.

After more than a year of inpatient and outpatient therapy, Dr. Burns' and Lins' relationship changed on Veterans' Day 2015, when she accompanied him to Arlington National Cemetery as part of his treatment plan. There, Dr. Burns and Lins had their first sexual encounter. In the ensuing weeks, Dr. Burns "regularly made sexual advances towards him under the guise of providing therapy." J.A. 10 ¶ 18. She allegedly used Lins' history of childhood abuse "as a means of coercing him into having sexual intercourse," suggesting that "having sexual relations with her was a way to cure his problems." J.A. 10 ¶ 19. Dr. Burns told Lins that he needed to practice making eye contact during sex as a way to cure his aversion to intimacy, and that if he did not, his childhood perpetrator "would win." J.A. 10 ¶ 19. She also told him that he needed to have more sex in order to stop

---

[1] Because this appeal arises out of a motion to dismiss, we draw relevant facts only from allegations in the Complaint. We "accept[] all well-pled facts as true and construe[] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

20

"feeling gay" about his childhood trauma. J.A. 10 ¶ 19. Dr. Burns and Lins had sexual

intercourse in her office at the VA almost every day, but she hid their interactions by, for

example, calling Lins out of group therapy sessions for "private counseling." J.A. 10 ¶ 20.

She also told Lins' other counselors that he was approved to take a leave of absence from

the PRRTP to see his children so that he could come to her office for sex.

The Complaint further alleges that at some unknown time, "Dr. Burns' supervisors

discovered that she planned to attend a wedding with Mr. Lins." J.A. 11 ¶ 21. Upon learning

of this plan, her supervisors met with Dr. Burns "to inform her that her conduct was not

appropriate," but "allowed [her] to continue to treat Mr. Lins as a patient." J.A. 11 ¶ 21.

In March 2016, following complaints from another of Dr. Burns' male patients, the

VA took away her private office, assigned her to a cubicle in an administrative area,

terminated her clinical privileges, and barred her from treating Lins. Thereafter, Dr. Burns

arranged to meet Lins either at one of their houses or at a hotel to continue their sexual

relationship. Dr. Burns told Lins not to tell anyone about their relationship, stating that he

would lose his VA benefits, she would not support his application for disability benefits,

and he would lose custody of his children.

In April 2016, Dr. Burns voluntarily resigned from her position at the VA and,

eventually, voluntarily surrendered her medical license with the State of Maryland. Even

after Dr. Burns no longer worked at the VA, her sexual relationship with Lins continued,

and even became "increasingly forceful." J.A. 12 ¶ 27. For example, Lins alleges that when

he spent time with his children, Dr. Burns manipulated him to see her instead, telling him

that her dog died, that she was diagnosed with cancer, that she was raped, and that she had a miscarriage.

At an unspecified later date, during outpatient therapy at the VA, Lins disclosed his relationship with Dr. Burns to a social worker who told him that other male patients had also complained about Dr. Burns' inappropriate conduct. Upon learning this information, Lins ended his relationship with Dr. Burns and reported her to the VA and the Maryland Department of Health and Mental Hygiene.

In August 2017, Lins filed his Complaint in district court under the FTCA, alleging that the VA was directly liable for negligent hiring, supervision, and retention, and vicariously liable for medical malpractice. The VA moved to dismiss the claims, asserting that the district court lacked subject matter jurisdiction. Specifically, the VA argued that the negligent hiring, supervision, and retention claim was barred by the discretionary function exception to the FTCA's waiver of sovereign immunity. In opposing the motion, Lins argued the discretionary function exception did not apply because the VA's "zero tolerance" policy against "patient abuse" *required* the VA to terminate Dr. Burns once her supervisors learned that she planned to attend a wedding with him. J.A. 81. The district court granted the VA's motion.[2]

---

[2] The court dismissed Lins' vicarious liability claim, concluding that it was precluded as a matter of law because Dr. Burns was not acting in the scope of her employment when she engaged in a sexual relationship with Lins.

III.

The Federal Tort Claims Act creates a limited waiver of the United States' sovereign immunity by authorizing claims for injuries caused by the tortious conduct of federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). "Being a waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States." *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995). The plaintiff has the burden of showing that an "unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). Whether a claim falls within the purview of the FTCA presents an issue of subject matter jurisdiction, which the Court reviews de novo. *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010).

IV.

A.

The FTCA's waiver of sovereign immunity is subject to several exceptions. "The most important of these . . . is the discretionary function exception," *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004) (en banc), which provides that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government," 28 U.S.C. § 2680(a). "The discretionary function exception marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by

23

private individuals." *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (internal quotation marks and citation omitted). Congress enacted this exception "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . [and] to protect the Government from liability that would seriously handicap efficient government operations." *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984) (internal quotation marks and citation omitted).

