IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM R. LINS,

    *Plaintiff*,

    v.

                            Civil No. ELH-17-2163

UNITED STATES OF AMERICA,

    *Defendant*.

## MEMORANDUM OPINION

Plaintiff William R. Lins, a retired Sergeant in the U.S. Marine Corps Reserves, filed suit against the United States (the "Government"), pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* ECF 1 (Complaint). The suit is rooted in the conduct of plaintiff's mental health therapist in 2015 and 2016, while Lins was an inpatient at the Residential Recovery Treatment Program at the Veterans Administration Maryland Health Care System in Baltimore ("VA"), and thereafter an outpatient at the VA. His treating psychologist, Erin Burns, Ph.D., allegedly coerced him into an inappropriate and abusive sexual relationship. *Id.*[1]

The Complaint contains two claims for relief. In Count I, plaintiff alleges Negligent Hiring, Supervision and/or Retention. In Count II, he alleges Vicarious Liability. As discussed, *infra*, based on a ruling of the Fourth Circuit, only a portion of Count I remains. *Id.* Trial is scheduled for May 6, 2024 (ECF 67), with respect to the claim of negligent supervision.

Aaron Jacoby, Ph.D. was the Chief Psychologist at the VA during the relevant time. The Government designated him as a hybrid fact and expert witness as to both liability and damages. On February 20, 2024, plaintiff filed a "Motion to Preclude Aaron Jacoby, Ph.D. from Testifying

---

[1] Dr. Burns resigned from the VA on or about April 4, 2016. ECF 85 at 2.

as an Expert Witness and Motion for Partial Summary Judgment." ECF 80. It is supported by a memorandum (ECF 80-1) (collectively with ECF 80, the "Motion"). Plaintiff submitted six exhibits with the Motion. ECF 80-2 to ECF 80-7.

In the Motion, plaintiff seeks to bar the testimony of Dr. Jacoby, the Government's sole expert witness, as to both liability and damages. *See* ECF 80-1. In plaintiff's view, Dr. Jacoby is a fact witness as to liability, but he is not a proper hybrid witness. Therefore, plaintiff contends that the Government was required under Fed. R. Civ. P. 26(a)(2)(B) to provide an expert report as to Dr. Jacoby, but has failed to do so. Moreover, plaintiff argues that the proposed testimony does not satisfy Rule 702 of the Federal Rules of Evidence ("FRE"). Plaintiff also asserts that certain expert disclosures were untimely. And, if the request to bar Dr. Jacoby as an expert is granted, plaintiff also seeks summary judgment as to liability.

Defendant opposes the Motion. ECF 85 (the "Opposition"). The Government also submitted six exhibits. ECF 85-1 to ECF 85-6. It contends that Dr. Jacoby was properly identified as a hybrid fact and expert witness as to both liability and damages. Moreover, it contends that any untimely disclosure has not prejudiced plaintiff. Plaintiff replied. ECF 86 (the "Reply").

As discussed, *infra*, I held a telephone conference with counsel on April 5, 2024, to discuss the Motion. ECF 91. And, I permitted the Government to file "a supplemental memorandum in support of its claim that Dr. Jacoby qualifies as a hybrid fact/expert witness with respect to damages," due by the close of business on April 8, 2024. *Id.*

By letter of April 8, 2024, the Government informed the Court as follows, ECF 92:

> Pursuant to the Court's telephone conference and Order, ECF 91, the United States withdraws its designation of Aaron Jacoby, Ph.D., as a hybrid expert witness

on the issue of damages.

Accordingly, the remaining issues before the Court are whether Dr. Jacoby qualifies as a hybrid fact and expert witness on the issue of liability and, if not, whether plaintiff is entitled to summary judgment as to liability.

No hearing is necessary to resolve the Motion.[2]  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I.      Factual and Procedural Summary

Lins filed suit on August 1, 2017.  ECF 1.[3]  The Government subsequently moved to dismiss (ECF 9, ECF 9-1).  After briefing, the Court issued a Memorandum Opinion and Order (ECF 22, ECF 23) of May 10, 2018, granting the motion to dismiss, without prejudice.  The Court concluded that plaintiff's claims for negligent hiring, supervision, and retention were barred by the discretionary function exception to the FTCA.  Further, the Court concluded that Dr. Burns was not acting within the scope of her employment when she engaged in a sexual relationship with plaintiff, and therefore the Government could not be held vicariously liable.

Plaintiff appealed the dismissal to the Fourth Circuit.  ECF 24.  On May 13, 2019, the Fourth Circuit dismissed the appeal and remanded the case to this Court.  ECF 27; *see Lins v. United States*, 771 F. App'x 528 (4th Cir. 2019) (per curiam).  The Fourth Circuit concluded that this Court's order of dismissal was not a final judgment.  ECF 27 at 6.  It pointed to this Court's explicit recognition that an amendment could cure some of the defects in the suit.  *Id.*  Thus, the

---

[2] During the telephone conference of April 5, 2024, I was amenable to a hearing on the Motion during the week of April 8, 2024.  However, counsel had various scheduling conflicts.

[3] Plaintiff also filed suit against Dr. Burns in the Circuit Court for Baltimore City.  *See* ECF 18-1; *William R. Lins v. Erin E. Burns*, Case No. 24-c-17-3960.  On September 10, 2018, Lins filed a "Stipulation of Dismissal w/o Prejudice" in that case.  *See Lins v. Burns*, 24-c-17-3960, Doc No./Seq No. 12/0.

Fourth Circuit concluded that it lacked jurisdiction. *Id.* at 7. The mandate issued on July 5, 2019. ECF 28.

Upon remand, the Court held a telephone conference with counsel on September 13, 2019. ECF 30. Thereafter, plaintiff's counsel wrote to the Court by letter of September 24, 2019. ECF 31. She said, *id.* (emphasis in original):

> I write on behalf of the Plaintiff in follow-up to the telephonic status conference held on September 13, 2019.
>
> At the conclusion of the conference, Your Honor requested that Plaintiff report to the Court regarding whether Plaintiff would like to seek leave to amend the complaint following the Fourth Circuit's ruling. Plaintiff does <u>not</u> intend to amend the complaint, and would therefore join in the Government's request that the Court issue another order indicating that its May 12, 2018 order is [a] final judgment, and that the case is dismissed with prejudice.

Accordingly, by Order of September 24, 2019, I dismissed the case, with prejudice. ECF 32. Plaintiff again appealed to the Fourth Circuit. ECF 33.

On February 18, 2021, in a two-to-one per curiam decision totaling thirty-one pages, the Fourth Circuit affirmed in part, reversed in part, and remanded. ECF 36; ECF 36-1; *see Lins v. United States*, 847 F. App'x 159 (4th Cir. 2021) (per curiam).[4] The panel majority of the Fourth Circuit said, ECF 36-1 at 2:

> We hold that the district court erred in holding that the discretionary function exception established a categorical bar to negligent hiring, supervision, and retention claims and, as a result, erred in dismissing Appellant's negligent supervision claim for lack of subject matter jurisdiction. However, we agree with the district court that Appellant's therapist was not acting within the scope of her employment. Therefore, we affirm the district court's dismissal of Appellant's vicarious liability claim.

---

[4] Judge Agee concurred with the affirmance and dissented as to the reversal. In referencing a thirty-one page decision, his opinion was included.

4

In particular, the Fourth Circuit concluded that plaintiff's "negligent supervision claim is not barred" (*id.* at 13), but "the district court does not possess subject matter jurisdiction over [Lins's] negligent hiring and retention claims . . . ." *Id.* at 14. Therefore, it "affirm[ed] the district court's dismissal of those claims." *Id.* Further, the Court said, *id.* at 18: "For the foregoing reasons, we reverse the decision of the district court that Appellant's negligent supervision claim is barred by the discretionary function exception, but we affirm the decision of the district court dismissing Appellant's negligent hiring, retention, and vicarious liability claims." The mandate issued on May 18, 2021. ECF 37. Accordingly, only a portion of Count I is still in issue.

At that point, no discovery had yet been conducted. Therefore, the Court held a telephone conference with counsel on January 6, 2022, to discuss the schedule with respect to discovery and other matters. *See* Docket. I issued a Scheduling Order on the same date. ECF 40. At the request of counsel, the Court bifurcated discovery into two phases: liability and damages. *Id.* at 1–2. The Court set a fact discovery deadline of August 12, 2022. *Id.* at 1. Plaintiff's Rule 26(a)(2) "fact related" disclosures were due by April 22, 2022, and the Government's "fact related" Rule 26(a)(2) disclosures were due by May 23, 2022. *Id.* And, I set a dispositive motions deadline of September 6, 2022. *Id.* at 2. The Scheduling Order also stated, *id.*: "Expert discovery as to damages will be deferred until after resolution of summary judgment motion(s)."[5]

On February 18, 2022, counsel filed a "Joint Motion for Partial Modification of the Scheduling Order." ECF 41; ECF 43. They sought to extend the deadlines for the parties' Rule 26(a)(2) fact-related expert disclosures. By Order of the same date, I granted the motion. ECF 44.

---

[5] Plaintiff asserts that discovery was bifurcated because of the Government's representation that it intended to file a motion for summary judgment as to liability. ECF 80-1 at 4; *see also* ECF 85 at 3. This is consistent with the Court's recollection. Given the bifurcation as to liability and damages, it was understood that any dispositive motion(s) would only concern liability.

Plaintiff's deadline for fact-related expert disclosures was extended to May 23, 2022, and defendant's Rule 26(a)(2) deadline was extended to June 17, 2022.  *Id.*  Notably, there was no change to the fact discovery deadline or the dispositive motions deadline.  *Id.*

By letter of August 5, 2022 (ECF 47), counsel again jointly requested an extension of deadlines, including the fact discovery deadline and the dispositive motions deadline.  *Id.*  By Order of August 5, 2022 (ECF 48), I approved the request, extending the deadline for fact discovery to October 14, 2022, and the dispositive motions deadline to November 14, 2022.

Discovery issues arose.  *See*, *e.g.*, ECF 51, ECF 54, ECF 55.  Then, on October 25, 2022, counsel jointly requested extensions as to various deadlines.  ECF 56.  By Order of October 25, 2022 (ECF 57), I granted the request, as modified, and extended the deadlines as follows, *id.*:

> December 30, 2022: Plaintiff's Rule 26(a)(2) expert fact disclosures and reports
>
> January 27, 2023: Defendant's Rule 26(a)(2) expert fact disclosures and reports
>
> February 17, 2023: Plaintiff's rebuttal Rule 26(a)(2) expert fact disclosures
>
> February 28, 2023: Rule 26(a)(2) supplementation of expert fact disclosures and responses
>
> March 17, 2023: Fact discovery deadline; submission of status report
>
> March 24, 2023: Requests for admission
>
> April 14, 2023: Dispositive pretrial motions deadline

As detailed above, the deadline for plaintiff's Rule 26(a)(2) liability expert disclosures was extended to December 30, 2022.  *Id.*  But, it was not until February 15, 2023, that plaintiff's counsel identified Manuel N. Pacheco, M.D. as plaintiff's liability expert (ECF 85-1 at 3) and provided his Rule 26 Report.  ECF 80-2; *see also* ECF 80-1 at 2; ECF 85 at 3.