## B.

This Court has previously held that negligent supervision claims are barred by the discretionary function exception. In *Suter*, we stated that the discretionary function exception categorically barred negligent supervision claims, reasoning that "[c]ourts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions." 441 F.3d at 312 n.6. In so holding, the Court cited two cases that precluded entirely FTCA actions for negligent hiring. *See Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) ("[D]efendants' allegedly negligent and reckless employment, supervision and training . . . fall squarely within the discretionary function exception."); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) ("[W]e hold that decisions concerning the hiring, training, and supervising of . . . employees are discretionary in nature, and thus immune from judicial review.").

Although the majority appears to recognize *Suter*'s categorical bar, it nevertheless contends that the relevant language is simply dictum because it: "(1) did not provide any analysis of the discretionary function exception; (2) was not integral to the holding in that

24

case; and (3) was in a footnote." Majority Op. 8. But that is not the test for determining whether statements in our prior holdings are dicta.

As we have repeatedly made clear, "[d]ictum is [a] statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *Pittston Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999) (internal quotation marks and citation omitted); *see also id.* (citing *Gillespie v. United States Steel Corp.*, 321 F.2d 518, 530 (6th Cir. 1963) (concluding a statement was not dictum when "the matter was before the court . . .; was argued before the court; and was passed upon by the court"), *aff'd*, 379 U.S. 148 (1964)). No cogent argument can be made that the relevant statements in *Suter*—which resolved in full two claims at issue before the Court—were "peripheral," superfluous, or indicative of a lack of "careful consideration." *Id.* That we conducted our analysis on this aspect of our holding in a footnote is of no moment. *Cf. United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938). Indeed, were we to excise that language now (as the majority would have us do), the Court's performance in *Suter* would have been woefully deficient as we would have left open (*i.e.*, ignored) consequential issues presented to us on appeal.

Of course, we did not do that. Rather, our conclusion that negligent supervision claims are barred by the discretionary function exception was "[c]learly integral" to the "analytical foundations" of our holding. *Id.* Our continued citing of *Suter* for this proposition further emphasizes its integrality. In *LeRose v. United States*, 285 F. App'x 93 (4th Cir. 2008) (per curiam), the Court credited *Suter* and unequivocally reaffirmed its

holding: "We previously decided that government employers' hiring and supervisory decisions are discretionary functions." *Id.* at 97 (citing *Suter*, 441 F.3d at 312 n.6). Thereafter, district courts in the Fourth Circuit applying *Suter* understood it to bar supervision decisions brought under the FTCA. *See Kaufman v. United States*, 84 F. Supp. 3d 519, 530 (S.D.W. Va. 2015) ("Courts in the Fourth Circuit have long held that decisions regarding supervision of employees fall within the discretionary function exception."); *Cash v. United States*, No. WQD-12-0563, 2012 U.S. Dist. LEXIS 175497, at *31 (D. Md. Dec. 10, 2012) ("The Fourth Circuit has held to the contrary: employment decisions are policy choices within the discretionary function exception."). Although these post-*Suter* cases are not binding, they demonstrate a consistent interpretation of its holding since we first recognized that the discretionary function exception bars negligent supervision claims. Thus, there is no basis to conclude *Suter*'s holding on this point was dictum.

As we have never overruled *Suter* and there is no superseding Supreme Court decision to the contrary, this panel is bound to that decision. We have long recognized that a "decision of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." *Etheridge v. Norfolk & W. Ry.*, 9 F.3d 1087, 1090 (4th Cir. 1993) (internal citations omitted). Thus, this Court's precedent precludes Lins' argument and the majority's decision.

## C.

But even if the relevant language in *Suter* is simply dictum, as the majority concludes, the discretionary function exception still bars Lins' claim under the specific

allegations of this case. The conduct alleged in Lins' Complaint did not trigger the VA's zero-tolerance policy regarding patient abuse and employee supervision. For that reason, the VA acted well within its ordinary scope of discretion in determining a reasonable response .

The Supreme Court has set forth a two-part analysis to determine whether conduct falls under the discretionary function exception. *Berkovitz v. United States*, 486 U.S. 531 (1988). First, a court looks to whether a statute, regulation, or policy "prescribes a course of action for an employee to follow." *Id*. at 536. If it does, and the course of action was followed, the exception applies and sovereign immunity bars the suit. *Gaubert*, 499 U.S. 315, 324 (1991). Should the policy apply, but the course of action was not followed, the discretionary function exception does not apply and the suit proceeds. *Id.* If, however, the policy allows for the exercise of discretion or there is no policy and an element of choice is involved, the court moves to the next step. *Id.* This second step requires the court to determine whether the choice was "of the kind that the discretionary function was designed to shield"—namely, "actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 536–37. If the employee is following a policy that "allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

Under these principles, the discretionary function exception applies to Lins' negligent supervision claim. First, the VA policy does not prescribe a specific course of conduct for the government to follow. Although there is a "zero tolerance" policy requiring VA supervisors to take certain actions when a therapist engages in an inappropriate

27

relationship with a patient, Lins never alleged that the VA knew of the inappropriate sexual relationship. Instead, he claims only that the VA knew Dr. Burns planned to attend a wedding with him. Lins argues—and the majority summarily accepts—that the VA violated its policy when Dr. Burns' supervisors learned of that plan and yet did not immediately remove her from his care. Thus, the only basis for concluding the VA disregarded its policy is if the act of planning to attend a wedding clearly constitutes "patient abuse." It does not and because that is all that is alleged here, the VA's supervisory conduct falls within the discretionary function exception.