The delay was addressed in a joint motion for modification of the Scheduling Order, submitted on February 22, 2023.  ECF 60.  There, counsel sought, *inter alia*, retroactive approval of plaintiff's belated disclosure.  *Id.*  Counsel explained, *id.* at 2:

> Given the timing of the discovery, its coincidence with the end-of-year holidays, and the fact that Plaintiff's expert is a busy physician with a full-time medical practice, Plaintiff was unable to provide his Rule 26 expert report to Defendant by the Court's deadline of December 30, but instead provided it as soon as practicable on February 15, 2023 (counsel for Plaintiff was in communication with Defendant about the delay and Defendant did not object).

By Order of February 22, 2023 (ECF 61), I granted the motion.  The revised deadlines were as follows, *id.*: Plaintiff's Rule 26(a)(2) expert fact disclosures and reports were due by February 15, 2023; Defendant's Rule 26(a)(2) expert fact disclosures and reports were due by April 17, 2023; Plaintiff's rebuttal Rule 26(a)(2) expert fact disclosures deadline was extended to May 15, 2023; the Rule 26(a)(2) supplementation of expert fact disclosures was extended to May 30, 2023; the fact discovery deadline and submission of status report was extended to June 16, 2023; the deadline for requests for admission was extended to June 23, 2023; and dispositive pretrial motions were due by June 30, 2023.

I pause to note that the Government now contends that plaintiff's expert disclosure of Dr. Pacheco on February 15, 2023, was untimely.  ECF 85 at 3.  However, the Government did not take issue with the representation in ECF 60, to the effect that the Government did not object to the belated disclosure.  Moreover, as a result of the belated disclosure by plaintiff, the Court extended until April 17, 2023, the deadline for the Government's expert disclosure.  *See* ECF 61.  And, in any event, the effect of ECF 61 was to authorize the belated disclosure, nunc pro tunc.

Dr. Pacheco is a "Board-Certified Psychiatrist" as well as "the Senior Consultant in the Department of Psychiatry at Tufts Medical Center and Clinical Associate Professor of Psychiatry at Tufts University School of Medicine in Boston, Massachusetts."  ECF 80-2 at 1.  In Dr.

Pacheco's Rule 26 Report, dated February 14, 2023 (*id.* at 1), he discussed his credentials, the materials he reviewed, and his conclusion that "the Baltimore VA Medical Center breached accepted standards of care in their supervision and oversight of Erin Burns, Ph.D., and that these breaches in the standard of [care] caused injury to Mr. Lins." *Id.* at 2.

In his Rule 26 report, Dr. Pacheco takes issue with the conduct of three VA employees. *See id.* Plaintiff has provided their full names and job titles, as follows, ECF 80-1 at 2–3:

> 1) Dr. Joshua Semiatin, the Program Coordinator for the residential treatment program;
> 2) Dr. Erin Romero, who was Dr. Burns' immediate supervisor and Program Manager for the residential treatment program; and
> 3) Dr. Aaron Jacoby, who was Dr. Romero's supervisor and Chief Psychologist for the Baltimore V.A. Medical Center.

Dr. Pacheco asserts, ECF 80-2 at 2: "The documents and testimony that I have reviewed indicate that Dr. Burns demonstrated repeatedly throughout her employment with the VA that she had an inability to understand and apply appropriate boundaries between herself, her patients, and other staff." Moreover, he maintains that "Dr. Burns' supervisors at the VA were aware of her inappropriate personal relationships . . . and they were also aware of the fact that Dr. Burns' personal relationships were spilling over into the workplace and affecting patients of the unit." *Id.*

According to Dr. Pacheco, the records reflect that Dr. Burns "had a pattern of 'unconventional' therapy practices that demonstrated poor judgment and understanding of appropriate clinical boundaries." *Id.* Moreover, although Dr. Burns was "admonished" by supervisors for her "inappropriate after-hours interactions with patients," she "was found to not be following the recommendations from her supervisors well after being told to stop these inappropriate interactions with patients due [to] the boundary violations they represented." *Id.* And, Dr. Pacheco contends that the "'therapeutic' proposals and other boundary violations were discussed in group meetings and in direct supervisory sessions between Dr. Romero and Dr. Burns,

[yet] neither Dr. Romero nor anyone else at the VA took any actions to remove Dr. Burns from patient care." *Id.*

Further, Dr. Pacheco opines that "it was a violation of the standard of care for Dr. Romero to be supervising Dr. Burns" because of the doctors' "mutual discomfort with each other." *Id.* at 3. He asserts, *id.*: "I believe that the VA breached the standard of care in its supervision of Dr. Burns by failing to take action to remove Dr. Burns from patient care and directly confront her when it was discovered that Mr. Lins left a note under her door asking her to attend a wedding with him." Additionally, Dr. Pacheco states, *id.* at 3–4: "Although Dr. Burns apparently discussed the fact that it would not be appropriate for her to attend a wedding with Mr. Lins, it does not appear that Dr. Semiatin, Dr. Romero, or anyone else at the VA confronted Dr. Burns about the nature of her relationship with Mr. Lins . . . ." And, he concludes, *id.* at 4: "I believe that the standard of care required Dr. Burns to be removed from Mr. Lins [sic] care and a deeper investigation into their relationship needed to occur."

Dr. Semiatin, Dr. Romero, and Dr. Jacoby were all deposed during the period of discovery. ECF 80-1 at 3. Dr. Jacoby, whose status is the subject of the Motion, was deposed as a fact witness on September 26, 2022. ECF 80-4. Moreover, the Government deposed Dr. Pacheco on April 21, 2023. ECF 62.

As indicated, pursuant to ECF 61, the Government was required to disclose its expert witnesses on the issue of liability by April 17, 2023. *Id.* But, it was not until two months later, on June 13, 2023,[6] that the Government named Dr. Jacoby as a hybrid expert. ECF 85-1 at 2, 3. And, the Government provided a Rule 26(a)(2)(C) report on April 23, 2023. ECF 80-5; ECF 85-2.

---

[6] Plaintiff's Motion mistakenly asserts that the date of disclosure was "June 14, 2023." ECF 80-1 at 3. However, in an email of June 13, 2023, the Government disclosed Dr. Jacoby as a hybrid witness. *See* ECF 85-1 at 2.

Specifically, on June 13, 2023, Government counsel confirmed with plaintiff's counsel the following, ECF 85-1 at 2, 3:

> Today I advised that Dr. Aaron Jacoby will testify as a hybrid expert witness. He is not obligated to produce a report under FRCP 26a2B because he has not been retained or specifically employed to provide expert testimony, and his duties as a VA employee do not regularly involve giving expert testimony. I described his expected testimony when we spoke today. He will testify that based on his knowledge, experience, and training as a psychologist, and as a supervisor of psychologists, and his observations, Erin Burns was properly and fully supervised by Erin Romero.

The next day, with a looming fact discovery deadline of June 16, 2023, counsel filed a "Consent Motion for Partial Modification of the Scheduling Order." ECF 62. By Order of June 15, 2023 (ECF 63), I granted the motion. Among other things, I extended until July 21, 2023, the deadline for fact discovery and the submission of a status report, and I extended the dispositive motions deadline to August 11, 2023. *Id.*

Then, on June 23, 2023, the Government provided plaintiff with a Rule 26(a)(2)(C) disclosure for Dr. Jacoby. It is titled: "FRCP 26 (a)(2)(C) Disclosure of Defendant's hybrid expert witness Aaron M. Jacoby Ph.D." ECF 80-5; ECF 85-2. Plaintiff alleges, and the Government does not refute, that Government counsel authored the disclosure. ECF 80-1 at 3.

The two-page disclosure sets forth Dr. Jacoby's employment history and his supervision of Dr. Romero. ECF 80-5 at 1–2; ECF 85-2 at 3–4. The disclosure explains that, in Dr. Jacoby's opinion, Dr. Romero properly supervised Dr. Burns. ECF 80-5 at 1–2; ECF 85-2 at 3–4.

In particular, the disclosure states, ECF 80-5 at 1–2; ECF 85-2 at 3–4:

> Dr. Jacoby will testify that based on his observations, knowledge, experience, and training as a psychologist, and as a supervisor of psychologists, Erin Burns was appropriately and competently supervised by Dr. Romero. Specifically, Dr. Jacoby will testify that Dr. Romero regularly met with Erin Burns individually and in group meetings, and upon request by Erin Burns, and discussed and documented patient and treatment issues as they arose. Dr. Romero regularly discussed her supervisees, including Erin Burns, during her supervision sessions

with Dr. Jacoby and sought his input. The effectiveness of supervision is limited when the supervisee lacks candor and truthfulness, as did Erin Burns, until her misconduct was disclosed by another VA patient's complaint.

Dr. Jacoby will testify that the facts and circumstances do not support the conclusions of Plaintiff's expert in his report that the following alleged failures occurred, or constituted a breach of the standard of care, or both:

1. Failure to appreciate and respond to "red flags" relating to boundary issues;

2. Failure to ensure a healthy and mutual supervisory relationship between Erin Burns and Dr. Romero;

3. Failure to separate Erin Burns and plaintiff after receiving knowledge of a potential boundary violation.

Dr. Jacoby will also testify that any other alleged failures by the VA asserted by Plaintiff's expert are equally unsupported by the circumstances or facts. Dr. Jacoby testified extensively to these and many other matters during his deposition in this action on September 26, 2022, and on May 9, 2016 during the Administrative Investigative Board relating to another VA patient's complaint about Dr. Burns. It is anticipated that Dr. Jacoby may testify at trial to some of the matters raised during his deposition and AIB testimony.

Government counsel offered to make Dr. Jacoby available for a second deposition, in his capacity as a hybrid witness.  ECF 85 at 3.  However, in an email of June 28, 2023, plaintiff's counsel declined.  ECF 85-3 at 2.[7]  She asserted, *id.*: "I do plan to move to strike him as a 'hybrid' expert who can offer opinions regarding VA employee's compliance with the standard of care, including his own."  That motion, contemplated at least by late June of 2023, was not filed until late February of 2024.  *See* ECF 80.