The policy defines patient abuse as "any mistreatment or coercion of a Veteran or beneficiary during a hospital admission or during the delivery of outpatient treatment." J.A. 58. Patient abuse "includes but is not limited to acts of [a] physical, psychological, verbal, sexual, emotional or financial nature by any employee." J.A 58. Crossing professional boundaries is listed as an example of abuse. One of the ways a therapist crosses a professional boundary is by engaging in a "dual relationship" with a client. J.A. 62. Dual relationships exist when a provider engages in "more than one relationship" with a client, such as becoming a "provider and friend" or a "provider and . . . . partner." J.A. 62.[3] When patient abuse is reported, the employee's supervisor has a duty, "[a]t a minimum," to assign the alleged abuser to duties that do not involve administering care to the alleged victim and to instruct the employee to avoid all contact with the alleged victim. J.A. 59.

---

[3] The policy provides that "[d]ual relationships develop when providers engage in more than one relationship with a client, becoming provider and friend, employer, teacher, business associate, or sex partner." J.A. 62.

Vital to Lins' argument—and the majority's holding—is the assumption that *planning* to attend a wedding, standing alone, creates a dual relationship amounting to patient abuse as a matter of law or under the specific terms of the policy. However, nowhere in the policy does it specify what actions amount to a dual relationship. Importantly, nowhere does it state that contemplating whether to attend a social function would, without more, constitute a dual relationship. The question before the Court is not whether attending a social function together can serve as proof of an improper dual relationship that triggered the policy, but whether considering attendance at a social function together *in the future* serves as proof that an improper dual relationship had already been forged. And because proof that a line may be crossed is not the same as proof that it has been crossed, Lins' sole factual allegations as to Dr. Burns' supervisors' knowledge fails to demonstrate that they were bound by the policy's directives in handling the matter. Consequently, when Dr. Burns' supervisors learned about her plans to attend the wedding, they had the discretion to determine that this did not constitute a dual relationship. And because there's no allegation that Dr. Burns did not comply with that instruction or that the VA knew of any non-compliance with their instruction that she not attend, they reasonably concluded that their actions avoided any potential boundary violation. Put another way, when confronted with information about Dr. Burns' plan, the VA could reasonably determine that *future* plans to attend a wedding did not amount to a dual relationship, much less patient abuse, that would implicate the policy. The majority proffers no basis for concluding otherwise. As such, these allegations did not restrict the VA's exercise of discretion.

When later faced with Dr. Burns' clear boundary violation—having sexual relationships with patients—the VA appropriately followed its policy. After receiving a complaint from another patient regarding Dr. Burns' conduct, the VA terminated her clinical privileges, took away her private office, and reassigned her to administrative duties. By the time Lins told someone at the VA about the relationship, Dr. Burns had already resigned, and the VA could take no further action. Thus, in a clear instance of patient abuse, the VA followed its policy. The decision at issue in this appeal, however, was not clear patient abuse and therefore permitted the VA to exercise discretion in the manner it did.

Because the VA's policy did not clearly apply and the VA's supervision decisions involved choice, the Court must next determine whether that choice was of the kind that the discretionary function exception was meant to shield. In determining how to supervise and direct Dr. Burns, the VA had to consider staffing needs, budget concerns, and patient treatment in carrying out its governmental mission. The VA also had to consider its own policy in determining what actions amount to an actual dual relationship. *See Gaubert*, 499 U.S. at 324 ("[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations."). The VA's decision, therefore, is exactly the kind Congress meant to shield by creating the discretionary function exception. *See Berkovitz*, 486 U.S. at 536–37 (stating the discretionary function exception was created to "prevent judicial second-guessing" of "administrative decisions grounded in social, economic, and political policy"); *see also M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) ("We agree with other circuits

30

that have held that federal employees' supervision of subordinates involves the kind of judgment that the discretionary function exception was meant to protect"); *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision . . . generally involve the permissible exercise of policy judgment and fall within the discretionary function exception.").

Accordingly, the VA's decisions regarding Dr. Burns' supervision fall within the discretionary function exception. Therefore, Lins' claim is barred by sovereign immunity regardless of whether we apply *Suter* or examine the allegations of the Complaint in the first instance.

V.

In concluding that Lins' claim is barred by the discretionary function exception, I do not imply that Dr. Burns' conduct is permissible or acceptable. Rather, the appropriate decision reflects the fact that the FTCA is a limited waiver of sovereign immunity and that the circumstances alleged in this case fall squarely within Congress' purpose for creating the discretionary function exception.

For the foregoing reasons, I respectfully dissent as to the majority's resolution of Lins' negligent supervision claim.

31