In the meantime, the summary judgment deadline of August 11, 2023, came and went, without the filing of any dispositive motions.  *See* Docket.  Therefore, on August 17, 2023,

---

[7] In his Reply, plaintiff explains, ECF 86 at 3 n.1: "Given the scope of the designation and Plaintiff's belief that Dr. Jacoby was not a proper hybrid expert, there was no need to depose him. More importantly, however, the choice not to depose him has no relevance whatsoever to the questions raised in Plaintiff's Motion . . . ."

plaintiff's counsel wrote to the Court on behalf of both parties.  ECF 65.  She observed, *id.* at 1 (quoting ECF 40) (alteration in ECF 65): "Pursuant to the Court's initial discovery schedule for this case, the parties were to complete fact/liability related discovery, and 'expert discovery as to damages w[as to] be deferred until after resolution of summary judgment motions.'"  And, plaintiff's counsel noted that "neither side filed a dispositive motion."  *Id.*  Because no summary judgment motions were filed, the parties asked the Court to set "deadlines for expert witness discovery related to the subject of damages, as well as a trial date."  *Id.* at 1.

A telephone conference followed on August 24, 2023.  *See* Docket.  Then, on August 25, 2023, I issued a Scheduling Order to govern expert discovery and other matters.  ECF 67.  Among other things, I set a deadline of October 24, 2023, for plaintiff's Rule 26(a)(2) expert disclosures, and a deadline of November 23, 2023, for defendant's Rule 26(a)(2) expert disclosures.  *Id.* at 1. I also set a deadline of January 22, 2024, for *Daubert* motions and motions in limine.  *Id.*  And, I scheduled a bench trial to begin on May 6, 2024.  *Id.* at 2.

On October 24, 2023, plaintiff timely identified Laura Cooney-Koss, Psy.D., as his damages expert.  ECF 85 at 3; ECF 80-1 at 4.  Plaintiff also provided Dr. Cooney-Koss's 27-page expert report to the Government.  ECF 85 at 3.  Plaintiff explains, ECF 80-1 at 4:

> Dr. Cooney-Koss interviewed and evaluated Mr. Lins, performed a battery of psychological testing on him, and offered opinions in a lengthy Rule 26 Report and deposition regarding the impact the abuse has had, and continues to have, on many facets of his life.[]

As noted, the Government was required to disclose its damages expert by November 23, 2023.  ECF 67.  However, plaintiff alleges that the Government "did not timely identify any expert by that date.[]"  ECF 80-1 at 4.

On December 6, 2023, after the Court's deadline for identification of the Government's damages experts (*see* ECF 67), the Government asked plaintiff to produce "the raw data from the

psychological testing that Plaintiff's expert Dr. Cooney-Koss had performed on Mr. Lins." ECF 80-1 at 5; *see also* ECF 85-4 at 6–8. Plaintiff's counsel responded that "the only non-privileged responsive item" Dr. Cooney-Koss could provide is her "notes." ECF 80-6 at 4; ECF 85-4 at 5. Plaintiff's counsel explained that Dr. Cooney-Koss "is not able to provide the testing results to a non-health care provider because of the proprietary nature of the testing." ECF 80-6 at 4–5; ECF 85-4 at 5. And, plaintiff's counsel added: "If you had an expert psychologist, she could provide them directly to your expert, but **since you do not**, she cannot produce them absent a court order directing her to." ECF 80-6 at 5 (emphasis added); ECF 85-4 at 5 (emphasis added).

That same date, December 6, 2023, Government counsel responded: "I have identified Dr. Aaron Jacoby, who has a PhD in Clinical Psychology and is the Director of the VA Mental Health Clinical Center, as the government's hybrid expert." ECF 80-6 at 4; ECF 85-4 at 5; *see also* ECF 85 at 4. And, on December 15, 2023, the Government again requested the test results. ECF 80-6 at 4; ECF 85-4 at 4–5. It stated: "Dr. Jacoby will address the testimony of Dr. Pacheco and [Dr.] Cooney[-Koss] offered at trial." ECF 80-6 at 4; ECF 85-4 at 5.

Plaintiff's counsel responded on December 15, 2023, and reiterated that, in the absence of a court order, Dr. Cooney-Koss "cannot produce the results to a non-psychiatrist or non-psychologist." ECF 80-6 at 3. Plaintiff's counsel stated, *id.*:

> As to your assertion that she must release the results to Dr. Jacoby as your expert, again I disagree. The court bifurcated discovery into liability and damage phases. You did not designate Dr. Jacoby to give damage opinions. I have not been provided any Rule 26 report from Dr. Jacoby explaining what his damage opinions are. He has never treated, spoken to, or evaluated Mr. Lins, so I cannot even begin to fathom what would be the basis for him to give damage opinions, and even if he had opinions, you have not complied with the scheduling order or Rule 26 requirements of disclosure. So absent a court order directing her to, [Dr.] Cooney[-Koss] will not be providing Dr. Jacoby the test results.

The email chain reflects that counsel discussed whether Dr. Cooney-Koss is permitted to disclose the test results to the Government's lawyers. *Id.* at 1–2.[8] But, Government counsel never addressed the assertion by plaintiff's counsel that, prior to December 6, 2023, the Government had never mentioned calling Dr. Jacoby as a damages expert.

Dr. Cooney-Koss was deposed by the Government on December 19, 2023. ECF 85-5 at 1; *see also* ECF 85 at 4. And, as noted, plaintiff had deposed Dr. Jacoby on September 26, 2022, in his capacity as a fact witness. ECF 80-4; ECF 80-1 at 3; ECF 85 at 3.

By letter docketed on January 11, 2024,[9] plaintiff's counsel wrote to the Court on behalf of the parties, advising: "Discovery is complete." ECF 73. But, the parties requested an extension until February 21, 2024, for the filing of motions in limine and *Daubert* motions. *Id.* By Order of January 18, 2024, I granted the request. ECF 75.

Although the parties informed the Court on January 11, 2024, that discovery was complete (ECF 73), on January 17, 2024, the Government provided plaintiff with Dr. Jacoby's anticipated damages testimony. ECF 80-7 at 3; ECF 85-4 at 4. Government counsel wrote: "As previously explained by the FRCP 26(a)(2)(C) disclosure emailed on June 23, 2023, and December 6 and 15 emails, Dr. Jacoby will testify as a defense hybrid expert with respect to opinions offered at trial by plaintiff's experts on the issues of liability and damages." ECF 80-7 at 3; ECF 85-4 at 4.

As noted, the defense expert disclosures as to damages were due by November 23, 2023. ECF 67. Of import, the Government's disclosure of June 23, 2023, which I reviewed earlier, occurred during the liability phase of discovery. In that disclosure (ECF 80-5; ECF 85-2), the

---

[8] To my knowledge, Dr. Cooney-Koss did not provide the test results directly to the Government. ECF 85 at 4.

[9] The letter was docketed on January 11, 2024, but it is dated January 12, 2024. ECF 73.

Government named Dr. Jacoby as a hybrid witness.  But, the Government gave no hint whatsoever that it intended to also call Dr. Jacoby as a damages expert.  Moreover, the Government's email communication of December 6, 2023, merely states that Dr. Jacoby was designated as a hybrid expert; the email does not mention damages.  And, in the email of December 15, 2023, the Government advised that Dr. Jacoby will address the testimony of Dr. Pacheco and Dr. Cooney-Koss.  However, these statements were not adequate notice that the Government intended to call Dr. Jacoby as a damages expert.

In essence, the Government attempted to shoehorn its damages disclosure into its earlier liability disclosure.  But, this is not a "one size fits all" situation.

In any event, Government counsel explained on January 17, 2024, that "Dr. Jacoby will testify to the utility" of various "therapeutic interventions going forward, in the context of Mr. Lins' history and current therapies[.]"  ECF 80-7 at 3; ECF 85-4 at 4.  And, Government counsel provided a list of four topics—each a quote from Dr. Cooney-Koss's report—that Dr. Jacoby was expected to address.  ECF 80-7 at 3; ECF 85-4 at 4.  However, Government counsel did not provide Dr. Jacoby's expected opinions.  ECF 80-7 at 3; ECF 85-4 at 4.

Later that day, plaintiff's counsel responded in confusion and asked Government counsel to clarify her email.  ECF 80-7 at 2; ECF 85-4 at 3.  In a communication on January 18, 2024, the Government stated: "As a hybrid expert, Dr. Jacoby is not required to author a report or to sign a disclosure of his anticipated testimony. See June 23, 2023, FRCP 26(a)(2)(C) disclosure."  ECF 80-7 at 1; ECF 85-4 at 2.  On that date, Government counsel also provided plaintiff with a "summary of [Dr. Jacoby's] expected testimony" as it relates to Dr. Cooney-Koss.  ECF 80-7 at 1–2; ECF 85-4 at 2–3.  The Government said, *id.*:

> Dr. Cooney's report describes conduct that represents Erin Burns' abuse of your client. Dr. Jacoby does not dispute that Erin Burns abused Mr. Lins during what

should have been a therapeutic professional relationship. As set forth in the June 23, 2023, FRCP 26(a)(2)(C) disclosure, he will dispute that the abuse arose out of the VA's failure to supervise Burns.

Dr. Jacoby recognizes that your client has undergone individual therapy after the abuse, including with VA employee Brandi Conway, whose treatment of your client began in September 2014 for combat PTSD and related conditions. More than 9 years later that therapy has produced limited improvement or response according to your client and experts. Dr. Jacoby would recommend other evidence based therapeutic approaches, with another therapist, to advance therapeutic efficacy. Mr. Lins has testified, or stated in interviews, that he will not engage in therapy with anyone other than Ms. Conaway. Declining therapy alternatives is his choice to make. As evidenced in the medical records, your client has missed many therapy appointments with Ms. Conaway which also detracts from recovery. Dr. Jacoby also believes that other traumatic events have contributed to your client's mental health issues in addition to abuse by Burns, specifically episodes of childhood sexual abuse and combat trauma recounted by Mr. Lins.

Dr. Jacoby believes a need for couples therapy depends on your client finding a partner, and on the selected partner. In other words, the need for or extent of couples therapy will turn on Mr. Lins, his partner, and how their relationship develops, elements that are theoretical at this point. Couples therapy may be helpful, necessary, or unnecessary, but is not inevitable.

Mr. Lins has been prescribed various pharmacological treatments in the past which he has refused to take or continue. All agree that psychiatric medications would likely advance his mental health recovery, but he needs to accept the treatment.

A support group could be helpful, although the type of support group is not identified by Dr. Cooney. A group seeking support for abuse during treatment by a therapist could be difficult to identify, and a more typical support group for partner or spousal abuse may be less helpful.

On February 20, 2024, plaintiff filed the Motion.  ECF 80.  Briefing of the Motion was not completed until March 14, 2024.  ECF 86.  Again, trial is set to begin on May 6, 2024.  ECF 67.

The Court's calendar is a busy one, with many court proceedings, as well as numerous other cases in need of the Court's attention.  Yet, because of the impending trial date of May 6, 2024, the Court has had to prioritize the disposition of the recently filed Motion, so that counsel would be ready for trial.  Obviously, the Court was mindful that, if it were to grant the Motion, the

ruling would have a substantial impact on the defense case.  And, last minute notice of such a ruling would seem unfair.

Therefore, because the written opinion was not yet finished, I decided to hold a telephone conference on April 5, 2024, as a courtesy to counsel, "to discuss the status of plaintiff's pending motion."  ECF 91.  As of that time, I had formulated a tentative view of the issues, which I shared with counsel.  And, "[a]t the request of the government, the Court . . . permit[ted] the government to submit a supplemental memorandum in support of its claim that Dr. Jacoby qualifies as a hybrid fact/expert witness with respect to damages," due by April 8, 2024.  *Id.*

Unexpectedly, on April 8, 2024, the Government informed the Court of its decision to withdraw its designation of Dr. Jacoby "as a hybrid witness on the issue of damages."  ECF 92.[10]

### III.  Standards of Review

The Motion is styled as a motion to preclude a witness from testifying as an expert and as a motion for partial summary judgment.  ECF 80.  The motion also implicates FRE 702.  I discuss the applicable legal standards below.

#### A.  Summary Judgment

The Motion is styled as a motion for partial summary judgment.  *See* ECF 80.  Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848

---

[10] By that point, the Court had already invested many hours researching issues pertinent to the Motion and drafting a Memorandum Opinion.

F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact that precludes the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

Of relevance here, Rule 56 permits a litigant to move for partial summary judgment, and for the Court to resolve certain issues at summary judgment, rather than the entire case.  *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."); *see also, e.g.*, *Nguti v. Safeco Ins. Co.*, PX-15-742, 2017 WL 2778821, at *2 (D. Md. June 27, 2017) ("A motion for partial summary judgment is recognized as a useful pretrial tool; the Advisory Committee Notes to the 1946 amendment to Rule 56 state: 'The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication . . . serves the purpose of speeding up litigation by' narrowing the issues for trial to those over which there is a genuine dispute of material fact."); *Rotorex Co., Inc. v. Kingsbury Corp.*, 42 F. Supp. 2d 563, 571 (D. Md. 1999) ("[N]umerous courts have entertained and decided motions for partial summary judgment addressing particular issues.").

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.

18

There is a genuine dispute as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). But, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, he must support his factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." But, where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514,

19

522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322-24.  And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party.  *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *accord Knibbs v. Momphard*, 30 F.4th 200, 206 (4th Cir. 2022); *Walker v. Donahoe*, 3 F.4th 676, 682 (4th Cir. 2021); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017).

But, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."  *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).  Rather, "there must be evidence on which the jury could reasonably find for the nonmovant."  *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (alteration and internal quotation marks omitted).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  Thus, in considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations.  *Brown v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Knibbs*, 30 F.4th at 207, 213; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015); *In re French*, 499 F.3d 345, 352 (4th Cir. 2007).  Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is not appropriate, because it is the function of the factfinder to resolve factual disputes, including

matters of witness credibility.  *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'"  *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004)).  But, if testimony is based on personal knowledge or firsthand experience, it can be evidence of disputed material facts, even if it is uncorroborated and self-serving.  *Lovett v. Cracker Barrel Old Country Store, Inc*., 700 F. App'x 209, 212 (4th Cir. 2017).  Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'"  *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383 (4th Cir. 2022) (citing *United States v. Sklena*, 692 F.3d 725, 733 (7th Cir. 2012)).

On the other hand, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion."  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).  "[T]o avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial. Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) (citations omitted). At the same time, if testimony from a nonmovant is based on personal knowledge or firsthand experience, it can be evidence of disputed material facts, even if it is uncorroborated and self-serving.  *Lovett*, 700 F. App'x at 212.

## B.  The FTCA and Negligent Supervision

Pursuant to the FTCA, and so long as certain conditions are satisfied, Congress has waived the sovereign immunity of the United States for claims "for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008).  In sum, 28 U.S.C. § 1346(b) "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity."  *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994).

> For a claim to fall within that "certain category," it must be:
>
> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Id.* (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original).

But, the United States may be liable under the FTCA only to the extent that a "private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1), and only "in the same manner and to the same extent as a private individual under like circumstances."  *Id.* § 2674.  Thus, "the substantive law of each state establishes the cause of action."  *Anderson v. United States*, 669 F.3d 161, 164 (4th Cir. 2012); *see United States v. St. Louis Univ.*, 336 F.3d 294, 300 (4th Cir. 2003) (citation omitted).

Here, the sole claim is one for negligent supervision.  In Maryland, "the elements of negligent supervision are identical to the elements of a general negligence claim."  *Marrick Homes LLC v. Rutkowski*, 232 Md. App. 689, 709, 161 A.3d 53, 65 (2017).  The Maryland Court of

Appeals[11] said in *Jones v. State*, 425 Md. 1, 18, 38 A.3d 333, 343 (2012): "[T]he tort of negligent selection, training, or retention, like any negligence action, requires the plaintiff to prove the existence of four elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury proximately resulted from the defendant's breach." *See also Fidelity First Home Mortg. Co. v. Williams*, 208 Md. App. 180, 198, 56 A.3d 501, 511 (2012) ("As in any action for negligence, a plaintiff asserting a cause of action for negligent supervision or retention must prove duty, breach, causation, and damages.").

### C.  Experts and FRE 702

### 1.

The Government has designated a hybrid liability expert.  Plaintiff seeks to exclude the expert.   Under FRE 104, the court is responsible for determining "preliminary questions concerning the qualification of a person to be a witness" and "the admissibility of evidence," including the admissibility of expert testimony.

In various contexts, including those in which the injuries asserted are medical in nature, expert testimony is often critical to establish causation.  Indeed, in some circumstances the failure of a party to offer adequate expert opinion can result in summary judgment for the opponent.  *See, e.g.*, *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 443, 914 A.2d 113, 135-36 (2007) ("Despite

---

[11] In Maryland's general election of November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland.  The voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, *Voter-Approved Constitutional Change Renames High Courts to Supreme and Appellate Court of Maryland*, MARYLAND COURTS (Dec. 14, 2022), https://perma.cc/K87C-UUCG.  However, I shall refer to the courts by the names in use when the cited opinions were decided.

three amended scheduling orders, and approximately 11 months allotted to conduct discovery, Respondents failed to produce an expert who could testify to specific causation within a reasonable degree of scientific certainty. Without such an expert, Respondents' claims must fail as a matter of law."). On the other hand, expert testimony is not required in every tort case.

Determining whether a particular injury requires expert testimony to establish causation is often a difficult and fact-sensitive undertaking. A canonical case in Maryland on this issue is *Wilhelm v. State Traffic Safety Commission*, 230 Md. 91, 185 A.2d 715 (1962). There, the Maryland Court of Appeals recognized: "There are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony." *Id.* at 99, 185 A.2d at 719. But, "where the cause of an injry [sic] claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts . . . proof of the cause must be made by such witnesses." *Id.* at 100, 185 A.2d at 719.

Further, the court explained: "[A] question involving the causes of emotional disturbances in a person sufficient to evoke, subconsciously, grossly exaggerated symptoms is an intricate and complex one, peculiarly appropriate for science to answer. To allow a jury of laymen, unskilled in medical science, to attempt to answer such a question would permit the rankest kind of guesswork, speculation and conjecture." *Id.* at 101, 185 A.2d at 719. Applying this principle, the court concluded that the trial judge was correct to instruct the jury that there was no legally sufficient evidence to show that the car crash in which plaintiff had been involved resulted in various alleged emotional disturbances, "psychiatric involvement, psychosomatic factors, or mental state." *Id.* at 97–98, 185 A.2d at 717–18. The court also upheld a similar instruction as to abdominal and back pain that the plaintiff had associated with her menstrual periods, remarking that the question "was

a complicated one, presenting an involved and intricate medical inquiry, the solution of which was singularly suitable for determination by medical science." *Id*.  However, the court held that the trial judge should have permitted the jury to consider the question of a causal connection between the crash and a loss of pigmentation in the plaintiff's skin within a few weeks of the crash, concluding that "common experience, knowledge and observation of laymen, we think, would permit a rational inference" as to causation.  *Id*. at 103–05, 185 A.2d at 721–22.

Numerous decisions, both in this Court and in the Maryland courts, have applied the principles of *Wilhelm* in various contexts.  For example, in *Galloway v. Horne Concrete Const.*, 524 Fed. App'x 865, 870-72 (4th Cir. 2013), the Fourth Circuit concluded that no expert was needed with respect to back injuries that developed immediately after a significant tractor-trailer crash.  The Fourth Circuit summarized the circumstances in which expert testimony is not required under *Wilhelm*, 524 Fed. App'x at 871:

> (1) if "a disability develops coincidentally with," or within a "reasonable time after," the subject act; or (2) if the proof of causation is "clearly apparent" from the nature and circumstances of the injury; or (3) if "the cause of the injury relates to matters of common experience, knowledge, or observation of laymen."

(Quoting *Wilhelm*, 230 Md. at 99, 185 A.2d at 719); *see also*, *e.g.*, *Mijares v. Walmart, Inc.*, PWG-19-1804, 2020 WL 5369183, at *3-5 (D. Md. Sept. 8, 2020) (expert needed to link light injuries at a Walmart to Bell's Palsy, a frozen shoulder, and other issues); *Osunde v. Lewis*, PWG-11-0234, 281 F.R.D 250, 261–64 (2012) (expert needed to link premature birth after a car crash involving the mother to child's death four months later); *Skevofilax*, 396 Md. at 440-43, 914 A.2d at 134-36 (expert needed to link vaccines to autism); *Vance v. Vance*, 286 Md. 490, 502-04, 408 A.2d 728, 734 (1979) (no expert needed to link wife learning of husband's bigamy to mental distress and depression); *Tully v. Dasher*, 250 Md. 424, 436-37, 244 A.2d 207, 214-15 (1968) (no expert

needed for nervousness, headaches, and upset stomach that developed immediately after arrest for allegedly disorderly house party); *Johnson v. Zerivitz*, 234 Md. 113, 115-18, 198 A.2d 254, 255-57 (1964) (expert needed to link vehicle accident to emotional disturbances and to leg injury two years later); *Craig v. Chenoweth*, 232 Md. 397, 399-402, 194 A.2d 78, 79-80 (1963) (expert needed to link vehicle accident to partial paralysis of hand six weeks later); *Greater Metro. Orthopaedics, P.A. v. Ward*, 147 Md. App. 686, 691-95, 810 A.2d 534, 537-39 (2002) (expert needed to link stroke to various permanent injuries); *Desua v. Yokim*, 137 Md. App. 138, 145-49 768 A.2d 56, 59-62 (2001) (expert needed to link vehicle accident with soft-tissue neck injury); *Hunt v. Mercy Med. Ctr.*, 121 Md. App. 516, 538-43, 710 A.2d 362, 373-75 (1998) (no expert needed to link cancer misdiagnosis to emotional distress); *S.B. Thomas, Inc. v. Thompson*, 114 Md. App. 357, 371-86, 689 A.2d 1301, 1308-15 (1997) (expert needed to link back injury with herniated disc eight months later); *Strong v. Prince George's Cty.*, 77 Md. App. 177, 183-84, 549 A.2d 1142, 1145 (1988) (expert needed to link car crash with onset of pancreatitis several months later); *Schweitzer v. Showell*, 19 Md. App. 537, 543-44, 313 A.2d 97, 101-02 (1974) (no expert needed to link vehicle accident and buckling of knee 14 months later); *Kraft v. Freedman*, 15 Md. App. 187, 193-94, 289 A.2d 614, 618 (1972) (expert needed to link car crash with recurrence of preexisting ileitis, an inflammation of the small intestine).

In *S.B. Thomas*, 114 Md. App. at 376, 689 A.2d at 1310, the Maryland Court of Special Appeals extensively surveyed the law on this issue, and commented: "It is impossible to frame any neat verbal formula that will prove readily dispositive of future cases." Nevertheless, the court ventured to enumerate the circumstances in which a causal relationship may sometimes be shown, even without expert testimony, *id*. at 382, 689 A.2d at 1313:

> 1) a very close temporal relationship between the initial injury and the onset of the trauma; 2) the manifestation of the trauma in precisely the same part of the body

26

that received the impact of the initial injury; 3) as in *Schweitzer v. Showell* [19 Md. App. 537, 543-44, 313 A.2d 97, 101 (1974)], some medical testimony, albeit falling short of a certain diagnosis; and 4) an obvious cause-and-effect relationship that is within the common knowledge of laymen.

"Conversely," the court said, *id.*, "the causal relationship will almost always be deemed a complicated medical question and expert medical testimony will almost always be required when one or more of the following circumstances is present:"

1) some significant passage of time between the initial injury and the onset of the trauma; 2) the impact of the initial injury on one part of the body and the manifestation of the trauma in some remote part; 3) the absence of any medical testimony; and 4) a more arcane cause-and-effect relationship that is not part of common lay experience (the ileitis, the pancreatitis, etc.).

In *Hunt*, 121 Md. App. at 542, 710 A.2d at 375, the Maryland Court of Special Appeals discussed *Wilhelm*, *Vance*, and other cases in regard to proof of causation as to emotional injuries. It said, *id.*:

[W]hile there may yet lurk some alleged manifestations of emotional injury that are themselves so medically complicated that expert testimony will almost always be required in order to show causation (such as an unconscious tendency to exaggerate physical injuries), other manifestations will tend to be resolved on a case-by-case basis. If the malady is common, if it tends to arise from emotional distress, and if it arises contemporaneously with the emotional distress, then it is highly probable that no complicated medical question is present. A jury is then capable of determining whether causation is established or not. On the other hand, if the malady is unusual, if it is not easily foreseeable as a result of emotional distress, or if it does not arise contemporaneously with the onset of the emotional distress, then the issue is far more probable to present a complicated medical question requiring the assistance of expert testimony. Furthermore, an otherwise simple issue of causation may become a complicated medical matter if under the facts of the case there is a possibility that the symptoms predated the emotional shock or arose from an independent source.

*See also Exxon Mobil Corp. v. Albright*, 433 Md. 303, 367, 71 A.3d 30, 69 (2013) ("As we noted in *Vance*, claims for emotional distress need not be supported necessarily by expert medical testimony to establish injury and causation where 'the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to

27

matters of common experience, knowledge, or observation of laymen.'") (quoting *Vance*, 286 Md. at 502-03, 408 A.2d at 734-35).

The decision of the Maryland Court of Special Appeals in *Desua*, 137 Md. App. at 148, 768 A.2d at 61, is also informative.  There, the Court reasoned  that a "disparity between the damage to appellant's vehicle and the amount of her personal injury claim" increases the necessity of an expert to establish causation.  In that case, the court contrasted with skepticism plaintiff's description of an accident as "relatively simple," and without "huge expenses," with her demand for $150,000 in compensatory damages.  *Id*.

In analyzing the issues here, I note that the question is not whether Dr. Burns breached the standard of care in regard to her conduct with Mr. Lins.  Rather, the question is whether the government is liable for negligent supervision of Dr. Burns.  As I see it, an expert is critical here as to the issue of liability.

## 2.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court established that expert scientific testimony is admissible in evidence if "it rests on a reliable foundation and is relevant," and if it will assist the trier of fact to understand or determine a fact in issue.  *Id.* at 597.  Thereafter, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court extended the *Daubert* principles to all expert testimony requiring technical or specialized knowledge.

FRE 702 essentially codifies those decisions.  It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in

issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 "was intended to liberalize the introduction of relevant expert evidence." *Westberry v. Gislaved Gummi AB*, 178 F. 3d 257, 261 (4th Cir. 1999). Pursuant to FRE 702, a properly qualified expert witness may testify regarding technical, scientific, or other specialized knowledge in a given field if the testimony would assist the trier of fact in understanding the evidence or to determine a fact in issue, and the testimony is both reliable and relevant. *See Sardis v. Overhead Door Corp.*, 10 F. 4th 268, 281 (4th Cir. 2021); *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019); *United States v. Young*, 916 F.3d 368, 379 (4th Cir. 2019).

To be sure, "'[e]xpert evidence can be both powerful and quite misleading . . . .'" *Daubert*, 509 U.S. at 595 (citation omitted). Therefore, the trial court serves a critical "gatekeeping role" by making pretrial determinations that ensure that the expert is qualified and that the expert's testimony "rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597; *see Sardis*, 10 F. 4th at 282; *Smith*, 919 F.3d at 835; *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 577 (4th Cir. 2017). In addition, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *see also* FRE 104(a).

The "importance of [the] gatekeeping function cannot be overstated." *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018) (citation and internal quotation marks omitted). Indeed, the Fourth Circuit has described the district court's "Rule 702 gatekeeping function" as "indispensable." *Sardis*, 10 F. 4th at 284. However, the gatekeeper role is not meant to "supplant the adversary system or the role of the jury [or the fact-finder]: '[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999) (quoting *Daubert*, 509 U.S. at 596); *see United States v. Moreland*, 437 F. 3d 424, 431 (4th Cir. 2006) (recognizing that "expert testimony is subject to testing by vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof"), *overruling on other grounds recognized by United States v. Swain*, 49 F.4th 398, 403 (4th Cir. 2022). Thus, "the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 892 F.3d 624, 631 (4th Cir. 2018) ("*In re Lipitor*") (citation and quotation marks omitted).

The party seeking to present expert testimony has the burden to establish the admissibility of the evidence, by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *Cady v. Ride-Away Handicap Equipment Corp.*, 702 Fed. App'x 120, 124 (4th Cir. 2017); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Maryland Casualty Co. v. Therm-O-Disc., Inc.*, 137 F.3d 780, 783 (4th Cir. 1998); *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011); *Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011). When "the admissibility of expert testimony is specifically questioned, Rule 702 and *Daubert* require that the district court make explicit findings, whether by written opinion or orally on the record, as to the challenged preconditions to admissibility." *Sardis*, 10 F.4th at 283.

Notably, to be admissible, "'the proffered expert opinion [must be] based on scientific, technical, or other specialized *knowledge* and not on belief or speculation . . . .'" *United States v. Landersman*, 886 F.3d 393, 412 (4th Cir. 2018) (citation omitted) (emphasis in *Landersman*); *see*

*Daubert*, 509 U.S. at 589–90; *Sardis*, 10 F. 4th at 290; *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019); *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). "While the fit between an expert's specialized knowledge and experience and the issues before the court need not be exact . . . an expert's opinion is helpful to the trier of fact, and therefore relevant under Rule 702, 'only to the extent the expert draws on some special skill, knowledge or experience to formulate that opinion.'" *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392–93 (D. Md. 2001) (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998)).

The word "knowledge" is not superfluous. "[T]he requirement of 'knowledge' guards against the admission of subjective or speculative opinions.[]" *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) ("*In re Rezulin*"). And, the term knowledge "'connotes more than subjective belief . . . .'[]" *Id.* at 543 (citation omitted). Expert testimony based on "belief or speculation" is not admissible. *Oglesby*, 190 F.3d at 250. Moreover, testimony that concerns matters within the common knowledge and experience of a lay juror does not pass muster. *United States v. Dorsey*, 45 F.3d 809, 814 (4th Cir. 1995); *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). The foundation of "knowledge" helps to ensure that a witness does not testify about lay matters, for which an expert is not appropriate. *In re Rezulin*, 309 F. Supp. 2d at 541.

An expert opinion must also be supported by the record. *See Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 477 (4th Cir. 2005); *Tyger Const. Co. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Casey*, 823 F. Supp. 2d at 340. However, in general, "'questions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility' of the witness' assessment, 'not its admissibility.'" *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (citation omitted) (alteration in *Bresler*).

District courts necessarily have "broad latitude in ruling on the admissibility of evidence," and as to "evidentiary rulings with respect to relevance and reliability." *Bryte*, 429 F.3d at 475; *see United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). But, "a district court abuses its discretion if it fails to ensure that a proffered expert opinion is 'sufficiently relevant and reliable . . . .'" *Sardis*, 10 F.4th at 282 (citation omitted). This is because reliability and relevance are "'*precondition[s]* to admissibility'" of expert testimony. *Id.* at 282 (emphasis in *Sardis*) (citation omitted).

To be reliable, the testimony must be grounded "in the methods and procedures of science," and it must be something more than subjective belief or unsupported assumptions. *Daubert*, 509 U.S. at 589–90; *see Sardis*, 10 F. 4th at 290; *Belville*, 919 F.3d at 232; *Oglesby*, 190 F.3d at 250. An expert's testimony is relevant if it has "'a valid scientific connection to the pertinent inquiry.'" *Belville*, 919 F.3d at 232 (citation omitted). And, as mentioned, the expert testimony is relevant if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert* 509 U.S. at 591; *see also In re Lipitor*, 892 F.3d at 631; *United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017); *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017); *United States v. Forrest*, 429 F.3d 73, 80–81 (4th Cir. 2005). In other words, helpfulness to the trier of fact is "the 'touchstone'" under Rule 702. *Kopf*, 993 F.2d at 377 (citation omitted). And, "'[d]oubt regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *Mack v. AmerisourceBergen Drug Corp.*, 671 F. Supp. 2d 706, 709 (D. Md. 2009) (citation omitted).

*Daubert* articulated five non-exhaustive factors that the trial court should consider in evaluating the reliability of an expert's reasoning or methodology: (1) whether the particular scientific theory has been or can be tested; (2) whether the theory has been subjected to peer review

and publication; (3) the known or potential rate of error; (4) whether there are standards controlling the method; and (5) whether the technique has gained general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94; *see Sardis*, 10 F.4th at 295 (reiterating that the "hallmarks of reliability" are "testing, peer review, literature, rate of error or general acceptance . . . ."); *see also United States ex rel. Lutz v. Mallory*, 988 F.3d 730, 741 (4th Cir. 2021); *Belville*, 919 F.3d at 233; *United States v. Crisp*, 324 F.3d 261, 265–66 (4th Cir. 2003).

As mentioned, the *Daubert* factors are "'not exhaustive.'" *Belville*, 919 F.3d at 233 (citation omitted). They are meant to be "helpful, not definitive," and not all factors necessarily apply in a given case. *Kumho Tire Co.*, 526 U.S. at 151; *see Nease*, 848 F.3d at 229. Indeed, the Supreme Court has said that the factors are not a "checklist." *Kumho Tire Co.*, 526 U.S. at 150. As a whole, the factors are meant to ensure that "an expert, whether basing his testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. Thus, the evaluation "is always a flexible one . . . ." *Oglesby*, 190 F.3d at 250.

Expert testimony need not be "'irrefutable or certainly correct'" in order to be admissible. *Moreland*, 437 F. 3d at 431 (citation omitted); *see Daubert*, 509 U.S. at 596; *Bresler*, 855 F.3d at 195; *Westberry*, 178 F.3d at 261. And, the "subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend." *Kopf*, 993 F.2d at 377. Moreover, the trial court "should meticulously focus on the expert's principles and methodology, and not on the conclusions that they generate." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004); *see Bresler*, 855 F.3d at 195.

However, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the

expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Indeed, "*ipse dixit*" is the "hallmark of an unreliable opinion." *Sardis*, 10 F.4th at 295, 296.

With regard to an expert's qualifications, the Advisory Committee's notes to Rule 702 provide that experience alone, or in conjunction with "other knowledge, skill, training or education," can provide a sufficient foundation for expert testimony. *See also Kumho Tire Co.*, 526 U.S. at 156 (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). However, an expert witness may not offer an opinion where the subject matter goes beyond the witness's area of expertise. *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994); *see also Smith v. Central Admixture Pharm. Servs., Inc.*, AW–07–3196, 2010 WL 1137507, at *3 (D. Md. Mar. 19, 2010) ("It is well established that 'general expertise is not sufficient to qualify [an expert] to testify on a matter that requires particularized knowledge, training, education, or experience.'") (quoting *Fitzgerald v. Smith & Nephew Richards, Inc.*, JFM-95-3870, 1999 WL 1489199, at *3 (D. Md. Dec. 30, 1999), *aff'd*, 11 F. App'x 335 (4th Cir. 2001)).

In contrast to principles of common law, FRE 704(a) permits expert testimony that "embraces an ultimate issue to be decided by the trier of fact." *United States v. Campbell*, 963 F.3d 309, 313 (4th Cir. 2020), *cert. denied sub nom. Washington v. United States*, ___ U.S. ___, 141 S. Ct. 927 (2020); *see United States v. McIver*, 470 F.3d 550, 561 (4th Cir. 2006); *United States v. Perkins*, 470 F.3d 150, 157 (4th Cir. 2006); *United States v. Barile*, 286 F.3d 749, 759 (4th Cir. 2002). The decision whether to permit such testimony turns on an analysis of Rule 702. *Campbell*, 963 F.3d at 314. "Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination." *Barile*, 286 F.3d at 760. In any event, such testimony cannot "tell the jury what result to reach . . . ." *Id.*

As the Court noted in *Perkins*, 470 F.3d at 158: "To state the general rule, however, 'is not to decide the far more complicated and measured question of when there is a transgression of the rule.'" (Citation omitted). Indeed, "'[t]he line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern.'" *Campbell*, 963 F.3d at 314. (Citation omitted). And, "drawing that line requires a case-specific inquiry of the charges, the testimony, and the context in which it was made." *Id.*

Expert testimony about a legal standard in a given case is an important issue. Ordinarily, expert testimony that states a legal conclusion is inadmissible. *See Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 368 (4th Cir. 1986), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988); *see also United States v. Melvin*, 508 Fed. App'x 209, 211 (4th Cir. 2013) (stating that "an expert generally is not permitted to apply law to facts to reach a legal conclusion"). But, there is no absolute proscription concerning the admissibility of testimony concerning legal matters. *McIver*, 470 F.3d at 561–62; *see, e.g., Adams v. New England Scaffolding, Inc.*, No. 13-12629-FDS, 2015 WL 9412518, *5 (D. Mass. Dec. 22, 2015) (recognizing that "admission of expert evidence concerning the law is not nearly as rare as the case law might suggest" and outlining recent federal cases involving legal experts).

Of relevance, "[e]xpert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts. Because of their specialized knowledge, their testimony can be extremely valuable and probative." *United State v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *see United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (stating that "in complex cases . . . expert testimony may help a jury understand unfamiliar terms and concepts"), *cert. denied*, 502 U.S. 83 (1991).

In determining whether expert testimony constitutes an impermissible legal conclusion, courts look to "whether the question [posed to the expert] tracks the language of the legal principle at issue or of the applicable statute" and "whether any terms employed have specialized legal meaning" – in other words, "'a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" *Barile*, 286 F.3d at 760 (citation omitted); *see Perkins*, 470 F.3d at 158; *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 324 (D. Md. 2017). Courts also consider whether the proposed expert testimony would "take away from the jury its responsibility to determine the facts and ultimately, whether the defendants are liable." *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CCB-13-617, 2016 WL 524270, at *5 (D. Md. Feb. 10, 2016) (excluding portions of expert report that were unhelpful legal conclusions).

Nevertheless, "[i]n appropriate circumstances, an expert may offer an opinion that applies the facts to a legal standard." *Campbell*, 963 F.3d at 314; *see id.* at 315 (affirming district court's exercise of discretion in permitting doctor to testify that "heroin intoxication" was the cause of death and, "'but for the heroin,'" the victim "'would have lived'") (citation omitted); *see*, *e.g.*, *In re Lipitor*, 892 F.3d at 646-47 (discussing the need for expert testimony to establish that a drug was the cause of death); *Wolf*, 860 F.3d at 193 (in a mortgage fraud case, allowing testimony of expert as to whether "categories of information would have been material to lenders"); *United States v. Chikvashvili*, 859 F.3d 285, 292-94 (4th Cir. 2017) (affirming the admission of a doctor's "expert opinion on causation" of death); *United States v. Alvarado*, 816 F.3d 242, 246 (4th Cir. 2016) (affirming the district court's admission of an expert witness's testimony that, "without the heroin, [the victim] doesn't die"); *McIver*, 470 F.3d at 562 (finding no error in the admission of testimony of a physician who opined that the defendant, also a physician, acted outside the course of legitimate medical practice in his pain medication prescriptions). *But see*, *e.g.*, *DiBella v.*

*Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (ruling inadmissible expert testimony that defendant's conduct constituted "extortion"); *Miller v. Clark County*, 340 F.3d 959, 963 n.7 (9th Cir. 2003) (stating that expert testimony that a dog bite constituted "deadly force" amounts to a legal conclusion); *Christiansen v. Nat'l Sav. & Trust Co.*, 683 F.2d 520, 529 (D.C. Cir. 1982) (observing that testimony regarding the existence of "fiduciary duties" constitutes a legal conclusion).

### D.  Hybrid Witnesses and Fed. R. Civ. P. 26(a)(2)

The Government has classified Dr. Jacoby as a "hybrid" witness as to liability, meaning that he is both a fact witness and an expert witness.  If so, this would obviate the requirement for the Government to provide an expert report under Fed. R. Civ. P. 26(a)(2)(B).  Instead, the Government need only satisfy Rule 26(a)(2)(C).  *See, e.g.*, *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022)  ("Hybrid witnesses—fact witnesses with expertise that will inform their testimony— do not fall under Rule 26(a)(2)(B)'s purview.").  Conversely, if Dr. Jacoby is not a hybrid witness, the Government was obligated to comply with Rule 26(a)(2)(B).

Fed. R. Civ. P. 26(a)(2) provides:

> (2) *Disclosure of Expert Testimony.*

> (A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

> (B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

>> (ii) the facts or data considered by the witness in forming them;

>> (iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) *Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

(i) at least 90 days before the date set for trial or for the case to be ready for trial; or

(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

Local Rule 104.10 (D. Md) is also relevant.  It provides, *id.* (emphasis added):

Unless otherwise ordered by the Court, a party must provide the disclosures required by Fed. R. Civ. P. 26(a)(2)(B) only as to experts retained or specially employed by a party to provide expert testimony.  *The disclosures need not be provided as to hybrid fact/expert witnesses such as treating physicians.*  The party must disclose the existence of any hybrid fact/expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(A), and disclose the subject matter on which the witness is expected to present evidence under Fed. R. Evid. 702, 703, or 705, as well as a summary of the facts and opinions to which the hybrid fact/expert witness is expected to testify, pursuant to Fed. R. Civ. P. 26(a)(2)(C).  In addition, an adverse party may obtain the opinions of such witnesses (to the extent appropriate) through interrogatories, document production requests, and depositions.

The role of a witness implicates Rule 26(a)(2).  As the text of Rule 26(a)(2) reflects, "[t]he scope of the disclosure required under the Federal Rules of Civil Procedure depends on whether the person [is an] expert witness[] 'retained or specially employed to provide expert testimony' or

whether the witness[] [is a] 'hybrid fact/expert witness[] pursuant to Fed. R. Civ. P. 26(a)(2)(A).'" *London v. Wash. Metro. Area Transit Auth.*, AAQ-21-1497, 2023 WL 3727058, at *3 (D. Md. May 30, 2023) (citing Local Rule 104.10); *see Fields v. Allstate Corp*., CBD-11-653, 2012 WL 1792639, at *2 (D. Md. May 15, 2012). "Experts [who] are specially retained are governed by Rule 26(a)(2)(B), while hybrid witnesses such as treating physicians are governed by Rule 26(a)(2)(C)." *Ace Am. Ins. Co. v. McDonald's Corp*., GLR-11-3150, 2012 WL 2523883, at *3 (D. Md. Jun. 28, 2012); *see Donalds v. Ethicon, Inc.,* 2023 WL 2446703, at *5 (4th Cir. Mar. 10, 2023) (per curiam) (recognizing that Rule 26(a)(2)(C) applied to a doctor who was designated in his capacity as a treating physician, not a retained expert); *Barnes v. Costco Wholesale Corp*., JKB-18-3377, 2019 WL 3767506, at *2 (D. Md. Aug. 9, 2019) ("[The] testimony [of treating physicians] is subject to the summary disclosure requirements of Rule 26(a)(2)(C) . . . .").

To be sure, "most witnesses do not qualify as hybrid witnesses." *Timpson by & through Timpson*, 31 F.4th at 253. "The hybrid witness exception applies when testimony is given arising out of personal observations made in the normal course of duty." *Amtrak v. Ry. Express, LLC*, 268 F.R.D. 211, 216 (D. Md. 2010); *see also Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017) ("hybrid fact/expert witnesses . . . must testify from the personal knowledge they gained on the job"); *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011) (finding that a witness whose "opinion testimony arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation" does not qualify as a hybrid witness).

The "quintessential example" of a hybrid witness is a treating health care provider. *Sullivan v. Glock*, 175 F.R.D. 497, 500 (D. Md. 1997); *see also Wiseman v. Wal-Mart Stores, Inc.*, 16-CV-04030-SAG, 2017 WL 4162238, at *3 (D. Md. Sept. 19, 2017); *Doe v. Cabell Cnty. Bd. of*

*Educ.*, CV 3:21-0031, 2022 WL 11913218, at *1 (S.D.W. Va. Oct. 20, 2022). However, it is possible for a witness to be "a hybrid witness as to certain opinions, but a retained expert as to others . . . ." *Glock*, 175 F.R.D. at 500. Even a treating physician may be deemed an expert subject to Rule 26(a)(2)(B) if his or her opinion is "based upon factors that were not learned in the course of the treatment of the patient . . . ." *Id.* at 501 (quoting *Hall v. Sykes*, 164 F.R.D. 46, 48 (E.D. Va. 1995)). Judge Grimm explained in *Glock*, 175 F.R.D. at 501:

> To the extent that the source of facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient—as opposed to being subsequently supplied by an attorney involved in litigating a case involving the condition or injury—then no Rule 26(a)(2)(B) statement should be required.

"Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005). "The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" *Bresler*, 855 F.3d at 190 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014)). Therefore, "a party may not circumvent the requirements of Rule 26 by employing a witness, like a treating physician who treated an injured party, to provide testimony extending into classic expert opinion regarding causation and prognosis." *Amtrak*, 268 F.R.D. at 216; *see also Kim v. Time Ins. Co.*, 267 F.R.D. 499, 502 (N.D. Tex. 2008) ("[W]here a treating physician has prepared his opinions in anticipation of litigation or relies on sources other than those utilized in treatment, courts have found that the treating physician acts more like a retained expert and must comply with [the report requirement.]") (alterations added).

Critically, the requirements of Rule 26(a)(2)(B) do not apply to a hybrid fact/expert witness. And, the Government insists that it was not required to comply with Rule 26(a)(2)(B), because Dr. Jacoby is a hybrid witness. Rather, it contends that it is merely subject to Rule

26(a)(2)(C).  Under this provision, a disclosure for a hybrid fact/expert witness "must state:  (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

The information required by Rule 26(a)(2)(C) may come from the lawyer, rather than the witness.  Even so, it amounts to more than mere identification of an individual.  *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 581 n.15 (D. Md. 2010).  And, it requires more than "vague generalizations" as to the subject matter of the opinions of the witness.  *Keralink Int'l, Inc. v. Stradis Healthcare, LLC*, CCB-18-2013, 2021 WL 1198150, at *2 (D. Md. Mar. 30, 2021) (quoting *Meredith v. Int'l Marine Underwriters*, JKB-10-837, 2011 WL 1466436, at *7 (D. Md. Apr. 18, 2011)).  But, "[t]his disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)" and does not require "undue detail."  Fed. R. Civ. P. 26(a)(2)(C) Advisory Committee's Note to 2010 Amendment.

Assuming that Rule 26(a)(2)(B) applies, but is not satisfied,  Fed. R. Civ. P. 37 is implicated.  Fed. R. Civ. P. 37(c)(1) provides, in relevant part, *id.*: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  *See Bresler*, 855 F.3d at 190; *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003).  According to plaintiff, Dr. Jacoby is not a hybrid; he is subject to Rule 26(a)(2)(B); the Government did not comply with the expert disclosure requirement; and the Government should be barred from calling Dr. Jacoby as an expert on liability.

Rule 37 "'gives teeth' to the Rule 26(a)(2) requirements by 'forbidding a party's use of improperly disclosed information at a trial, at a hearing, or on a motion, unless the party's failure to disclose is substantially justified or harmless.'" *Barnett v. United States*, DCN-20-2517, 2021 WL 5888542, at *2 (D.S.C. Dec. 13, 2021) (quoting *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1365 (Fed. Cir. 2011)). "[T]he basic purpose of Rule 37(c)(1)" is "preventing surprise and prejudice to the opposing party." *Southern States*, 318 F.3d at 596.

The Fourth Circuit has emphasized that Rule 37(c)(1) imposes an "'automatic sanction' of exclusion," and that the "general rule" is that evidence that a party has "failed to properly disclose" should be excluded. *Id*. at 595 n.2, 596 (quoting 1993 Advisory Committee Note to Fed. R. Civ. P. 37). This is because "[a] party that fails to provide [Rule 26] disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi*, 427 F.3d at 278–79.

"The only exceptions to exclusion [under Rule 37(c)(1)] are when the nondisclosure is substantially justified or harmless." *Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 623 (D. Md. 2008). And, "[t]he party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Bresler*, 855 F.3d at 190.

"[I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the

nondisclosing party's explanation for its failure to disclose the evidence." *Southern States*, 318 F.3d at 597; *see Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014).

"The first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Bresler*, 855 F.3d at 190. Moreover, "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *Southern States*, 318 F.3d at 596.

Importantly, "a district court is 'not required to tick through each of the *Southern States* factors.'" *Hawkins v. Barakat*, ELH-20-1386, 2021 WL 1294111, at *2 (D. Md. Apr. 7, 2021) (quoting *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021)); *accord Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011). Instead, "District courts are accorded 'broad discretion' in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless." *Bresler*, 855 F.3d at 190 (quoting *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014)).

## IV.     Discussion

### A.  Motion to Exclude Dr. Jacoby as a Liability Expert

### 1.

Dr. Jacoby has been named by the Government as both a fact witness and an expert witness with respect to liability. ECF 85-1 at 2, 3; ECF 80-6 at 4; ECF 85-4 at 5. In the Motion, plaintiff seeks to bar Dr. Jacoby from testifying as an expert with respect to liability, claiming he does not qualify as a hybrid witness; the Government was therefore required to comply with Rule 26(a)(2)(B); and the Government failed to do so.

According to plaintiff, Dr. Jacoby is improperly classified as a "hybrid" witness as to liability, because Dr. Jacoby has never been "a treating therapist or health care provider of Mr. Lins." ECF 80-1 at 8. Rather, as described in Dr. Jacoby's deposition (*see, e.g.*, ECF 80-4 at 2–5), Dr. Jacoby "was responsible for supervising V.A. staff psychologists, including Dr. Erin Romero." ECF 80-1 at 9. And, "Dr. Erin Romero, in turn, was the direct supervisor of Dr. Burns, the V.A. employee who abused Mr. Lins." *Id.* Accordingly, plaintiff asserts, *id.*: "Dr. Jacoby was the supervisor of the supervisor of Mr. Lins' therapist." Plaintiff adds that the scope of Dr. Jacoby's expected testimony "far exceeds 'opinions derived from information learned during the actual treatment of the patient' or observations/information made or learned 'during the normal course of duty.'" *Id.* at 10.

Moreover, plaintiff asserts that "it is patently clear that the liability and damages opinions" proffered by the Government on behalf of Dr. Jacoby "were formed during this litigation, and not during the time that the underlying events occurred." *Id.* at 6. In his view, Dr. Jacoby's opinions are based on "information supplied to him after the lawsuit was filed, by counsel for the Government." *Id.* at 11. Because Dr. Jacoby formed his opinions "later, during and a result of this very litigation and in response to Plaintiff's expert's testimony," plaintiff contends that Dr. Jacoby "was required to write and sign a Rule 26 Report." *Id.* at 12; *see id.* at 9. And, because Dr. Jacoby has not offered a Rule 26 report, plaintiff insists that "Rule 37(c) requires his preclusion at trial." *Id.* at 6.

Even assuming Rule 26(a)(2)(C) applies, plaintiff takes issue with the adequacy of the Government's disclosure concerning Dr. Jacoby's anticipated liability testimony. *Id.* at 10. Plaintiff argues that Dr. Jacoby's disclosure regarding liability "does not identify the 'facts' upon which [he] will rely to support his alleged hybrid expert testimony, other than referring to his

deposition testimony." *Id.* (citing ECF 80-5).  In the view of plaintiff, the disclosure is instead "more consistent with a statement of 'vague generalizations,' which has been held an insufficient disclosure even under Rule 26(a)(2)(C)'s less stringent requirements." *Id.*

In addition, plaintiff challenges the Government's disclosure that Dr. Jacoby "is being offered as an expert to respond to the standard of care testimony of" Dr. Pacheco. *Id.* He describes the description as "conclusory." *Id.* And, he argues that the disclosure "incorrectly states that Dr. Jacoby testified 'extensively to these and other matters' during his deposition," because that deposition "was taken in [Dr. Jacoby's] capacity as a *fact witness* in September of 2022 . . . ." *Id.* at 11 (emphasis in ECF 80-1).

Further, plaintiff argues that Dr. Jacoby did not develop "standard of care opinions in the normal course of duty in 2015 and 2016." *Id.* (emphasis removed).  And, plaintiff maintains that standard of care opinions cannot be "derived in the normal course of treatment," because "whether someone met the standard of care is a legal question that only ever arises when a patient suffers an injury or care is criticized." *Id.*

Lins also maintains that Dr. Jacoby's liability opinions "do not meet the requirements of Federal Rule of Evidence 702." *Id.* at 13.  He urges the Court to preclude Dr. Jacoby from testifying as to liability because Dr. Jacoby's proposed testimony constitutes "nothing more than self-serving, conclusory statements that Dr. Jacoby himself, and the employees for whose care he is responsible, met the standard of care, and thus are not helpful to the finder of fact." *Id.*  Noting that Dr. Jacoby is himself "accused" of wrongdoing, plaintiff posits that Dr. Jacoby's expert testimony is deficient because it is "based entirely on Dr. Jacoby's subjective beliefs about his own conduct and that of his employees," and "it improperly passes on the credibility of the other

Government witnesses in that it assumes that none of the other Government agents who were involved in supervising Dr. Burns could have done anything wrong." *Id.* at 15.

In response, the Government contends that its identification of Dr. Jacoby as a hybrid liability expert, as well as its Rule 26(a)(2)(C) disclosures, "fully compl[y] with the obligations required for hybrid experts who are not required to produce a written report under FRCP 26 (a)(2)(C)." ECF 85 at 6. The Government maintains that it must only provide disclosures as to "'the subject matter on which the witness is expected to present evidence'" and "'a summary of the facts and opinions to which the witness is expected to testify.'" *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(C)).

Further, the Government argues that plaintiff "misapprehends the operation of the standard of care, which is the degree of care exercised by a reasonable and prudent practitioner." *Id.* It posits that health care providers are "fully aware of and apply the standard of care to the services they provide every day" and they "don't wait to get sued to learn the standard of care or how to comply in practice." *Id.*

The Government also argues that Dr. Jacoby's deposition testimony did not contain expert opinion testimony only because Dr. Jacoby "had not yet been identified as a hybrid expert, nor was he required to be identified by that time." *Id.* at 3. But, the Government seems to suggest that Dr. Jacoby nonetheless testified as if he were an expert, addressing "his qualifications and the practice of supervision at the VAMHCS," including his supervision of Dr. Romero. ECF 85 at 7. And, the Government it argues that the fact Dr. Jacoby "was deposed as a fact witness before being designated as a hybrid expert does not alter his 'knowledge, skill, experience, training and education.'" *Id.*

46

Moreover, the Government points out that Dr. Jacoby "supervised Dr. Romero," who in turn supervised Dr. Burns. *Id.* at 7. Thus, the Government insists that Dr. Jacoby was part of "the treatment team," and "can access patient records as part of supervision, whether monitoring quality or giving advice." *Id.* at 9. Accordingly, the Government contends that Dr. Jacoby "will testify at trial that based on his supervisory interactions with Dr. Romero and her regular meetings with and reports to him, Dr. Romero competently supervised Burns." *Id.*

In addition, the Government maintains that Dr. Jacoby "is uniquely qualified to testify as a hybrid expert about supervision of psychotherapists." *Id.* It asserts that from 2014 to 2019 Dr. Jacoby "was the chief psychologist for the VAHMCS and responsible for approximately 80 psychologists." *Id.* He is now the Director of the Mental Health Clinical Center, where he oversees more than 350 full-time employees. *Id.* Thus, the Government contends that Dr. Jacoby "will refute Plaintiff's liability opinions and explain supervision in the context of impatient mental health treatment as outlined in his FRCP 26(a)(2)(C) disclosure and in his deposition." *Id.*

In Reply, plaintiff contends that the Opposition lacks "any substantive response to Plaintiff's argument that [Dr. Jacoby] is not a proper 'hybrid' expert witness on the subject of negligence, and was required to provide a Rule 26 Report regarding his liability opinions." ECF 86 at 2. And, he points out that the Government fails to "explain how Dr. Jacoby purportedly 'developed' standard of care opinions in 2015 and 2016 when he was involved in the underlying case." *Id.* Plaintiff also complains that the Government was required to timely disclose Dr. Jacoby as an expert and have him author a Rule 26 report. *Id.* at 3.

Plaintiff reiterates that he does not seek to preclude Dr. Jacoby from testifying as a fact witness. *Id.* at 2. But, he asserts, *id.* at 2–3: "If Dr. Jacoby offers an opinion that the standard of care was met based on information obtained through litigation and learned after the events at issue,

then he is no longer a 'hybrid' expert, and he was required to have authored a complete Rule 26 report.[]" In other words, plaintiff argues, *id.* at 2 (emphasis in ECF 86):

> What Plaintiff *does* object to . . . Dr. Jacoby being asked to give *retrospective, objective* "expert" opinion testimony that the standard of care was met based on information that he did *not* have in 2015 and 2016, and that he has since learned in this litigation. Any information that he learned *after* his role in the supervision of Erin Burns ended would not be germane to the "hybrid" opinions that he developed at the time of his involvement.

**2.**

Under the applicable Scheduling Order, the Government was required to disclose its liability experts by April 17, 2023. ECF 80-1 at 3. However, the Government did not disclose Dr. Jacoby as a hybrid liability expert until June 13, 2023. ECF 85-1 at 2, 3. Nevertheless, by Order of June 15, 2023, I extended the disclosure deadline to July 7, 2023. ECF 63. Therefore, there is no merit to the claim of untimeliness with respect to the Government's liability expert.

Plaintiff's position that Dr. Jacoby is not a proper hybrid witness appears to be premised largely on the fact that Dr. Jacoby was not the immediate supervisor of Dr. Burns, who was the treatment provider for Mr. Lins, and therefore he cannot qualify as a hybrid witness. In my view, the argument misses the mark.

The claim here is for negligent supervision of Dr. Burns. And, according to the Government, Dr. Jacoby clearly had a supervisory role. As I see it, Dr. Jacoby fits the bill as a hybrid fact and liability expert, given his expertise and his supervision of Dr. Romero, who in turn supervised Dr. Burns. His expert training, along with his role as a supervisor—one step removed from the immediate supervisor—qualifies him as a hybrid witness as to liability.

It is difficult to discern prejudice to plaintiff from the hybrid role of Dr. Jacoby. Plaintiff deposed Dr. Jacoby on September 26, 2022, albeit as a fact witness. ECF 80-4 at 1; *see also* ECF 80-1 at 3. Nevertheless, the questions posed by plaintiff's counsel touched on Dr. Jacoby's

expertise, his role, and his opinions about the supervision of Dr. Burns.  *See, e.g.*, ECF 80-4 at 2–3 (discussing Dr. Jacoby's past and current employment, including his position as the Director of the Mental Health Clinical Center where he oversees 350 employees); *id.* at 4, 14, 15, 18 (discussing clinical supervision generally and also of Dr. Romero); *id.* at 21 (answering hypothetical question as to patient activity that would be "concerning" to him as a psychologist).

Dr. Jacoby's deposition testimony was predicated on his responsibilities as a supervisor and his expertise as a clinician, with knowledge of the criteria for proper supervision of mental health therapists.  Lins does not point to other lines of inquiry that would have been pursued at Dr. Jacoby's deposition if plaintiff had been aware of the expert designation at the time of the deposition.

Rule 26(a)(2)(C) requires that a disclosure of a hybrid fact/expert witness "must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."  In my view, the Government provided an adequate disclosure of Dr. Jacoby's expected testimony, summarizing his employment history, experience supervising the supervisor of Dr. Burns, and his expected expert opinions.  ECF 80-5; ECF 85-2.

As discussed, plaintiff also argues that Dr. Jacoby's testimony should be excluded under Rule 702, because he is an "accused" (ECF 80-1 at 15) and his testimony is "self-serving" and subjective.  *Id.* at 13.  However, this is fertile ground for cross-examination, not exclusion.

Accordingly, I shall deny the Motion to exclude Dr. Jacoby as a hybrid witness as to liability.

### B.  Motion for Partial Summary Judgment

Plaintiff argues that, if the Court concludes that Dr. Jacoby cannot testify as an expert witness as to liability, the Court should then grant partial summary judgment as to the issue of liability.  ECF 80-1 at 19.  This is because, without Dr. Jacoby's testimony as to liability, "the only evidence" at trial as to the issue of whether the Government met the standard of care in its supervision of Dr. Burns "will be the testimony of Plaintiff's expert Dr. Pacheco."  *Id.*  Plaintiff contends that, without Dr. Jacoby's expert testimony, "the Government cannot generate a dispute of material fact on the issue of a breach in the standard of care and causation."  *Id.* at 20.  Thus, plaintiff requests that the Court "limit the trial of this case to the issue of damages, *i.e*[.], what harms and losses Mr. Lins has suffered as a result of the Government's negligent supervision of Erin Burns."  *Id.*

Plaintiff's summary judgment motion is untimely.  As discussed, the Court set a dispositive motions deadline of August 11, 2023.  ECF 63.  On August 17, 2023, plaintiff's counsel wrote to the Court on behalf of both parties.  ECF 65.  She asserted, *id.* at 1 (alteration in ECF 65): "Pursuant to the Court's initial discovery schedule for this case, the parties were to complete fact/liability related discovery, and 'expert discovery as to damages w[as to] be deferred until after resolution of summary judgment motions.'"  (Citation omitted).  Counsel also stated, *id.*: "At this time, the first phase of fact/liability discovery is completed."  And, she noted that "neither side filed a dispositive motion."  *Id.*

On August 25, 2023, I issued a Scheduling Order to govern the damages phase of discovery.  ECF 67.  And, I stated, *id.* at 1: "As you know, expert discovery was deferred until after resolution of summary judgment motion(s). However, no summary judgment motions were

filed. Therefore, I held a scheduling conference on August 24, 2023, to establish a schedule for expert discovery."

By Order of January 18, 2024 (ECF 75), I approved the parties' request for an extension until February 21, 2024, for the filing of Daubert motions and motions in limine.  However, I did not extend the summary judgment deadline.  The motion for partial summary judgment was filed on February 20, 2024.  ECF 80.  It is plainly untimely.

Adherence to Rule 26 is critical.  "'The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'"  *Bresler*, 855 F.3d at 190 (quoting *Russell*, 763 F.3d at 396).

Fed. R. Civ. P. 16 concerns scheduling and case management.  Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent."  Thus, Rule 16 "recognize[s] . . . that the parties will occasionally be unable to meet . . . deadlines [in a scheduling order] because scheduling order deadlines are established relatively early in the litigation." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004) (citation omitted).

Scheduling orders serve a vital purpose in helping a court to manage its civil caseload. *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985); *see also Naughton v. Bankier*, 114 Md. App. 641, 653, 691 A.2d 712, 718 (1997) (recognizing that a scheduling order helps "to maximize judicial efficiency and minimize judicial inefficiency").  A scheduling order is an important vehicle in "'securing the just, speedy, and inexpensive determination of every action.'"  *Miller v. Transcend Servs., Inc.*, LPA-10-362, 2013 WL 1632335, at *4 (M.D.N.C. Apr. 16, 2013) (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 253 (S.D.W.Va. 1995)).

Notably, a scheduling order is not a "'frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'"  *Potomac Elec. Power Co. v. Elec. Motor*

*Supply, Inc.*, 190 F.R.D. 372, 375–76 (D. Md. 1999) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)).  "In an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation."  *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002).  Thus, as indicated, a scheduling order is an important vehicle in "'securing the just, speedy, and inexpensive determination of every action.'"  *Miller*, 2013 WL 1632335 at *4 (citation omitted).

In any event, partial summary judgment is not appropriate on the merits.  Plaintiff moved for partial summary judgment only in the event that the Court bars Dr. Jacoby from testifying as an expert as to liability.  ECF 80-1 at 19–20.  However, I have not barred Dr. Jacoby from testifying as a hybrid expert as to the issue of liability.

Accordingly, I shall deny the Motion to the extent that plaintiff seeks summary judgment regarding liability.

## V.  Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 80).  Specifically, I shall deny the motion to exclude Dr. Jacoby as a hybrid fact/expert witness as to liability.  And, because the government has withdrawn its designation of Dr. Jacoby as a hybrid expert as to damages (ECF 92), I shall deny, as moot, the motion to exclude Dr. Jacoby as a hybrid witness as to the issue of damages.  And, I shall deny the motion for partial summary judgment.

An Order follows.

Date:  April 12, 2024                          _____/s/_____

                                               Ellen L. Hollander
                                               United States District Judge